## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

SOUTHLAND ATHLETIC ASSOCIATION, )
INC., )
       )
         Plaintiff. )
      v. )
       )
~~ILLINOIS YOUTH SOCCER ASSOCIATION,~~ )
~~INC., SOCCER ENTERPRISES INC.,~~ )
~~NORTHERN INDEPENDENT SOCCER~~ )
~~LEAGUES, INC.~~ d/b/a ~~NORTHERN ILLINOIS~~ )
~~SOCCER LEAGUE, PETER G. RICHARDSON,~~ )
~~FLO DYSON, ILLINOIS WOMEN'S SOCCER~~ )
~~LEAGUE, ROBERT BERKLEY,~~ YOUNG )
SPORTSMEN'S SOCCER LEAGUE, and GUS )
BENDER, )
       )
         Defendants. )

# 05C 0222

Civil Action No.

**JURY TRIAL DEMANDED**

## JUDGE BUCKLO

## MAGISTRATE JUDGE KEYS

*DOCKETED*
JAN 14 2005

CLERK
U.S. DISTRICT COURT
05 JAN 13 PM 2:14
ED-7
FILED FOR DOCKETING

## COMPLAINT FOR ANTITRUST VIOLATIONS



## I.  THE PARTIES

1.  Plaintiff Southland Athletic Association, Inc. ("Southland") is an Illinois not-for-profit corporation, with an office located at 10850 Laraway Road, Frankfort, Illinois 60423.

2.  Defendant Illinois Youth Soccer Association, Inc. ("IYSA") is a not-for-profit 501(c) (3) organization with a principal place of business at 1655 South Arlington Heights Road, Arlington Heights, Illinois 60005.

3.  Defendant Soccer Enterprises, Inc. ("SEI") is an Illinois for-profit corporation with a principal place of business at 545 South Consumers Avenue, Palatine, Illinois 60074.  SEI holds itself out as operating its division as the competitive youth soccer league known as the Northern Illinois Soccer League.  Defendant Northern Independent Soccer Leagues, Inc. is an for-profit Illinois corporation with a principal place of business at 545 South Consumers Avenue, Palatine, Illinois, 60074.  Northern Independent Soccer Leagues, Inc. ("NISLI") represents that it owns and operates a competitive youth soccer league under the name Northern Illinois Soccer League ("NISL").  SEI, NISLI, and NISL will be collectively referred to hereinafter as "NISL".

4.  Defendant Peter G. Richardson ("Richardson") is an individual and has a primary residence at 195 Forestview, Elgin, Illinois 60120.  Richardson is President of the Northern Illinois Soccer League, President and the CEO of SEI, the President and CEO of the Northern Independent Soccer Leagues, Inc., and a member of the Board of Directors of IYSA.

5.  Defendant Flo Dyson ("Dyson") is an individual and, upon information and belief, has a primary residence in Hoffman Estates, Illinois.  Dyson is a member of the Board of Directors of IYSA.

1

6.      Defendant Illinois Women's Soccer League ("IWSL") is an Illinois corporation with offices at 3700 Huntington Boulevard, Hoffman Estates, Illinois 60195. Dyson or her family operates the IWSL.

7.      Defendant Robert Berkley ("Berkley") is an individual and, upon information and belief, has a primary residence in DuPage County, Illinois. Berkley is a member of the Board of Directors of IYSA.

8.      Defendant Young Sportsmen's Soccer League ("YSSL") is an Illinois corporation with offices at 709 East Charles Street, Arlington Heights, Illinois 60004. Berkley and his family operate the YSSL.

9.      Defendant Gus Bender ("Bender") is an individual and, upon information and belief, has a primary residence in DuPage County, Illinois. Bender is the President and a member of the Board of Directors of IYSA. Bender and IYSA employ and pay Bender's wife, Mary Jane Bender, as the Executive Director of the IYSA.

## II.     JURISDICTION AND VENUE

10.      This is an action for antitrust violations that arise under the antitrust laws of the United States, the Sherman Act, Title 15 U.S.C. §§ 1-3 (2004) and the Clayton Act, 15 U.S.C. § 15. This Court has subject matter jurisdiction over these federal question claims under 28 U.S.C. § 1331 (2004) and 15 U.S.C. § 26.

11.      This is an action for antitrust violations that arise under the antitrust laws of the State of Illinois, 740 Ill. Comp. Stat. 10/2, 3 (2004). This Court has subject matter jurisdiction over these claims under 28 U.S.C. § 1367.

12.      Venue is proper in this district under 28 U.S.C. § 1391 (b) (c) and (d).

2

13.     The Defendants maintain offices, have agents, transact business, and/or are found within this judicial district.  The cause of action alleged herein arose in part within this district.  The interstate trade and commerce described herein is and has been carried out within this district.

## III.     TRADE AND COMMERCE

14.     The activities of the Defendants, as described in this Complaint, occurred within interstate commerce; had, and continue to have, a substantial effect on interstate trade and commerce; and have unreasonably restrained, and continue to restrain competition in interstate trade and commerce.

## IV.     THE COMPETING SOCCER ORGANIZATONS

15.     IYSA stated in its website at www.iysa.org:

**We are soccer in Illinois**

The Illinois Youth Soccer Association is the governing body for youth soccer in Illinois.  It is a member of the United States Youth Soccer Association [USYSA], United States Soccer Federation [USSF], and the Federation International of Football Associations (FIFA).  Illinois Youth Soccer is a non-for-profit 501 (c) (3) educational organization, incorporated on January 13, 1976 in the state of Illinois whose purpose is to foster the physical, mental, and emotional growth and development of Illinois' youth through the sports of soccer at all levels of age and competition.  Our job also is to make it fun and instill in young players a lifelong passion for soccer.  (bracketed materials added).

As one of the largest youth sport organizations in Illinois and youth soccer organizations in the United States, with more than 78,000 members, the Illinois Youth Soccer Association has the necessary professional resources available to assist affiliated teams, clubs, organizations and sponsors through our state office.

16.     Players and teams residing outside of Illinois can and do participate under programs, competitions, tournaments and leagues sanctioned or sponsored by the IYSA.

17.     The IYSA is bound by the Bylaws and Policies of its governing bodies, the United States Youth Soccer Association, Inc. ("USYSA") and United States Soccer Federation ("USSF").   The USYSA Bylaws state that "USYSA shall provide an equal opportunity to athletes, coaches, trainers, managers, administrators, and officials to participate in youth soccer competitions."   The USSF Bylaws state that "The membership of the State Association and members of the State Association shall be open to any soccer players, coaches, trainers, manager, administrators, and officials... and to any amateur soccer organization in its territory."   The IYSA is a "State Association" under the USSF Bylaws, and Southland is an amateur soccer organization under the USSF Bylaws.

18.     NISL operates a competitive youth soccer league for ages from U-7 (under seven years old) through U-19 (under nineteen years old).   NISL has over eight hundred (800) registered youth teams from over 145 youth soccer clubs and communities, with most of the teams located in Illinois but some of the teams and players located outside of the State of Illinois. Over 98% of NISL's teams are boys teams.   NISL is a sanctioned competitive youth league under IYSA.

19.     IWSL is a competitive youth soccer league for ages U-7 through U-18.   IWSL has over nine hundred and fifty (950) registered youth teams from over 100 youth soccer clubs, with most of the teams located in Illinois but some of the players or teams located outside of the State of Illinois.   All of IWSL's youth teams are girls teams.   IWSL is a sanctioned competitive youth league under the IYSA.

20.     YSSL is a competitive youth soccer league for ages U-8 through U-19.   YSSL has over four hundred and eighty five (485) registered youth teams from over 80 youth soccer clubs,

4

with most of the teams located in Illinois but some of the players or teams located outside of the State of Illinois. YSSL is a sanctioned competitive youth league under the IYSA.

21.     Plaintiff Southland owns the Greater Chicagoland Soccer League ("GCSL"), a competitive youth soccer league for ages U-7 through U-19. The GCSL has around fifty five (55) teams from about 10 youth soccer clubs for its Spring 2004 season and similar make up for the Fall 2004 season. GCSL has most of its teams located in Illinois, but has some teams or players located outside of the State of Illinois. GCSL has both boys and girls teams.

22.     NISL, IWSL and YSSL compete in interstate commerce with GCSL for teams, players, coaches and fees for competitive youth soccer leagues.

23.     NISL and IWSL are the only significant competitive youth soccer leagues that are IYSA-sanctioned and operating in the Western and Southern suburbs of Chicago. Due to expenses and lost time caused by traveling, most youth soccer teams desire to play in a league close to home.

24.     IYSA, NISL, IWSL, Richardson and Dyson cleverly have divided the geographic market of the Western and Southern suburbs into exclusive territories for NISL and IWSL. NISL mainly operates boys leagues; IWSL only operates girls leagues. Thus, neither NISL nor IWSL compete with each other for all practical purposes in the relevant market of competitive youth soccer leagues.

25.     The understanding, agreement or contract between IYSA, NISL and IWSL avoids competition and maintains monopolistic pricing for league fees involving over 1,500 youth soccer teams.

5

26.     GCSL targets the geographical market involving the Western and Southern suburbs of Chicago.

27.     YSSL has negligible presence in the Western and Southern suburbs of Chicago.

## V.     THE COMPETING SOCCER CLUBS AND IYSA'S ROLE IN THE COMPETITION

28.     Upon information and belief, SEI or Richardson is the majority owner of Sockers FC Chicago ("Sockers"), a competitive youth soccer club.

29.     SEI, the Northern Independent Soccer Leagues, Inc., the Northern Illinois Soccer League, and Sockers all have the same place of business at 545 South Consumers Avenue, Palatine, Illinois 60074.  The Sockers play in NISL and receive beneficial treatment and, on information and belief, receive beneficial financial arrangements from NISL.

30.     The Chicago Magic Soccer Club, Ltd. ("Magic"), located in Frankfort, Illinois is a competitive youth soccer club.  The Magic support and play in GCSL.

31.     The Magic and Sockers compete for top soccer players in Illinois and the surrounding states of Indiana, Wisconsin and Iowa.  In a recent publication of Soccer America, February 16, 2004, the Magic is listed as the 2nd best boys soccer club in the entire United States; the Sockers are listed as the 8th best boys soccer club in the United States (Exhibit K). The Magic and Sockers host competing soccer tournaments which include both local and out-of-state teams and players.

32.     To a much lesser extent and usually at the younger ages only, the Downers Grove Roadrunners Soccer Club or the Roadrunners F.C. (collectively referred to as "Roadrunners"), both located in Downers Grove, Illinois, will compete for players with the Magic and the Sockers.  Teams from the Roadrunners play in GCSL, NISL and IWSL.

6

33.     The IYSA sponsors an annual Illinois State Cup Tournament for boys and girls youth teams of ages U-11 through U-19. The winner of the Illinois State Cup for age group U-13 through U-19 plays in a regional tournament sponsored by the USYSA. The regional champions then play for the National Championship, again sponsored by the USYSA.

34.     To have its players seen by college soccer recruiters and to attract top-level players to play in its club, the participation in the Illinois State Cup Tournament and hosting their own tournament are important to most competitive youth soccer clubs, including the Magic and the Sockers.

## VI.     THE LUCRATIVE SOCCER LEAGUE FEES

35.     NISL charges each of its nearly 800 teams about $1,200 per team to participate in NISL for the year.

36.     IWSL charges each of its nearly 950 teams about $750 per team to participate in IWSL for the year.

37.     YSSL charges each of its nearly 480 teams about $900 per team to participate in YSSL for the year.

38.     The value of the services received by playing in NISL, IWSL and YSSL do not match the exorbitant fees being paid by youth soccer teams. Upon information and belief, those leagues and the family members running those leagues, and NISL in particular, are generating large profits or income from the league operations.

39.     The primary shareholders, owners, and employees of NISL, IWSL and YSSL, or their families, are members of the Board of Directors of the IYSA. The IYSA benefits NISL, IWSL and YSSL, and the IYSA Board Member's families operating those leagues, by requiring

that any team or soccer club desiring to play in the Illinois State Cup Tournament or participate in certain other IYSA-sponsored activities must play in an IYSA-sanctioned league. NISL, IWSL and YSSL are such IYSA-sanctioned leagues.

40. As described below, the IYSA unreasonably has denied the application of GCSL to be an IYSA-sanctioned league. As such, the GCSL to remain viable is currently sanctioned under U.S. Club Soccer. GCSL charges each of its teams about $500 per team to participate in the GCSL for the year.

## VII. THE INFANCY OF DEFENDANTS' ANTI-COMPETITIVE CONDUCT

41. On or about February 2001, Southland and the Magic applied with the IYSA to have a league sanctioned under IYSA (Exhibit A). At that time, the new league was to be called "Southland Soccer League." The main driving force behind the new Southland Soccer League was the desire to operate and participate in a league providing better services and to avoid the exorbitant fees charged by NISL and IWSL, the only viable leagues reasonably located near the Magic teams.

42. In July 2001, the IYSA, whose board members included the person or families mainly responsible for operating NISL, IWSL and YSSL, denied the application requesting that the Southland Soccer League be an IYSA-sanctioned league. The main reasons for the denial allegedly were that the new Southland Soccer League had no track record for operating a competitive youth soccer league and that the new Southland Soccer League would be in competition with at least NISL and IWSL to take teams away from those existing leagues.

8

## VIII. THE RESPONSE TO IYSA'S FIRST REFUSAL TO SANCTION A NEW LEAGUE

43.     To gain experience in operating a youth competitive soccer league and avoid the exorbitant fees of existing IYSA-sanctioned leagues, Southland, the Magic, the Roadrunners and other soccer organizations founded the GCSL. The GCSL started its league operations in the Fall 2003 with about 85 teams signed up to participate.

44.     The GCSL intended to refile a request for sanctioning from the IYSA after the Fall 2003 season. As described below, the GCSL did file an application with IYSA in December 2003.

## IX. THE REACTION OF DEFENDANTS TO THE GCSL

45.     The Defendants immediately set out on a course and conspiracy to eliminate the GCSL and damage any soccer teams or soccer clubs associated with the GCSL.

46.     NISL and Richardson immediately threatened any team and any soccer club, including at least the Roadrunners, Midwest Wings Soccer Club, Lyons Township Soccer Club, Naperville Lightning and others, that if a team played in the GCSL, that same team could not play in NISL. NISL selectively threatened to enforce and did enforce that rule only against teams playing in the GCSL. Such teams included the Roadrunners 92/93 and 89/90 boys teams for the Spring 2004 season. NISL did not enforce its "two-league rule" against teams playing in NISL and another league wherein none of those two leagues was the GCSL. For example, NISL declined to enforce its "two-league rule" against the Sockers and other Club teams which played in two leagues: for example, playing in both NISL and the separate Y-League or Regional League.

9

47.    At least NISL, IYSA, Bender and Richardson conspired to threaten the teams playing in or new teams desiring to play in the GCSL with loss of rights under IYSA. These threats occurred on several occasions in NISL league meetings, with IYSA officials present including Bender, or personal telephone calls by at least Richardson and Bender to coaches and administrators of the youth soccer clubs.

48.    NISL's written threats included the following e-mail (Exhibit B) sent with IYSA's, Bender's and Richardson's knowledge and approval to many teams and administrators of youth soccer clubs:

> We have received reliable information that your team registered and played in the Greater Chicago Soccer league in the Fall 2003. This is against NISL and IYSA rules to participate, roster and register in another USSF competitive league at the same time.
>
> As you may have not been aware of these rules and regulations, no action will be taken by the NISL regarding the Fall 03 violations, however, we require you to communicate to us in writing, by January 1st 2004, your intentions for the Spring 2004 outdoor season.
>
> The NISL is extremely disappointed that you felt we could not provide your club and players with the highest level of competition.
>
> Thank you [in] anticipation of your reply, a non reply will be an assumption that you will continue to be a member of the GCSL, and the NISL will act accordingly.
>
> Thank You
>
> NISL

49.    Although requested by the Roadrunners on at least two occasions, NISL declined to identify the specific IYSA or USSF bylaws or policies that are violated by any Roadrunners or other team playing in both NISL and GCSL. There are no IYSA or USSF policies or bylaws preventing a team from playing simultaneously in those two leagues.

10

50.     Richardson followed up the written threats with telephone calls that Richardson characterized as extremely urgent.  In particular, during December 2003, Richardson called the then President of the Roadrunners, while the Roadrunners President was on a business trip in Rhode Island.  Mr. Richardson stated that Roadrunners teams could not play in NISL if the team played in GCSL.  Richardson then conveyed in a very aggressive manner that any team kicked out of NISL could not play in the Illinois State Cup Tournament and that IYSA and NISL were preparing policy changes that would disqualify and prevent all of the Roadrunners' and other club's teams from playing in NISL or IYSA-sanctioned events if any of the Roadrunners' or other clubs' teams played in GCSL.  Mr. Richardson called it the upcoming IYSA 100% affiliation rule.

51.     On December 22, 2003, NISL then sent another e-mail threat to the Roadrunners which stated in pertinent part:

> We are sorry that you have indicated that your Downers Grove Roadrunners 92/93 and the Downers Grove Roadrunners 89/90 teams will be playing in the GCSL Spring of 2004 season.  Your should also be aware of the IYSA 100% affiliation rule.  This could have a tremendous impact on your club if you continue in the current direction.  (emphasis added).

The above-statement and prior threats made it perfectly clear that if any Roadrunners' teams continued to play in the GCSL, then all of the Roadrunners IYSA-registered teams were going to be kicked out of NISL and disqualified from IYSA-sanctioned activities.

52.     Richardson, Bender, NISL and IYSA made similar threats and demands from many youth soccer clubs, including but not limited to the Naperville Lightning, Midwest Wings Soccer Club, Lyons Township Soccer Club and others.  Richardson and NISL warned these other clubs that their teams could not play in both the NISL and GCSL for the Spring 2004 season.

11

Richardson, Bender, NISL and IYSA then told at least the Roadrunners, the Naperville Lightning, Midwest Wings Soccer Club, and Lyons Township Soccer Club that any team not playing in an IYSA-sanctioned league for the Spring 2004 season could not play in the Illinois State Cup Tournament, which takes place in May-June, 2004. At least the Naperville Lightning, the Midwest Wings Soccer Club, or Lyons Township Soccer Club withdrew previously-registered teams from the GCSL in view of defendants' threats and in fear of not being able to have its teams play in the Illinois State Cup Tournament.

53. In the Spring of 2004, NISL changed their Rules to prohibit any team playing in NISL from competing with any organization that has ties with U.S. Club Soccer and GCSL: "Teams are NOT permitted to register and compete with other youth soccer organizations that affiliated with U.S. Soccer [GCSL] while simultaneously competing in N.I.S.L." (emphasis in original).

54. The Roadrunners, however, did not cave in to these threats of IYSA, Richardson and NISL. The Roadrunners U-14 boys team, D.G. Roadrunners 89/90, decided it would not be bullied by Richardson and NISL and opted to play in GCSL. The Roadrunners U-14 boys team applied to play in the Illinois State Cup Tournament, but its application was rejected initially for the following reason:

> Enclosed is your State Cup application and check #4023 for the U-14 boys Downers Grove Roadrunners for lack of compliance with Illinois Youth Soccer Rule 023.

(Exhibit N).

55. The timing of IYSA's rejection of the Roadrunners' application is further representative of the anti-competitive and malicious intent of Defendants. Although the Roadrunners U-14 team filed its application to play in the State Cup on December 18, 2003,

12

IYSA did not reject it until February 11, 2004, which was only four days (two business days) after the Roadrunners' President and coach of that U-14 team appeared before the IYSA to support sanctioning of GCSL to compete with NISL and IWSL.

56.     Illinois Youth Soccer Rule 023, as then written, did not prevent the Roadrunners U-14 boys team from playing in the State Cup. Richardson and Bender were the driving force behind a clearly erroneous interpretation of Rule 023 by the IYSA. The Roadrunners appealed the decision and set forth the straight forward explanation as to why the Roadrunners team did comply with Rule 023. That explanation is set forth in a February 16, 2004 letter to IYSA (Exhibit O).

57.     After receiving the Roadrunners' February 16th letter, the IYSA withdrew its objection to the Roadrunners U-14 team and accepted their application to play in the Illinois State Cup. However, it was too late for other clubs to change its league from NISL back to the GCSL in view of IYSA's new interpretation of Rule 023. Upon information and belief, Richardson, Bender, NISL and IYSA had intentionally provided a wrong interpretation to those teams to convince them to withdraw from the GCSL. As set forth in Paragraphs 89 and 90 below, the IYSA then changed its Rule 023 on or about May 11, 2004, in a manner that would have prevented the Roadrunners U-14 team from playing in this Spring's Illinois State Cup had the modified Rule 023 been in effect in February 2004.

58.     After reluctantly allowing the Roadrunners U-14 team to play in the State Cup, the IYSA, showing its mischievous intent, unfairly exacted its revenge on May 25, 2004 by making a grossly unreasonable ruling as to when and where the Roadrunners U-14 boys had to play the Sockers U-14, which is Richardson's Club, during the quarterfinals. Exhibit P explains

the factual circumstances. The initially scheduled State Cup game to be played on a neutral site was rained out. In contradiction to IYSA policy of allowing teams input on dates for make-up games, the IYSA singled out the Roadrunners U-14 team and treated them differently from the other 100 or so remaining teams left in the State Cup in age groups U-13 through U-19. The IYSA ordered the Roadrunners to play with one day's notice. The IYSA ordered the make-up game to be played on a day picked solely by the Sockers on the Sockers home field with no input from the Roadrunners. The Roadrunners objected to the ordered date for the game because one of the Roadrunners best players was in Washington D.C. on a school field trip so as to make him unavailable. The Sockers had all of its players available for the game. The Sockers and IYSA were aware of the significant disadvantage to the Roadrunners but ordered the game anyway, although there were other available days over a two week period. In direct conflict to the IYSA discriminatory ruling affecting the Roadrunners, the IYSA allowed make-up games for other State Cup teams to be rescheduled to another week due to the unavailability of players, including the unavailability of one player because he was in Washington D.C. on a school field trip.

59.    Defendants were aware of all of the above described threats and actions and encouraged their implementation.

60.    Based upon the conspiracy between the Defendants and acts/threats described herein, about twenty teams, which signed up to play in the GCSL during the Fall 2003 season, decided to drop out of GCSL prior to the Spring 2004 season. Other teams declined to play in the GCSL for the Spring and Fall 2004 season for the same reasons.

61.    Defendants IYSA, Dyson, Berkley, Richardson, Bender, and NISL implemented other IYSA policies that were discriminating and a direct conflict with policies that were

14

mandated from USYSA and USSF, both bodies which govern the IYSA. The intended purpose of IYSA policies is to prevent teams registered under IYSA to play games or associate with teams registered under U.S. Club Soccer or the like, such as teams and clubs playing in the GCSL. The IYSA goals are: a) dictate whom the IYSA-sanctioned teams can play or associate with outside of the IYSA jurisdiction; b) prevent teams from playing in leagues not sanctioned by IYSA; and c) eliminate the GCSL.

62.     For example, the IYSA standard Form to Host Friendly Games states the following:

> 1.     Participating Teams <u>must be</u> currently registered with the Illinois Youth Soccer Association [IYSA] or US Youth Soccer state associations (Exhibit C) (bracketed materials added).

The IYSA requirement that participating teams must be currently registered with the IYSA or other state association is a direct violation of USYSA Policy No. 601-7, as confirmed by Jim Cosgrove of USYSA in Exhibit D.

63.     NISL, the Sockers, and/or IYSA has prevented GCSL teams (those teams registered with U.S. Club Soccer) from playing in Friendly Games with IYSA-registered teams based upon enforcement of provisions set forth in the IYSA standard Form to Host Friendly Games. These Friendly Games often involve out-of-state teams. This rejection of GCSL teams is intended to force such teams to quit the GCSL. The IYSA standard Form to Host Friendly Games has caused IYSA-registered teams to <u>not</u> invite GCSL teams or other U.S. Club Soccer teams for Friendly Games.

64.     The IYSA further restrains interstate commerce by denying permission to travel and insurance coverage to IYSA-registered teams for tournaments or games outside of Illinois if

those tournaments or games are not USYSA sanctioned. Teams are restrained from many out-of-state competitions and games.

65.     As another example, the IYSA standard Form for 2004 Tournament Host Sanctioning Agreement states the following:

> 26.     We understand that all tournament participants must be currently registered for tournament participation with the Illinois Youth Soccer Association [IYSA] or a US Youth Soccer Association State Association. Contact the IYSA office to obtain a Tournament Player Pass and Tournament Guest Player Pass for any unaffiliated player wishing to participate in an IYSA sanctioned tournament.

> 28.     . . . the Tournament Host must be 100% affiliated with the Illinois Youth Soccer Association.

(Exhibit E) (emphasis and bracketed materials added).

The intended message conveyed by the IYSA in view of its Tournament Host Sanctioning Agreement and other forms available on its website is that: a) any team playing in the GCSL or under U.S. Club Soccer will not be able to play in IYSA-sanctioned tournaments, which is almost every tournament in Illinois; and b) any youth soccer club harboring teams playing in the GCSL or registered under U.S. Club Soccer would be barred from hosting an IYSA-sanctioned tournament because the Club would not be 100% IYSA affiliated in those circumstances. These tournaments often involve out-of-state teams. Hosting tournaments is a significant income source for many youth soccer clubs, the paid employees/officers of the clubs, and hosting communities where hotel stays generate significant local revenues; it would cause irreparable harm and monetary damage for those clubs, individuals, and hosting communities to give up its opportunity to host an IYSA-sanctioned tournament. Due to the fear of losing the IYSA-sanctioning of its tournament which would be devastating to its Club, the Midwest Wings Soccer

16

Club withdrew its teams from the GCSL for the Fall 2004 season in a forced compliance with the 100% IYSA Affiliation rule. Teams from the Midwest Wings had been playing in the GCSL in the Spring 2003 soccer season. The IYSA always had sanctioned the Midwest Wings' tournament for each of the previous 13 years prior to the 100% IYSA Affiliation rule. Now for the first time, IYSA indicates that it would not sanction the tournament if any team in the Midwest Wings Soccer Club plays in the GCSL, even though that tournament will be operated in the same way as in the past thirteen years, all of which previous tournaments had been sanctioned by the IYSA.

66. The IYSA requirement on its forms that all teams attending an IYSA-sanctioned tournament and that the hosting club have all of its teams affiliated with IYSA is another direct violation of USYSA Policy No. 601-7, as confirmed by Jim Cosgrove of USYSA in Exhibit D. The policies and forms of IYSA, which are then disseminated with threatened enforcement of losing its tournament through telephone calls by Richardson, Bender, Dyson, Berkley, NISL, IWSL and/or YSSL to various tournament officials in the Chicagoland area, have a chilling effect on teams wanting to stay in or join the GCSL. When coupled with NISL's and Richardson's demand that a team cannot play in NISL (affiliated with IYSA) if it plays in GCSL, the anti-competitive and chilling effect of the Defendants' actions become quite evident.

## X. THE DEFENDANTS' INSURANCE SCARE

67. Youth soccer teams joining NISL, IWSL or YSSL pay fees which are passed on to IYSA for insurance coverage for certain soccer-related liabilities. A typical Certificate of Insurance, which was obtained for Roadrunners' IYSA-affiliated teams, is attached as Exhibit F.

17

68.    At least IYSA, NISL, Bender and Richardson have stated on several occasions to youth soccer clubs that insurance coverage may be lost for those IYSA-affiliated teams, referees, coaches and players who participate in soccer activities involving GCSL or U.S. Club Soccer teams.  Pullen Insurance Services, Inc. ("Pullen") and Virginia Surety Insurance ("VSI") and other insurance carriers for IYSA have been aware, or should have been aware, of these IYSA-imposed contingencies on insurance coverage that are based, not upon reasonable insurance purposes, but upon whom the teams may play or associate with.  Pullen and VSI at least tacitly have approved these discriminatory practices, and those discriminatory practices described below, related to insurance.

## XI.    GCSL APPLIES FOR IYSA-SANCTIONING BUT IS DENIED FOR NO REASON GIVEN

69.    To improve competition between competitive youth soccer leagues and overcome many of the hurdles erected by the Defendants, the Plaintiff Southland, having the support of the Magic, Roadrunners and other youth soccer clubs, applied to the IYSA for sanctioning of GCSL as an IYSA-sanctioned league.  The application, attached as Exhibit G, was filed on or about December 2, 2003.

70.    The Board of Directors of IYSA, including Defendants Richardson, Dyson, Berkley, and Bender convened on February 7, 2004 to address the application with GCSL representatives.  Minutes are attached as Exhibit H.  The IYSA Board requested additional information. Southland and GCSL supplied all requested information (Exhibit I).

71.    During the IYSA February Board meeting, Dyson stated that at one time she believed the GCSL could be allowed by the IYSA if GCSL had been willing to submit itself

18

under the control of the Dyson and IWSL. Dyson indicated that the GCSL could operate as a boys division of IWSL (which presently only has girls teams).

72.     During a break at the IYSA February Board meeting, Berkley indicated that at one time he believed the GCSL could be allowed by the IYSA if the GCSL was willing to submit itself under the control of Berkley and YSSL. Berkley indicated that the GCSL could be the Southern Division of YSSL. The YSSL generally serves only the Northern and Northwest suburbs of Chicago. The GCSL indicated that most teams for its new league likely would come from the Southern and Western suburbs of Chicago.

73.     During the IYSA February Board meeting, Bender, the President of IYSA, stated that the IYSA might have been willing to allow GCSL in the past to take over failing IYSA-sanctioned leagues, none of which was financially stable or conveniently located.

74.     Thus, Defendants apparently were willing to condition any allowance of the GCSL to operate under IYSA only under the unfair requirements that current IYSA Board members control their membership, pricing of league fees and other management decisions. This control by IYSA Board Members was intended, among other things and on information and belief, to maintain monopolistic pricing of league fees.

75.     Thus, IYSA has no soccer-related reason to reject GCSL. To the IYSA Board members, the GCSL might be allowed to operate a league but only under the extreme conditions that the GCSL is controlled by existing IYSA Board members.

76.     The conflict of interests between the IYSA Board Members and their role in running profitable competitive youth soccer leagues became evident at the IYSA February Board meeting. At least Board Members Richardson, Dyson and Berkley, or their families, will likely

19

lose substantial personal income if the application of the competitive GCSL is approved without them controlling the GCSL and its setting of league prices.

77. The IYSA never indicated at that time that the GCSL application or requested information was deficient in any manner.

78. The IYSA denied the GCSL request, without any reasons given, in the following one-sentence statement:

> After due deliberation the Illinois Youth Soccer Association has denied your league application.

(Exhibit J).

79. The IYSA unreasonably and arbitrarily denied the application of GCSL despite the significant financial resources of Southland and the unparalleled soccer experience of the Magic (rated 2nd best soccer club in America (Exhibit K)) and other clubs backing the GCSL.

80. Southland filed a grievance with the USSF regarding the IYSA denial of IYSA-sanctioning for the GCSL. In a decision dated September 16, 2004, the USSF held, among other things:

> "Despite assurances at the hearing from IYSA's attorneys that GCSL's affiliation with US Club Soccer had nothing to do with IYSA's decision to reject its application, two IYSA board members testified at length that GCSL's affiliation with US Club Soccer made them suspicious that GCSL was planning to join IYSA just to steal players for US Club Soccer. The board members also testified that they disagree with US Club Soccer's programming philosophy and risk management programs. Finally, they claimed to be troubled by GCSL's refusal to make a commitment to remain an IYSA league for the next seasonal year. Another member testified that his rejection was based, in part, on GCSL's plan to include teams residing in Indiana, even though IYSA has accepted other leagues with out of state teams. The board members testified that all of these considerations led, in part, to their rejection of the GCSL application. The panel finds no evidence that GCSL's application was insincere or a sham in any way. Further, IYSA does not dispute that GCSL agreed to abide by all IYSA rules and regulations in its participation in IYSA activities, inasmuch as IYSA's Competitive League Agreement requires such a promise from GCSL. Finally,

20

IYSA admits that a long-term commitment is not a requirement for league membership under its rule. IYSA's answer as well as the evidence presented at the grievance makes it clear to the panel that GCSL's application was denied, at least in part, because of GCSL's affiliation with US Club Soccer. Denial on this basis violates USSF Bylaw 603."

* * *

"This panel finds that IYSA violated USSF Bylaw 603 in denying GCSL's application for membership, and therefore recommends that the Board of Directors grant the grievance."

(Exhibit Q, p 3)

81.     The USSF further confirmed its findings in an Order dated October 11, 2004 (Exhibit R). The USSF conditioned the approval of the IYSA sanctioning upon Southland dropping its then pending lawsuit against IYSA and providing information on three items. On December 1, 2004, Southland fully complied with each and every requirement of USSF Order (Exhibit S).

82.     With malicious intent, the IYSA and its co-conspirators refuse to sanction the GCSL as ordered by the USSF. The USSF declines to enforce its Order dated October 11, 2004. Due to the signup deadlines for the Spring 2005 season, Southland informed the IYSA on January 12, 2005 that any approval by IYSA is too late for all practical purposes for the Spring 2005 season. IYSA and USSF have been aware of the deadlines and have intentionally delayed action or refused to act, all in furtherance of the conspiracy to restrain competition.

## XII.   DEFENDANTS CONTINUE TO PILE ON ITS ANTI-COMPETITIVE POLICIES, THREATS AND ACTS

83.     IYSA and the Defendants made good on their threats that all or none of a soccer club's teams must play in an IYSA-sanctioned league. IYSA and at least NISL have implemented a 100% IYSA affiliation rule.

84. On May 14, 2004, Richardson sent to the Roadrunners the "Policy Changes" implemented by IYSA (Exhibit L). Key provisions in furtherance of their conspiracy to restrain trade involving competitive youth soccer leagues and tournaments include the following:

Insurance

For teams, clubs and leagues to be eligible for IYSA insurance coverage, all teams and players in the club/league must be registered with the IYSA. Compliance with this policy shall be the responsibility of the league in which the player/team/club participates. Each league shall, prior to accepting a team/club participation, ascertain that all of the club's teams and players are registered with the IYSA.

* * *

Tournaments

To be eligible to host an IYSA sanctioned tournament the applicant must have 100% of its players, members, teams, coaches and administrators registered with the IYSA.

(Exhibit L) (emphasis added).

85. IYSA now requires that all teams of a Club must be registered with IYSA for any team to obtain insurance or host an IYSA tournament. Insurers/brokers Pullen and VSI know or should know of these discriminatory contingencies on their insurance coverage which have nothing to do with soccer-related liabilities but with whom a team associates or assembles.

86. IYSA's new policy now prevents the Roadrunners and other youth soccer clubs from operating their own clubs whereby some teams are affiliated with IYSA and other teams are affiliated with U.S. Soccer Club i.e., GCSL teams. In order to play in IYSA-sponsored events or prevent a loss of insurance coverage, the Roadrunners and other youth soccer clubs must either: a) require that their GCSL teams quit that league and join an IYSA-affiliated league; or b) force their GCSL teams to quit their current youth soccer club. The Roadrunners

22

were forced to split into two clubs, causing expense and considerable disruption of soccer activities.

87.     These new IYSA policies are intended to eliminate the GCSL and rid competition for the IYSA-affiliated NISL, IWSL and YSSL. These new IYSA policies have no reasonable relationship to promoting the mission statement of the not-for-profit IYSA or to promoting the well-being of youth soccer. These new IYSA policies are contrary to the mission statements and policies of USYSA and USSF. These latest IYSA policies are detrimental to the welfare of youth soccer players and youth soccer clubs in that their freedom to associate with friends or persons of their own choosing has been compromised.

88.     NISL and Richardson have taken affirmative steps to require 100% IYSA affiliation of <u>all</u> of the club teams. If clubs decline, then the club will be penalized and none of the teams will be allowed to play in NISL. In other words, none of the Spring 2004 Roadrunners' teams could play in NISL if any one Roadrunners' team wants to play in GCSL. The Roadrunners had 31 teams for Spring 2004. NISL requires each youth soccer club to execute the Club/Organization Affiliation Agreement attached as Exhibit M. Both IYSA and NISL logos are displayed prominently on the Agreement in furtherance of the conspiracy. For any team in a youth soccer club to play in NISL, each club must certify that it shall comply with the following restrictions in competition and freedom of association:

Paragraph 15. Club/Organization Agreement:

a.      <u>All</u> <u>Club</u>/Organization's <u>teams</u> <u>must</u> <u>be</u> <u>currently</u> <u>registered</u> <u>with</u> <u>an</u> <u>IYSA</u> <u>affiliated</u> <u>competitive</u> <u>league</u>.

* * *

23

c.     The Club/Organization must have all its players, coaches and teams registered with an affiliated IYSA competitive league for the current seasonal year.

\* \* \*

g.     The Club/Organization understands and agrees to not be a member of/or join any organization that is in conflict with IYSA/League rules and requirements.

(Exhibit M) (emphasis added).   In June 2004, the Roadrunners sought a waiver or exemption from NISL for Paragraphs 15(a), (c) and (g).   Some Roadrunners teams indicated an intent to play in the GCSL for the Fall 2004 while some Roadrunners boys teams indicated an intent to play in NISL.   Thus, not all teams of the Roadrunners Club would be registered with an IYSA-affiliated league.   In a telephone conversation in mid-June, Richardson and NISL rejected the Roadrunners' request for a waiver or exemption.

89.     On or about May 11, 2004, the IYSA modified its Rule 023 in furtherance of the conspiracy by preventing any IYSA-registered team from playing in the Illinois State Cup Tournament if any other team in that team's club is not registered to play in an IYSA-sanctioned league.   The IYSA now requires that "to be eligible to participate in the Illinois Youth Soccer State Cup", then:

"1.     The Club/Organization with which the Team is affiliated must have all of its players, coaches and competitive teams registered with an affiliated Illinois Youth Soccer Association league during the current seasonal year." (emphasis added).

This new provision benefits the IYSA-sanctioned NISL, IWSL and YSSL.   It severely penalizes any club that has one or more teams playing in GCSL under U.S. Club Soccer. In that circumstance, all of the youth soccer club's teams would be disqualified from the State Cup, even if those other teams play in an IYSA-sanctioned league.

24

90.    Prior to the May 11, 2004 change to Rule 023, that portion of Rule read in pertinent part as follows:

"1.    The team must be comprised of properly registered and rostered youth players defined by the IYSA."

The old Rule 023 did not prevent IYSA-registered teams from playing State Cup if their companion teams in the same Club played in the GCSL.

91.    As determined by the USSF (Exhibit Q), IYSA, NISL, Bender and Richardson are violating USSF Bylaw 603 by discriminating against youth soccer clubs and teams who have decided to associate with the GCSL.    The Executive Director of IYSA, Mary Jane Bender, further participates in the discrimination by, among other things, requesting soccer groups to take disciplinary action against a Magic coach for merely mentioning U.S. Club Soccer at a USYSA event.    The IYSA, NISL and GCSL are Organization Member of USSF.    USSF Bylaw 603 states:

Bylaw 603. INTERPLAY

Section 1.    One Organization Member may not require that all of the players, coaches, teams, and administrators of another Organization Member (who have been registered with, and fees paid to, the Federation as required by section 1 of Bylaw 212) be registered with the first Organization Member as a condition for only some of those players, coaches, teams, or administrators participating in the activities of the first Organization Member.    The first Organization Member may require registration of only those players, coaches, teams, and administrators of the other Organization Member that actually participate in the activities of the first Organization Member.    Those players, coaches, teams, and administrators of the other Organization Member registering with the first Organization Member shall comply with all of the regular registration requirements of the first Organization member.

Section 2.    An Organization Member (other than a Professional League) shall not discriminate against the participation of players, teams, coaches or clubs on the basis of that player, coach, team, or club's membership in, or affiliation with, another organization.    The Federation encourages its Organization Members to

25

allow teams of all other Members to participate in tournaments sponsored by them or any of its organization members when the teams otherwise comply with the tournament eligibility requirements. A tournament sponsor may charge each team of another Member an additional fee of not more than $25 to participate in the tournament. (emphasis added).

92.     Defendants' actions described herein constitute a combination or conspiracy in restraint of trade among several states and, in particular, a conspiracy to contain and eliminate their competition, the GCSL. The Defendants have conspired, and currently are conspiring, to prevent the GCSL from competing against NISL, IWSL and YSSL. The Defendants are conspiring to prevent the Roadrunners, Magic and other youth soccer clubs from participating in GCSL where league fees are significantly less than IYSA-sanctioned leagues or from participating in certain tournaments involving Illinois and out-of-state teams.

93.     The above-described conduct of the Defendants is anti-competitive and has no legitimate business purpose and no reasonable relationship to promoting youth soccer or the published mission statements of IYSA, USYSA or USSF.

## COUNT ONE – FEDERAL ANTITRUST VIOLATIONS

94.     Plaintiff hereby incorporates Paragraphs 1 through 93 as if each were set forth in full.

95.     The Sherman Act declares illegal, among other things, "every contract, combination...or conspiracy, in restraint of trade or commerce among the several states."

96.     Defendants' acts and conduct are a per se or a rule of reason violation of the Sherman Act.

97.     Defendants' acts and conduct constitute an agreement, conspiracy or combination between two or more entities or persons.

26

98.     The agreement, conspiracy or combination between the Defendants is an unreasonable restraint of trade in the relevant market of competitive youth soccer leagues and tournaments or opportunities for competitive youth soccer players, teams, and clubs under either a per se rule or a rule of reason analysis.

99.     Defendants' restraints on trade affect interstate commerce.

100.    Defendants' acts and conduct substantially burden competition without advancing any important interest of the IYSA, NISL, IWSL and YSSL and their insurance carriers. Although the IYSA mission requires it be an organization of inclusion, the IYSA has become an organization of special exclusions due to the personal financial interests of some of the IYSA Board of Directors and their families.

101.    The restraint that Defendants impose is justified by no legitimate business purpose.

102.    Defendants' acts and conduct are harmful to competition as they provide, among other things, for total exclusion of certain competitive youth soccer leagues or tournaments in the Chicagoland area, such that monopolistic pricing of IYSA-sanctioned league fees is illegally protected and competitive youth soccer players, teams and clubs are illegally restrained in their soccer opportunities and associations.

103.    Defendants' acts and conduct constitute a combination or conspiracy and an unreasonable restraint of trade, in violation of the Sherman Act, 15 U.S.C. § 1 *et seq.*

104.    Defendants' unlawful conduct and illegal activity have and will continue to irreparably harm and injure the Plaintiff, unless and until Defendants are enjoined by this Court.

105.   As a direct result of Defendants' unlawful conduct, Plaintiff has suffered substantial injury, loss and monetary damages.

## COUNT TWO – ILLINOIS ANTITRUST VIOLATIONS

106.   Plaintiff hereby incorporates Paragraphs 1 through 105 as if each were set forth in full.

107.   The Illinois Antitrust Act declares every person shall be deemed to violate this Act who shall "[b]y contract, combination, or conspiracy with one or more persons unreasonably restrain trade or commerce."

108.   Defendants' acts and conduct constitute a contract, combination or conspiracy between two or more person or entities.

109.   The agreements, combination or conspiracy between the Defendants is an unreasonable restraint of trade under either a per se rule or a rule of reason analysis.

110.   Defendants' restraints on trade affect commerce.

111.   Defendants' acts and conduct substantially burden competition without advancing any important interest of the IYSA, NISL, IWSL and YSSL and their insurance carriers.

112.   The restraint that defendants impose is justified by no legitimate business purpose.

113.   Defendants' acts and conduct constitute a combination or conspiracy and an unreasonable restraint of trade, in violation of the Illinois Antitrust Act, 740 Ill. Comp. Stat. 10/2, 3 et seq.

28

114. Defendants' unlawful conduct and illegal activity have and will continue to irreparably harm and injure the Plaintiff, unless and until Defendants are enjoined by this Court.

115. As a direct result of Defendants' unlawful conduct, Plaintiff has suffered substantial injury, loss and monetary damages.

## JURY DEMAND

116. Plaintiff demands a trial by jury for all counts, issues, facts, and findings so triable before a jury.

WHEREFORE, Plaintiff Southland, seeks the following relief:

a) An Order declaring that the acts and conduct of Defendants IYSA, SEI, NISLI, NISL, Richardson, IWSL, Dyson, YSSL, Berkley and Bender are an unlawful violation of the Federal Antitrust Law, including the Sherman Act;

b) An Order declaring that the acts and conduct of Defendants IYSA, SEI, NISLI, NISL, Richardson, IWSL, Dyson, YSSL, Berkley and Bender are an unlawful violation of the Illinois Antitrust Law, including the Illinois Antitrust Act;

c) An Order preliminarily and permanently enjoining Defendants IYSA, SEI, NISLI, NISL, Richardson, IWSL, Dyson, YSSL, Berkley and Bender, and their agents, employees, attorneys, parent companies, subsidiaries, and divisions from violating the antitrust laws and from continuing to participate in the illegal activities described in this Complaint.

d) An Order requiring Defendants IYSA, SEI, NISLI, NISL, Richardson, IWSL, Dyson, YSSL, Berkley and Bender to pay to Plaintiff the monetary damages resulting from the unlawful violations and that those damages be trebled automatically under the Federal

and Illinois Antitrust Acts, including the Sherman and Clayton Acts and other relevant federal and state statutes;

e)      An Order requiring Defendants IYSA, SEI, NISLI, NISL, Richardson, IWSL, Dyson, YSSL, Berkley and Bender to pay automatically the attorneys' fees and costs incurred by Plaintiff in bringing this action pursuant to the Federal and Illinois Antitrust Acts, including the Sherman and Clayton Acts and other relevant federal and state statutes; and

f)      An Order providing such other relief as the Court deems appropriate and fair.

McANDREWS, HELD & MALLOY, LTD.

Dated:_____January 13, 2005_____      By:_____

Gregory J. Vogler
Alejandro Menchaca
McAndrews, Held & Malloy, Ltd.
500 West Madison Street
34th Floor
Chicago, Illinois 60661
Phone: (312) 775-8000
Facsimile: (312) 775-8100

Attorneys for Plaintiff
Southland Athletic Association, Inc.

30

EXHIBIT

A



**ILLINOIS YOUTH SOCCER**

1655 S. Arlington Heights Rd.
Suite 201
Arlington Heights, Illinois 60005
847/290-1577
847/290-1576(F)
http://www.iysa.org
E-mail:iysa@iysa.org

July 5, 2001

Mr. Michael C. Whitten
Southland Soccer League
10850 W. Laraway Rd - 2E
Frankfort, IL 60423

Re: Southland Soccer League

Dear Mr. Whitten,

Your application for competitive league membership with the Illinois Youth Soccer Association has been carefully reviewed and denied in a unanimous decision by the Board of Directors.

There is insufficient written documentation from your listed affiliated member clubs to meet the requirements for membership. Also, there are four competitive leagues servicing your geographical area, including the Chicago Area Soccer League which is located approximately two miles from your Frankfort address.

Enclosed is your check #1537 in the amount of $200 for the league application fee.

Sincerely,

Gus Bender

Illinois Youth Soccer Association
President





09/05/2001   15:59   DIS YOUTH SOCCER ASSN → 1815469246   NO.605   P005



# Illinois Youth Soccer Association (IYSA)
# Application for Membership
## COMPETITIVE/TRAVEL LEAGUE APPLICATION

INDICATE GENDER OF PLAYERS IN YOUR LEAGUE: ☐ BOYS   ☐ GIRLS   ☑ BOTH

INDICATE NUMBER OF TEAMS IN YOUR LEAGUE _____

SEASON: ☑ SPRING ☑ FALL  AGE/GRADE DIVISIONS_____

APPLICANTS LEAGUE NAME  SOUTHLAND SOCCER LEAGUE

BUSINESS ADDRESS  10850 LARAWAY ROAD

CITY, STATE, ZIP  FRANKFORT, IL 60423

Day Phone ( 815 ) 469-1844   Eve Phone (_____)_____   Fax(_____)_____

**LIST OFFICERS - ATTACH LIST OF ADDITIONAL/OFFICERS BOARD MEMBERS.**

1. Name  MIKE MATKOVICH          Title  PRESIDENT        Phone ( 815 ) 469-1741
Street Address  10850 LARAWAY ROAD          City, State, Zip

2. Name  JOHN HANNAN          Title  VICE PRESIDENT   Phone ( 815 ) 469-1741
Street Address  10850 LARAWAY ROAD          City, State, Zip  FRANKFORT IL

3. Name  SCOTT FONFARA          Title  SECRETARY        Phone ( 815 ) 469-1741
Street Address          City, State, Zip

4. Name  MARSHA PANFIL          Title  VICE PRESIDENT   Phone ( 815 ) 469-1741
Street Address          City, State, Zip

DESCRIBE PURPOSE OF LEAGUE'S EXISTENCE  TO SERVE THE NEEDS OF THE FAR SOUTHERN SUBURBS OF COOK AND WILL COUNTY

TERRITORY TO BE SERVED IN ILLINOIS  SOUTHERN KOOK, WILL AND FAR SOUTH DUPAGE COUNTY

WHAT NEED WILL YOUR LEAGUE SERVE?  THE NEW COMPETITIVE AND TRAVEL TEAMS IN COOK AND WILL COUNTY THROUGH CRETE, BEECHER, PEOTONE, HAZELCREST, CHICAGO HEIGHTS, MANTENO, JOLIET, MATTESON, AND MANHATTAN

P. 04   1815469471?   CHICAGO MAGIC   FEB-23-2004 MON 02:39 PM

02/05/2001    15:59    IP    DIS YOUTH SOCCER ASSN    18154692000

# COMPLETE THE FOLLOWING INFORMATION!

To be considered for Travel/Competitive League affiliation, applicant must have at least four(4) member clubs participating in at least three(3) age divisions.

## LIST YOUR AFFILIATED MEMBER CLUBS:

1. NAME OF MEMBER CLUB ___Chicago Magic SC.___

___Mike Matkovich___    Director of Coaching    ( 815 )769-1844
Name     Title     Phone

___10850 Laraway Road___    Frankfort, IL 60423
Street Address     City, State, Zip

2. NAME OF MEMBER CLUB ___Campton United___

___Tom Zec___    Director    ( )
Name     Title     Phone

   St.Charles, IL 60423
Street Address     City, State, Zip

3. NAME OF MEMBER CLUB ___Team Chicago___

___Mike Matkovich___    Director    ( )
Name     Title     Phone

___10850 Laraway Road___    Frankfort IL 60423
Street Address     City, State, Zip

4. NAME OF MEMBER CLUB ___Southwest United___

___Jim Harkness___    Director    ( )
Name     Title     Phone

   Chicago IL
Street Address     City, State, Zip

## ENCLOSE COPY OF YOUR CONSTITUTION, BYLAWS OR PLAYING RULES.

Applicant must attach a copy of applicant's constitution, bylaws or playing rules identifying and governing the applicant's organization. Competitive/travel league applicants must include a constitution and bylaws which conform to the rules, regulations and purpose of the Illinois Youth Soccer Association.

## STATEMENT OF UNDERSTANDING AND AGREEMENT

If granted membership in the IYSA, I, the undersigned League officer, agree that the League will adhere to all rules and regulations of the IYSA and be controlled by legitimate decisions as may, from time to time, be made regarding the conduct of the IYSA.

The League will pay such fees as are required by the IYSA to gain membership as well as those fees and fines that are assessed against all members in the normal course of business. The League shall pay such dues and fines as are assessed against it as well as those against affiliated clubs and/or individuals within the League which are not paid by the club or individual within one (1) month after assessment by the IYSA.

I understand that membership in the IYSA is a privilege and not a right and may be withdrawn for failure of the League to comply with the rules, regulations and legitimate decisions of the IYSA. I understand that ignorance of the rules and regulations of the IYSA shall not be an excuse for failure to comply with same.

I understand that membership in the IYSA is probationary for eighteen (18) months and can be withdrawn by two thirds (2/3) vote of the IYSA Board of Directors if the League fails to comply with the rules, regulations and decisions of the IYSA. I understand membership in the IYSA can be terminated by two thirds (2/3) vote of the IYSA Board of Directors.

I, the undersigned officer of the above listed Soccer Association, hereby warrant that the above listed Soccer Association is not aware of any claim or occurrences that would give rise to any claim against its employees, volunteers, trustees, committee persons and members or affiliated teams and members. If granted membership in the Illinois Youth Soccer Association (IYSA), I agree to abide by the rules and regulations of the IYSA and be controlled by legitimate decisions as may, from time to time, be made regarding the conduct of the IYSA. The above listed Soccer Association will pay such fees as are required by the IYSA to gain membership as well as those fees and fines that are assessed against its members in the normal course of business.

League President's Signature _____ Date 2/9/2001

02/05/2001   15:59   IL   ILS YOUTH SOCCER ASSN → 18154692469   NO.605   P001



# Illinois Youth Soccer Association (IYSA)
# Application for Membership
## RECREATIONAL LEAGUE AFFILIATION

INDICATE GENDER OF PLAYERS IN YOUR LEAGUE: ☐ BOYS ☐ GIRLS ☑ BOTH

INDICATE SEASON: ☑ SPRING ☑ FALL   Approximate Number of Players _____

AGE/GRADE DIVISIONS __U-07 thru U-19  BOYS AND GIRLS__

APPLICANT'S LEAGUE NAME __SOUTHLAND  SOCCER  LEAGUE__

BUSINESS ADDRESS __10850 WEST  LARAWAY  ROAD__

CITY, STATE, ZIP __FRANKFORT, IL   60423__

Day Phone ( 815 ) 469- 1844   Eve Phone ( ___ )   Fax 815 / 469- 2469

**LIST OFFICERS - ATTACH LIST OF ADDITIONAL/OFFICERS BOARD MEMBERS.**

1. Name __MIKE MATKOVICH__   Title __PRESIDENT__   Phone (815 )469-1741
   Street Address __10850  LARAWAY  ROAD__   City, State, Zip __FRANKFORT, IL  60423__

2. Name __JOHN  HANNAN__   Title __VICE PRESIDENT__   Phone (815 )469-1741
   Street Address __10850  LARAWAY  ROAD__   City, State, Zip __FRANKFORT, IL  60423__

3. Name __SCOTT  FONFARA__   Title __SECRETARY__   Phone ( 815 )469-1741
   Street Address __10850  LARAWAY  ROAD__   City, State, Zip __FRANKFORT, IL  60423__

4. Name __MARSHA ~~BILL STE~~ PANFIL__   Title __VICE PRESIDENT__   Phone (815 )469-1741
   Street Address __10850 LARAWAY ROAD__   City, State, Zip __FRANKFORT ,IL  60423__

DESCRIBE PURPOSE OF LEAGUE'S EXISTENCE __TO PROVIDE  RECREATIONAL SOCCER OPPORTUNITIES FOR__
__CHILDREN  IN THE  SOUTHERN CHICAGO SUBURBS__

TERRITORY TO BE SERVED IN ILLINOIS __SOUTHERN & CENTRAL  COOK COUNTY; DuPAGE AND WILL COUNTIES__

**ENCLOSE COPY OF YOUR CONSTITUTION, BYLAWS OR PLAYING RULES.**

I, the undersigned officer of the above listed Soccer Association, hereby warrant that the above listed Soccer Association is not aware of any claim or occurrences that would give rise to any claim against its employees, volunteers, trustees, committee persons and members or affiliated teams and members. If granted membership in the Illinois Youth Soccer Association (IYSA), I agree to abide by the rules and regulations of the IYSA and be controlled by legitimate decisions as they, from time to time, be made regarding the conduct of the IYSA. The above listed Soccer Association will pay such fees as are required by the IYSA to gain membership as well as those fees and fines that are assessed against its members in the normal course of business.

Signature/Title _____   Date __2/9/2001__

IYSA/IHO

EXHIBIT

B

> 
> 
> To:Greg Vogler
> 
> 
> Team: Downers Grove - U8,U9,U10,U11,U12,U13,U14
> 
> 
> 
> We have received reliable information that your team registered and
> played in the Greater Chicago Soccer league in the Fall 2003.  This is
> against NISL and IYSA rules to participate, roster and register in
> another USSF competitive league at the same time.
> 
> As you may have not been aware of these rules and regulations, no
> action will be taken by the NISL regarding the Fall 03 violations,
> however, we require you to communicate to us in writing, by January
> 1st 2004, your intentions for the Spring 2004 outdoor season.
> 
> The NISL is extremely disappointed that you felt we could not provide
> your club and players with the highest level of competition.
> 
> Thank you anticipation of your reply, a non reply will be an
> assumption that you will continue to be a member of the GCSL, and the
> NISL will act accordingly.
> 
> 
> 
> Thank You
> 
> NISL
> 
> 
> << File: ALTERNATIVE.RTX >>  << File: ENVELOPE.TXT >>
> Greg Vogler
> gvogler@mhmlaw.com
> ***************************************************
> 
> CONFIDENTIALITY NOTICE:
> 
> This Material is intended for the named recipient and, unless
> otherwise expressly indicated, is confidential and privileged
> information.  Any dissemination, distribution or copying of
> this material is prohibited.  If you received this message in
> error, please notify the sender by replying to this message
> and then delete it from your system.  Your cooperation is
> appreciated.
> 
> ***************************************************
> 
 << File: ALTERNATIVE.RTX >>  << File: ENVELOPE.TXT >>

4

EXHIBIT

C

# Illinois Youth Soccer Association

**Hosting Organization must be 100% affiliated and in good standing with Illinois Youth Soccer Association.**

Submit One (1) Original and Three (3) Copies of this Application, Rules, Copies of participating teams' League Rosters with Add/Release forms and Guest Player Permits, Self-addressed, Stamped Envelope for each participating team (no more than four teams) to the Illinois Youth Soccer Association. For more than four (4) teams see IYSA Rule 017(A) Permission to Host Tournament in Illinois.

**PRINT CLEARLY - DO NOT STAPLE!**

To be considered for Friendly Game approval the following must apply: 1. Participating Teams must be currently registered with the Illinois Youth Soccer Association or US Youth Soccer state association. 2. No more than One (1) Age Group is eligible to participate. 3. No more than Four (4) Teams are eligible to participate. 4. No awards will be issued. 5. No fees will be charged. (Each team may pay a referee game fee.) 6. Game official must be U.S. Soccer currently registered. 7. Out-of-state team(s) must be currently registered with their US Youth Soccer State Association. 8. Friendly Game Host must submit to the IYSA a copy of the incident/red card report, out-of-state team's Travel Permit and out-of-state teams' signed IYSA Emergency Medical Release and Liability Waivers within fourteen(14) days after the conclusion of the friendly game.

## APPLICATION TO HOST FRIENDLY GAMES

Name of Friendly Game Event_____

Hosting Organization_____

President or Chief Officer of Hosting Organization _____ Telephone (_____)_____W

Address_____Email_____ (_____)_____H

City_____State_____Zip Code_____ (_____)_____Fax

Location of Friendly Games_____ Date of Friendly Games_____

Friendly Game Director or Contact Person_____ (_____)_____W

Address_____Email_____ (_____)_____H

City_____State_____Zip Code_____ (_____)_____Fax

Age Group: U_____ Check One: • Boys • Girls Length of Games:_____ # of Games/Day_____

**LIST PARTICIPATING TEAMS - USE REVERSE SIDE IF NECESSARY TO COMPLETE ALL INFORMATION.**

| TEAM NAME | League/State Affiliation | Team Coach's Name | Team Coach's Address | Team Coach's Phone |
|-----------|-------------------------|-------------------|---------------------|-------------------|
| 1. | | | | |
| 2. | | | | |
| 3. | | | | |
| 4. | | | | |

**RULE 017 (B) IYSA PERMISSION TO HOST FRIENDLY GAMES IN ILLINOIS**

The hosting team/organization must obtain permission from the IYSA to conduct friendly games in Illinois. In order to be granted permission to host tournaments or games in Illinois the hosting organization and member league/club must be 100% affiliated with Illinois Youth Soccer Association in compliance with the bylaws, policies and requirements of Illinois Youth Soccer Association. Hosting IYSA sanctioned friendly games is a privilege and not a right. The friendly games must not involve more than four teams and the teams must be of one age group, application/participation fees must not be charged and trophies may not be presented. If more than four teams in one age group are involved, the event is no longer considered friendly games and the host must apply for tournament status even if the host does not provide trophies or collect fees. The Friendly Game Host Applicant must be affiliated with the IYSA. The Friendly Game Host Applicant must complete and submit the applicable IYSA/US Youth Soccer Application to Host Friendly Games form with fees to the IYSA prior to scheduling the friendly games. The IYSA will not approve any application that is submitted to the IYSA in seven (7) or less days in advance of the proposed date(s) of the friendly games. Hosting IYSA sanctioned friendly games is a privilege and not a right. Failure to obtain permission from the IYSA will void IYSA insurance for friendly games participants and friendly organizations, subject the hosting organization to a penalty of up to and including $1000, and place the hosting organization in jeopardy of losing its privileges with the IYSA/USYSA which may include its ability to host tournaments for up to two years. In all matters not provided herein, the IYSA Tournament Director's decision shall be final.

*I certify that all players, teams, and members affiliated with the hosting organization, member league/club are 100% affiliated with Illinois Youth Soccer Association (IYSA) and are in compliance with the bylaws, policies, procedures and requirements of Illinois Youth Soccer Association. I certify that the Tournament Host is not a member of any organization that has requirements that conflict with IYSA's bylaws, policies, procedures, rules and requirements. I understand that permission to host a tournament or games in Illinois is a privilege and not a right. I further agree to abide by the terms of this Agreement and all requirements of the IYSA and understand that if the Tournament Host fails to comply with these requirements, I am subject to a penalty up to and including $1000, be placed on probation with the IYSA and jeopardize the privilege of hosting IYSA sanctioned tournaments and friendly games in Illinois. I also agree to indemnify and hold harmless the Illinois Youth Soccer Association, its affiliated organizations and sponsors, their coaches, managers, employees and associated personnel, officers, directors, agents, as each of the undersigned, his/her heirs or next of kin for any and all claims against, by or on behalf of the Tournament Host and its officers and/or agents whether or not such claim or claims are based in whole or in part to the negligence or contributory negligence of any one or more of them.*

_____     _____     _____
*by President or Chief Officer of Hosting Organization*          *Print Name & Title*                           *Date*

## APPROVAL BY ILLINOIS YOUTH SOCCER ASSOCIATION
(For official use only)

By_____ Title_____ Date_____

In granting this permission to host friendly games, neither Illinois Youth Soccer Association, US Youth Soccer, nor US Soccer or its officers, employees or representatives shall be liable for transportation, lodging or injury to persons or property sustained in the course of the approved event. Revised 11/03

**SEND TO: IYSA - FRIENDLY GAME, 1655 S. ARLINGTON HEIGHTS ROAD, SUITE 201, ARLINGTON HEIGHTS, IL 60005**

# EXHIBIT



**Greg Vogler**

| | |
|---|---|
| **From:** | Greg Vogler |
| **Sent:** | Monday, November 03, 2003 3:41 PM |
| **To:** | 'JCosgrove@usyouthsoccer.org' |
| **Subject:** | RE: Question About US Soccer Travel and Tournament Policy |

Thank you for the prompt reply.

-----Original Message-----
**From:** JCosgrove@usyouthsoccer.org [mailto:JCosgrove@usyouthsoccer.org]
**Sent:** Monday, November 03, 2003 3:40 PM
**To:** Greg Vogler
**Subject:** RE: Question About US Soccer Travel and Tournament Policy

Mr. Vogler,

Under US Youth Soccer Travel and Tournament policies what you are suggesting
would be allowable. All US Youth Soccer members must file applications to
host tournaments with their respective state association as is provided in
the policy. Upon providing this application to host, the host must
designate as required in the hosting agreement those the tournament shall
have as participants.

The policy that really applies to your situation and desires is US Soccer
policy 601-7:

http://www.ussoccer.com/templates/includes/services/03policy_revisions.PDF This policy designates two separate
types of tournaments, restricted and
unrestricted. Unrestricted tournaments would be those that allow other
members of the Federation and foreign team to participate.

Please let me know if you have any other questions.

Jim Cosgrove
US Youth Soccer

-----Original Message-----
From: gvogler@mhmlaw.com [mailto:gvogler@mhmlaw.com] Sent: Friday, October 31, 2003 2:07 PM
To: dmessersmith@usyouthsoccer.org
Subject: Question About US Soccer Travel and Tournament Policy

Our Club, the Downers Grove Roadrunners, has its 31 team
registered with the Illinois Youth Soccer Association (IYSA). Six of
our teams are dual registered and are also registered with U. S Club
Soccer , a member of the United States Soccer Federation. Our teams
currently registered with IYSA want to stay registered with the IYSA but
also want to have the option to play at times some U. S. Club Soccer
registered teams in two circumstances: 1. In a 4-team Friendly Games as
a Host; and 2. Host a Tournament that would be open to both U. S. Youth
Soccer and U. S. Club Soccer registered teams. Under the U. S. Youth
Soccer Travel and Tournament Policy can we do those two things? I have
read the U. S Youth Soccer Travel and Tournament Policy , dated March 1,
2002, and it appears we could do so. If we cannot, some of our teams
may opt to register under U. S. Club Soccer because it is that important
to have the option to play reputable local teams that we want to play.
Also, if we cannot, how do you reconcile the ability of U. S. Youth
Soccer teams to host tournaments having foreign teams or host friendlies
having foreign teams but not being able to host U. S. teams registered
with U. S Club Soccer? Please advise and please do not refer me to the
IYSA. I am interested in your policies and views on these matters.
Thanks. Greg Vogler , President of the Downers Grove Roadrunners.

Greg Vogler
gvogler@mhmlaw.com

EXHIBIT

E



# ILLINOIS YOUTH SOCCER ASSOCIATION (IYSA)
## 2004 TOURNAMENT HOST SANCTIONING AGREEMENT
### FOR FULL SIDED TOURNAMENTS IN ILLINOIS
### DEADLINE FOR FILING 2004 TOURNAMENTS - DECEMBER 15, 2003 (The Deadline)
### NO tournaments will be sanctioned for the IYSA Soccer Expo weekend of March 13, 2004.
INCOMPLETE APPLICATION WILL BE RETURNED.
**Hosting Organization must be 100% affiliated and in good standing with Illinois Youth Soccer Association.**

Tournament Name_____ Date(s)_____

Tournament Location_____

Tournament Host_____ Affiliated League(s)_____

Tournament Director_____ Email Address_____

Work Phone(____)_____Ext_____ Cell Phone (____)_____ Fax(____)_____

Street Address_____

City, State, Zip_____

1. We shall complete, sign and return to the IYSA prior to the deadline this IYSA Tournament Host Sanctioning Agreement.

2. We shall complete, sign and return to the IYSA prior to the deadline the IYSA Application to Host Tournament or Games Form.

3. We shall complete, sign and return to the IYSA prior to the deadline the U.S. Youth Soccer Application to Host Tournaments or Games.

4. We shall submit to the IYSA prior to the deadline a copy of the Invitation and rules for the above listed tournament.

5. We shall submit to the IYSA prior to the deadline a letter from the tournament site facility granting use of their fields to the tournament host for the dates indicated on this host application form and specifying number of fields and their exact location . We shall include alternate sites or dates in case of rain-out or unavailability.

6. We shall submit to the IYSA prior to the deadline a separate check in the amount of $400* for the non-refundable tournament application deposit. We shall submit to the IYSA the remaining tournament fees due with the IYSA Post Tournament Report within thirty (30) days after the conclusion of the above listed tournament. We understand that failure to submit the IYSA Post Tournament Report within the required 30 days will result in bond forfeiture, additional penalties, place the tournament host on probation, and jeopardize the tournament host's privilege of hosting IYSA sanctioned tournaments.

7. We shall submit to the IYSA prior to deadline a separate check in the amount of $400 for the Tournament Bond unless our tournament bond is on file at the IYSA and has not been forfeited or refunded. We understand that this bond is subject to forfeiture for non-compliance of this agreement, IYSA/USYSA rules and policies. We understand that this bond will be applied to the above listed tournament for the following year unless the bond has been forfeited or we have submitted to the IYSA a written request for its reimbursement.

8. We shall submit to the IYSA prior to the deadline a separate check in the amount listed below for tournament assessments based on the number of teams listed on the most recent post tournament report. This check is to be made payable to the Illinois State Referee Committee -Tournament Assessor. The Tournament Assessor must be approved by the Illinois State Director of Assessments.

Check the appropriate box and send the applicable payment (estimate based on most recent post tournament report) with your application. If the actual number of teams is above your estimate, submit balance due IYSA with your post tournament report.

☐ 1-99 Teams - $100 for 4 Assessments    ☐ 100-199 Teams - $150 for 6 Assessments    ☐ 200-299 Teams - $200 for 8 Assessments
☐ 300-399 Teams - $250 for 10 Assessments    ☐ 400-499 Teams - $300 for 12 Assessments

9. We agree that the Tournament Director/Official and Tournament's Referee Assignor shall attend the mandatory Tournament Host Meeting at the IYSA Soccer Expo, date listed above. We understand that tournament sanction will not be granted and/or temporary sanction will be revoked, bond forfeited and additional penalties may apply if Tournament Director/Official and Referee Assignor do not attend this meeting. Check www.illinoisyouthsoccer.org for time and location.

10. We agree to use a Tournament Referee Assignor that is at least twenty-one (21) years of age prior to the deadline and is currently on file and in good standing at the Illinois State Referee Committee office and US Soccer (USSF). The Tournament Referee Assignor must register and attend the current season Assignor Certification Course. A list of USSF currently certified referee assignors will be provided at the tournament meeting. We understand that the tournament bond will be forfeited, IYSA insurance coverage will be voided and that additional penalties may apply if we use a Tournament Referee Assignor that does not meet the 21 minimum age requirement and is not currently on file and in good standing with the Illinois State Referee Committee.

11. We agree to use currently licensed USSF referees at the above listed tournament and submit the list of tournament referees to the IYSA with the Tournament Report. We understand that the tournament bond will be forfeited, IYSA insurance coverage will be voided and that additional penalties may apply if we use referees that are not currently on file and in good standing with the Illinois State Referee Committee.

12. Although our tournament may be identified as "invitational", we agree to consider any IYSA or USYSA competitive/travel level affiliated team for participation.

13. We agree to provide the guaranteed number of games or refund a percentage of the tournament's application fee equal to the percentage of guaranteed games not played. For example, if a team was guaranteed four(4) games for a $100 tournament fee and was only allowed to play three(3) out of the four(4) games, then the Tournament Host must refund 1/4 of the $100 or $25.00 to the team.

14. We agree to play U10 age division games using 8v8 roster, field & goal sizes. U11 games may be played using either 11v11 or 9v9 roster, field & goal sizes.

15. We agree to use and have on file the IYSA Emergency Medical Release and Liability Waiver (see enclosed copy) for each player and youth referee participating in the above listed tournament and make it available to the IYSA upon request. We agree that other Medical Release Forms are not acceptable. We agree to submit to the IYSA a copy of the claimant's medical release form with the insurance claim form.

16. We certify to use an electronic device to help detect lightning and approaching thunderstorms and to follow the national lightning and thunderstorm safety guidelines for the duration of the tournament.

Tournament Host Full 10/03 Page 1 of 2

17. We certify to have enough medical personnel on staff at each site for the duration of the tournament to attend to injuries and to complete an incident report for each injury. Medical personnel include certified athletic trainers, emergency medical technicians, paramedics, and physicians. We agree to provide the medical staff with a shelter/tent area for treating injuries and cellular communication. We agree to submit to the IYSA a copy of all incident reports with the tournament report.

18. We certify that golf carts and other motorized vehicles will only be operated by licensed operators that are 18 years of age or older. We certify that the ignition key shall be removed when the vehicle is not being operated.

19. We certify that the fields are safe and that the goal posts are anchored and stored according to the Consumer Product Safety Commission's and goal manufacturer's guidelines. We further agree to inspect each goal prior to its use to ensure that it is safe and properly anchored.

20. We agree to accept only the number of teams for whom our tournament can provide the adequate number of currently licensed USSF referees, safe fields (see 19), and convenient parking. We agree not to accept more teams than indicated on this application and we will submit to the IYSA a list of participating teams with the Tournament Report.

21. We understand that no team shall play more than three (3) games in one day. This number may be further reduced based on weather or other conditions that would compromise the health and safety of the participants.

22. We agree to inspect each participating team's roster/add drop forms/guest player forms and player passes to ensure that they are currently IYSA/USYSA registered and age eligible for the indicated age group.

23. We agree to distribute, collect and submit to the IYSA with the Post Tournament Report an IYSA Guest Player Form, see enclosed copy, for each player who is not listed on the participating team's roster. The IYSA approval signature is not required on the IYSA Guest Player Form for IYSA registered teams participating in IYSA sanctioned tournaments. However, we understand that the guest player's IYSA registered team coach must give permission for participation by his/her signature on the IYSA Guest Player Form. We agree to submit all IYSA Guest Player Forms to the IYSA with the Post Tournament Report within thirty (30) days after conclusion of the tournament.

24. We agree to use and have on file a copy of each participating team's IYSA Tournament Roster, League Roster with Add/Drop Forms and the IYSA Tournament Guest Player Permit attached. We agree to keep these records on file for at least one (1) year after completion of the tournament and make them available to the IYSA upon request.

25. We agree to have on file a copy of each out-of-state participant team's IYSA Tournament Roster, Travel Permit, League Roster with Add/Drop Forms and IYSA Tournament Guest Player Permit. We agree to keep the above listed forms on file for at least one (1) year after completion of the tournament and make them available to the IYSA upon request.

26. We understand that all tournament participants must be currently registered for tournament participation with Illinois Youth Soccer Association or a US Youth Soccer Association State Association. Contact the IYSA office to obtain a Tournament Player Pass and Tournament Guest Player Permit for any unaffiliated player wishing to participate in an IYSA sanctioned tournament.

27. We understand that all teams must be represented at the tournament by a coach or team manager who will be responsible for the conduct of their team and spectators.

28. We certify that the Tournament Host is a member in good standing with the Illinois Youth Soccer Association and understand that in order to be considered for IYSA permission to host tournaments in Illinois, the Tournament Host must be 100% affiliated with the Illinois Youth Soccer Association. When a private organization provides sponsorship for a tournament, the permission to conduct the tournament is granted only to the IYSA affiliate and not the sponsoring organization.

29. We understand that the Tournament Host will forfeit the privilege of hosting an IYSA sanctioned tournament in Illinois if we fail to abide by these requirements and/or fail to submit to the IYSA by the deadline the required documents and payments.

30. We agree not to host a tournament or friendly games at the same site(s) and in conjunction with the tournament listed in this application.

31. We understand that if the tournament is canceled or date changed, tournament bond and application deposit will be forfeited.

32. We agree not to list, advertise and promote in all tournament publications including but not limited to solicitations, applications, mailings, program book, website, emails and advertisement soccer organizations that compete for and solicit IYSA players, teams, coaches and members for membership.

33. We agree that we will not require a team to use only accommodations approved or provided by the tournament/tournaments host and that the use of the tournament's accommodations is not a requirement/condition for a team being accepted to or rejected from the tournament.

34. We understand that the IYSA is not responsible for delays in the publishing and mailing of IYSA publications. We agree that payment for advertisement that we place in IYSA publications cannot be withheld for any reason.

35. We agree that in all matters not provided herein, the IYSA Tournament Committee's decision shall be final.

We the undersigned Tournament Director and the Chief Executive Officer of the hosting organization (Tournament Host) understand that in order to be granted permission to host tournaments or games in Illinois, we agree to all the terms of this agreement. We certify that all players, teams, and members affiliated with the hosting organization, member league/club are 100% affiliated with Illinois Youth Soccer Association (IYSA) and are in compliance with the bylaws, policies, procedures and requirements of Illinois Youth Soccer Association. We certify that the Tournament Host is not a member of any organization that has requirements that conflict with IYSA's bylaws, policies, procedures, rules and requirements. We understand that permission to host a tournament in Illinois is a privilege and not a right. We further agree to abide by the terms of this Agreement and all requirements of the IYSA and understand that if the Tournament Host fails to comply with these requirements, we will forfeit the tournament bond, be subject to a penalty up to and including $1000, be placed on probation with the IYSA and jeopardize the privilege of hosting IYSA sanctioned tournaments in Illinois. We also agree to indemnify and hold harmless the Illinois Youth Soccer Association, its affiliated organizations and sponsors, their coaches, managers, employees and associated personnel, officers, directors, agents, to each of the undersigned, his/her heirs or next of kin for any and all claims against, by or on behalf of the Tournament Host and its officers and/or agents whether or not such claim or claims are based in whole or in part to the negligence or contributory negligence of any one or more of them.

| by Tournament Director | | Print Name | Date |
|---|---|---|---|
| | Title | | |
| by Tournament Host Organization President/Chief Executive Officer | | Print Name | Date |

**BOTH SIGNATURES ARE REQUIRED!**

EXHIBIT

F

# ACORD. CERTIFICATE OF LIABILITY INSURANCE

**DATE (MM/DD/YYYY)** 01/07/2004

| PRODUCER | For Service Contact |
|---|---|

Pullen Insurance Services, Inc.
6300 Ridglea Place, #614
Fort Worth, TX 76116
(817) 738-6100

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.

| INSURERS AFFORDING COVERAGE | NAIC # |
|---|---|

| INSURED | |
|---|---|

Illinois Youth Soccer Association
1655 S. Arlington Heights Rd., Suite 201
Arlington Heights, IL 60005

| INSURER A: | Virginia Surety Insurance |
|---|---|
| INSURER B: | Great American Assurance |
| INSURER C: | Hartford Life & Accident |
| INSURER D: | |
| INSURER E: | |

## COVERAGES

THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, CONDITIONS AND EXCLUSIONS OF SUCH POLICIES. AGGREGATE LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | ADDL INSRD | TYPE OF INSURANCE | POLICY NUMBER | POLICY EFFECTIVE DATE (MM/DD/YY) | POLICY EXPIRATION DATE (MM/DD/YY) | LIMITS | |
|---|---|---|---|---|---|---|---|
| A | X | **GENERAL LIABILITY** <br> X COMMERCIAL GENERAL LIABILITY <br> CLAIMS MADE  X  OCCUR <br><br> (Med. expense is provided for Spectators ONLY) <br><br> GEN'L AGGREGATE LIMIT APPLIES PER: <br> POLICY  PROJECT  LOC | T7-0000000777201 | 09/01/2003 | 09/01/2004 | EACH OCCURRENCE | $1,000,000. |
| | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $300,000. |
| | | | | | | MED EXP (Any one person) | $5,000. |
| | | | | | | PERSONAL & ADV INJURY | $1,000,000. |
| | | | | | | GENERAL AGGREGATE | NONE |
| | | | | | | PRODUCTS - COMP/OP AGG | $1,000,000. |
| A | X | **AUTOMOBILE LIABILITY** <br> ANY AUTO <br> ALL OWNED AUTOS <br> SCHEDULED AUTOS <br> X HIRED AUTOS <br> X NON-OWNED AUTOS | T7-0000000777201 | 09/01/2003 | 09/01/2004 | COMBINED SINGLE LIMIT (Ea accident) | $1,000,000. |
| | | | | | | BODILY INJURY (Per person) | |
| | | | | | | BODILY INJURY (Per accident) | |
| | | | | | | PROPERTY DAMAGE (Per accident) | |
| | | **GARAGE LIABILITY** <br> ANY AUTO | | | | AUTO ONLY - EA ACCIDENT | |
| | | | | | | OTHER THAN EA ACC <br> AUTO ONLY: AGG | |
| B | X | **EXCESS/UMBRELLA LIABILITY** <br> X OCCUR  CLAIMS MADE <br><br> DEDUCTIBLE <br> RETENTION  $ | EXC00005910581-01 | 09/01/2003 | 09/01/2004 | EACH OCCURRENCE | $4,000,000. |
| | | | | | | AGGREGATE | $4,000,000. |
| | | | | | | | |
| | | | | | | | |
| | | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY** <br> ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? <br> If yes, describe under SPECIAL PROVISIONS below. | | | | WC STATU- TORY LIMITS  OTHER | |
| | | | | | | E.L. EACH ACCIDENT | |
| | | | | | | E.L. DISEASE - EA EMPLOYEE | |
| | | | | | | E.L. DISEASE- POLICY LIMIT | |
| C | | **OTHER** <br> Participant Accident Medical | 36-SB-205577 | 09/01/2003 | 09/01/2004 | | $100,000. |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES / EXCLUSIONS ADDED BY ENDORSEMENT / SPECIAL PROVISIONS
Insurer A  Limits of Liability include Participant Legal Liability          Illinois Youth Soccer Association & NISL & IWSL & Downers Grove Roadrunners
Insurer A: Certificate Holder is Named as Additional Insured with respect to the operations of the Named Insured.
This certificate does not cover activities that are not sanctioned by Illinois Youth Soccer Association. Unsanctioned activities include but are not limited to Y League, US Clubs, indoor and adult games and tournaments.

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| District 69 <br> Henry Puffer School <br> 2220 Haddow St. <br> Downers Grove, IL 60515 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, THE ISSUING INSURER WILL ENDEAVOR TO MAIL _30_ DAYS WRITTEN NOTICE TO THE CERTIFICATE HOLDER NAMED TO THE LEFT, BUT FAILURE TO DO SO SHALL IMPOSE NO OBLIGATION OR LIABILITY OF ANY KIND UPON THE INSURER, ITS AGENTS OR REPRESENTATIVES. <br><br> AUTHORIZED REPRESENTATIVE |

ACORD 25 (2001/08)

© ACORD CORPORATION 1988

## IMPORTANT

If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

If SUBROGATION IS WAIVED, subject to the terms and conditions of this policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

## DISCLAIMER

The Certificate of Insurance above does not constitute a contract between the issuing insurer(s), authorized representative or producer, and the certificate holder, nor does it affirmatively or negatively amend, extend or alter the coverage afforded by the policies listed thereon.

EXHIBIT

G



# Illinois Youth Soccer Association (IYSA)
## COMPETITIVE/TRAVEL LEAGUE MEMBERSHIP APPLICATION
*Incomplete applications & those without required documents will be returned!*

Application with support documents must be received by IYSA at least eight (8) months prior to the start of the Applicant's league season.

1. Applicant's (League) Name __Greater Chicagoland Soccer League (GCSL)__

2. Applicant's Street Address __10850 Laraway Rd.__

3. Shipping Address (Not PO Box) __same__

4. City, State, Zip __Frankfort, IL 60423__

5. Website __WWW.gcsl.us__ Email _____

6. Day Phone (815 )469-1844 Ext 205 Eve Phone ( ) same Fax ( 815 )469-1844

7. Indicate Gender of Players in Your League: ☒ BOYS ☒ GIRLS ☒ BOTH

8. Indicate League Season(s): ☒ SPRING ☒ FALL Estimated # of Boys Teams _____ Estimated # of Girls Teams _____

9. Indicate U-age Divisions __U7 - U19__

10. Describe purpose for Applicant's existence:
The GCSL exists to offer soccer clubs and their teams an opportunity to develop their level of ability by offering good competition for GCSL teams will also have representation on the board and competition committee. The GCSL will seek meaningful input from clubs on team division play.

11. Describe territory to be served in Illinois by Applicant:
Southern & Central Cook county, DuPage and Will County as well as Northwestern Indiana

12. Describe the need that will be served by the Applicant which is not being served by a current member:
The league will serve the needs of the soccer clubs in the Chicago land area, offering clubs / teams a voice or opportunity to affect change or to participate in recommending changes to league play or by laws that they currently do not have. GCSL helps clubs work together and with each other GCSL offers a significant savings from other leagues.

13. Complete and submit to IYSA the IYSA Organization Information Sheet.
14. Complete and submit to IYSA the IYSA Directors & Officers Update.
15. Sign and submit to IYSA Competitive League Affiliation Agreement.
16. Complete and submit to IYSA Non-Profit Organization Liability Application.
17. Complete and submit to IYSA the IYSA List of Clubs verifying participation in your organization and support letters from the clubs on their original club stationary.
18. Submit to IYSA a copy of Applicant's constitution, bylaws, and playing rules.
19. Submit to IYSA a copy of the Applicant's most recent annual financial report and audited financial statements. In the event Applicant has been in existence for less than a year and does not have an annual financial report, submit a copy of Applicant's current financial statements and proposed budget for the current year.
20. Submit to IYSA a file-stamped copy of Applicant's Articles of Incorporation and a certificate of good standing from the Illinois Secretary of State.



**illinois**
*Youth Soccer*

# Board of Directors and Officers Form

**IMPORTANT NOTE!** Protect your volunteers! Complete and submit this form seasonally to Illinois Youth Soccer Association and when changes occur to your association's directors and officers throughout the year. Please keep in mind that the only the officers and directors that are on file with our office will be covered by Illinois Youth Soccer's Directors & Officers Insurance.

PLEASE PRINT & INDICATE: SEASON __Fall__     YEAR __2004__     DATE OF UPDATE_____

ASSOCIATION __Greater Chicagoland Soccer League__   Website__www.gcsl.us__
Address_____ __10850 Laraway Rd.__
Contact's Name __Linda Ball__     Title __Executive Director__
Day Phone(__815__)__469-1844__   Fax(__815-469-1844__)   Email __Lball@hallmarksportsclub1.co__
Date(s) of Coaches/Seeding Meeting __July 15__
Location of Meeting __Hallmark Sportsclub__
Delivery Address (if different)_____

**#1**
Name __Linda Ball__     Title __Executive Director__
Street Address __1610 Briarcrest__
City, State, Zip __New Lenox, IL 60451__
Day Phone (__815__) __469-1844__   Eve Phone (____)     Fax(__815__)__469-1844__
Email Address(s) __Lball@hallmarksportsclub1.com__

**#2**
Name __Joseph Bachan__     Title __Treasurer__
Street Address __17151 Morse ST__
City, State, Zip __Lowell, IN 46356__
Day Phone (__219__) __696-2800__   Eve Phone (____)     Fax(__219-__)__696-2232__
Email Address(s) __JBachan@sacoindustries.com__

**#3**
Name __Brian Kibler__     Title __Board Member__
Street Address __3712 Bluejay Ln.__
City, State, Zip __Naperville, IL 60564__
Day Phone (__630__)__922-1228__   Eve Phone (__630__)__841-4644__   Fax(__630__)__922-1229__
Email Address(s) __BK@napervillesoccer.org__

**#4**
Name __Judy Clark__     Title __Board Membr__
Street Address __3843 Hampton Ave Ave__
City, State, Zip __Western Springs, IL 60569__
Day Phone (__708__)__246-8464__   Eve Phone (____)__841-__   Fax(____)
Email Address(s) __Judyclark@LTsoccer.org__

**#5**
Name_____ __Greg Vogler__     Title __Board member__
Street Address __5401 Maplewood PL.__
City, State, Zip __Downers Grove IL 60515__
Day Phone (__630__)__969-1341__   Eve Phone (____)     Fax(__312__)__775-8000__
Email Address(s) __gvogler@mhmlav.com__

**#6**
Name_____ __Steve Davidson__     Title __Director Of Officiating__
Street Address __10850 Laraway Rd.__
City, State, Zip __Frankfort IL 60423__
Day Phone (__815__)__469-1844__   Eve Phone (____)     Fax(____)
Email Address(s) __sdavidson@hallmarksportsclub1.com__

## ILLINOIS YOUTH SOCCER ASSOCIATION
## LIST OF CLUBS VERIFYING PARTICIPATION WITH THE APPLICANT

**SUBMIT WITH APPLICATION!** For each club listed below attach a letter from the club's chief officer or president on the club's stationary explaining the need for the Applicant's existence and verifying/guaranteeing participation with the Applicant should it be approved as an Illinois Youth Soccer Association member league.

#1 Club Name __Chicago Magic__
Chief Officer's Name __Micheal Matkovich__          Title __Director of Coaching__
Street Address __10850 Laraway Rd.__
City, State, Zip __Frankfort, IL 60423__
Day Phone (__815__)__469-1741__   Eve Phone (___)___   Fax (__815__)__469-4712__
Email Address(s)__Matko@chicagomagic.net__

#2 Club Name __Naperville Lightning__
Chief Officer's Name __Brian Kibler__          Title __Director of Coaching__
Street Address __PO Box 4287__
City, State, Zip __Naperville IL 60567__
Day Phone (__630__)__305-8332__   Eve Phone (___)___   Fax (__630__)__305-8804__
Email Address(s).__kibler@naperville.org__

#3 Club Name __Downers Grove__
Chief Officer's Name __Greg Vogler__          Title __President__
Street Address __5401 Maplewood PL__
City, State, Zip __Downers Grove, IL 60515__
Day Phone (__312__)__775-8000__   Eve Phone (__630__)__969-1341__   Fax (___)___
Email Address(s) __gvogler@mhmlaw.com__

#4 Club Name __Chicago Freedom__
Chief Officer's Name __Chris Karabtsis__          Title __Director of Coaching__
Street Address __10850 Laraway Rd.__
City, State, Zip __Frankfort, IL 60423__
Day Phone (__815__)__469-1844__   Eve Phone (___)___   Fax (__815-__)__469-1844__
Email Address(s) __Karabtsis@hallmarksportsclubl.com__

#5 Club Name __Junior Stars__
Chief Officer's Name __Jim Boersma__          Title __President__
Street Address __PO Box 342__
City, State, Zip __Lowell, IN 46356__
Day Phone (__219__)__696-1888__   Eve Phone (___)___   Fax (__219__)__696-2252__
Email Address(s) __None__

#6 Club Name __Lyon's Twsp.__
Chief Officer's Name __Alex Hernandez__          Title __Director of Coaching__
Street Address __PO Box 462__
City, State, Zip __LaGrange, IL 60525__
Day Phone (__708__)__534-4008__   Eve Phone (___)___   Fax (___)___
Email Address(s) __Play@ltsoccer.org__

#7 Club Name __Panthers SC__
Chief Officer's Name __Tim Fell__          Title __Director__
Street Address __PO Box 464__
City, State, Zip __Oswego, IL 60543__
Day Phone (__630__)__585-3885__   Eve Phone (___)___   Fax (___)___
Email Address(s) __Timfell@prodigy.net__

# Illinois Youth Soccer Association (IYSA)
# Competitive League Affiliation Agreement

. The League/Association hereinafter referred to as the Applicant agrees to complete and submit to the Illinois Youth Soccer Association, YSA) the IYSA Competitive/Travel League Application for Membership at least eight (8) months prior to start of Applicant's league season.

The Applicant agrees to complete and submit to the IYSA the Fireman's Fund Non-profit Organization Liability Application.

. The Applicant agrees to complete and submit to the IYSA the Organization/Club Information Sheet and do so annually thereafter.

. The Applicant agrees to complete and submit to the IYSA the Directors/Officers Update and do so annually thereafter.

. The Applicant agrees to complete and submit to the IYSA the IYSA Statement of Understanding and Agreement and do so annually hereafter.

i. The Applicant agrees to submit to the IYSA a copy of the Constitution, Bylaws or Governing Document and Playing Rules of the Applicant and advise changes annually thereafter by August 1st as per IYSA Rule 025. If the Constitution, Bylaws, or Governing Document and Playing Rules do not conform to rules, regulations and purpose of the IYSA, they shall be amended before application will be considered.

7. The Applicant agrees to pay to the IYSA the annual affiliation fee and do so annually thereafter.

8. The Applicant agrees to register all of its players, coaches, teams, referees and administrators with Illinois Youth Soccer Association seasonally and timely pay all dues and fees of the IYSA as per IYSA Rule 025.

9. The Applicant agrees to submit to the IYSA its players and coaches information via an IYSA compatible electronic format as per IYSA Rule 025. The following information is required for players and coaches: registration number, first name, last name, street address, city, state, zip code, area code, phone number, birthdate (01/01/00), gender, Team's U Age, Club, Team Name and Type (04 for player or 01 for coach). Each category is to be entered into a separate field and saved as a .dbf, .txt or .xls or League Organizer file.

10. The Applicant agrees to operate in the territory designated to the IYSA in the Applicant's application. Should the Applicant wish to change the territory, the Applicant must submit a new League Application to the IYSA for approval.

11. The Applicant agrees that Seventy-five (75) % of the Applicant's registered teams shall be from the geographical area designated in its application to the IYSA.

12. The Applicant agrees to schedule and maintain regularly scheduled league play among at least four (4) teams in a minimum of five (5) age divisions per applicable gender within its association. The Applicant agrees that each division within the league will have a structured group of at least four (4) teams joined for the purpose of inter-club play under a common set of administrative and competition rules. The Applicant understands that a series of round robin tournaments are not considered "regularly scheduled league play".

13. The Applicant certifies that each participant has a completed and signed IYSA Medical Release and Liability Waiver and agrees to submit a copy of the waiver to the IYSA with each insurance claim form.

14. The Applicant agrees to have within its rules a written program for assigning and paying referees and to make it available to the IYSA.

15. The Applicant agrees to conduct a Risk Management Program in accordance with IYSA Rule 019 and submit to the IYSA its Risk Management League Certification indicating compliance.

16. The Applicant understands and agrees that membership in the IYSA is a privilege not a right that may be withdrawn by two thirds (2/3) vote of the IYSA Board of Directors.

17. The Applicant agrees to comply with the league requirements and decisions, rules, regulations, policies, procedures, bylaws of the IYSA and understands that failure to comply with any one or more of them is cause for withdrawal of Applicant's IYSA affiliated League/Association status and membership in the IYSA.

18. The Applicant understands and agrees that ignorance of the league requirements, rules, bylaws and policies of the IYSA is not an excuse and failure to comply with them may result in the withdrawal of membership in the IYSA.

19. The Applicant agrees to pay such fees as are required by the IYSA to gain and maintain membership as well as those fees and fines that are assessed against its affiliated organizations or individuals within the Applicant's organization which are not paid within one month after assessment.

20. The Applicant understands and agrees that to remain in good standing with the IYSA and continue to operate as an IYSA affiliated member league, the Applicant must meet the minimum league membership standards required by the IYSA. The Applicant agrees that it is the Applicant's responsibility to notify the IYSA when the league membership requirements described herein are not being met and to request a variance in writing from the IYSA stating the reason for the request.

We the undersigned attest that we are the President and Chief Executive Officer of the Applicant (League/Association) and that we have the authority to conduct business on behalf of the Applicant and we agree to the terms listed in this agreement.

On behalf of the Applicant we understand and agree to not be a member of or join any organization that has requirements, rules and policies that conflict with IYSA's bylaws, policies, procedures, rules and requirements.

If granted membership in the IYSA, we agree that the Applicant will adhere to all bylaws, rules, procedures, regulations and decisions made by the IYSA.

On behalf of the Applicant we understand and agree that if approved, the League will consist of only IYSA/US Youth Soccer registered teams.

We agree that membership in the IYSA is a privilege and not a right and may be withdrawn for failure of the Applicant to comply with the bylaws, rules, regulations, policies and decisions of the IYSA. We understand and agree that ignorance of the rules and regulations of the IYSA shall not be an excuse for failure to comply with same.

We hereby warrant that the Applicant is not aware of any claim or occurrences that would give rise to any claim against its employees, volunteers, trustees, committee persons and members or affiliated teams and members.

We agree to indemnify and hold harmless the Illinois Youth Soccer Association, its affiliated organizations and sponsors, their coaches, managers, employees and associated personnel, officers, directors, agents, to each of the undersigned, his/her heirs or next of kin for any and all claims against, by or on behalf of the Applicant and its officers, agents and/or members whether or not such claim or claims are based in whole or in part to the negligence or contributory negligence of any one or more of them.

APPLICANT'S OFFICIAL NAME **Greater Chicagoland Soccer League (GCSL)**

| | | |
|---|---|---|
| _____ | **Ronald P. Bergstrom** | **12/02/03** |
| by President | Print Name | Date |
| | | |
| _____ | _____ | _____ |
| by Chief Executive Officer | Print Name | Date |



# FIREMAN'S FUND INSURANCE COMPANY
## NON-PROFIT ORGANIZATION LIABILITY APPLICATION

### SUPPLEMENTAL INFORMATION FORM



**Fireman's Fund**

**ALTRU**

1. Name of Organization: __Greater Chicagoland Soccer League__

2. Principal Address: __10850 Laraway Rd,Frankfort IL 60423__

3. Number of employees (stated in full-time equivalents): _____

4. Complete the following for the past two fiscal years:  __2004 will be year 1__

| Fiscal year-ended | Total Gross Revenue | Net Revenue | Total Assets | Net Assets |
|---|---|---|---|---|
| ___/___/___ | $ | $ | $ | $ |
| ___/___/___ | $ | $ | $ | $ |

5. Has any claim been made against the Organization, its Directors, Officers or other personnel for an error or omission in the performance of its/his/her duties?  If yes, please explain.

_____ NO _____

6. Is the Organization, its Directors, Officers or other personnel cognizant of any fact, circumstance or situation which may reasonably be expected to give rise to a claim within the scope of the Directors & Officers or Organization Liability policy? If yes, please explain.

_____ NO _____

7. Name of individual designated to receive notices regarding this coverage: __Kim Duncan__

THE UNDERSIGNED IS THE AUTHORIZED AGENT OF THE PERSONS AND ORGANIZATION PROPOSED FOR THIS INSURANCE AND HEREBY DECLARES THAT TO THE BEST OF HIS/HER KNOWLEDGE THE STATEMENTS HEREIN ARE TRUE AND COMPLETE. SIGNING THIS APPLICATION DOES NOT BIND THE INSURANCE CARRIER TO PROVIDE COVERAGE. THIS SUPPLEMENTAL INFORMATION FORM IS CONSIDERED PART OF THE APPLICATION SIGNED AND DATED BY _____

BEHALF OF ____Greater Chicagoland Soccer League__ ON __12/02/03__

## FRAUD WARNING:

ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON, FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION, OR CONCEALS FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME AND SHALL ALSO BE SUBJECT TO A CIVIL PENALTY NOT TO EXCEED FIVE THOUSAND DOLLARS AND THE STATED VALUE OF THE CLAIM FOR SUCH VIOLATION.

INSURED MUST SIGN ACKNOWLEDGMENT OF THE ABOVE STATEMENT (below).

SIGNED: _____   DATE: __12/02/03__

(President, Chairperson or Executive Director)

PRINT NAME and TITLE: __Ronald P. Bergstrom__

# DOWNERS GROVE ROADRUNNERS SOCCER CLUB
## 5401 Maplewood Place
### Downers Grove, Illinois 60515

Greg Vogler, President

312/775-8000 (work)
630/969-1341 (home)

November 18, 2003

To Illinois Youth Soccer Association:

The Downers Grove Roadrunners Soccer Club strongly recommends and requests that the IYSA fully sanctions the Greater Chicagoland Soccer League (GCSL), as an Illinois Youth Soccer affiliated league starting with the 2004 Fall season.  During the past Fall season, the Roadrunners had nine (9) teams participate in the GCSL.  In the Fall of 2004, the Roadrunners would expect about twenty (20) of its teams, and probably more, to participate in the GCSL because of the following benefits:

1.  GCSL offers significant savings on league fees as compared to NISL and IWSL.

    • Each Roadrunners boys U-8 thru U-14 team in the Fall and each boys U-15 thru U-18 team in the Spring saves about $400 to $450 per team as compared to NISL's fees.

    • Each Roadrunners boys U-8 thru U-14 team in the Spring saves about $200 to $250 per team as compared to NISL's fees.

    • Each Roadrunners girls U-8 thru U-18 team saves about $100 to $200 per team for each season as compared to IWSL's fees.

2.  GCSL offers a Club-friendly atmosphere having greater flexibility and ease of administration.

    • On-line computer access for GCSL player registration, add/release of players, travel permits and more.

    • GCSL allows up to 26 players on roster (14 or 18 may dress for game depending on age group) to permit free flow of Roadrunners players on Roadrunners teams to maximize player development.

3.  GCSL seeks meaningful input from the Roadrunners Club on team divisional play.

## DOWNERS GROVE ROADRUNNERS SOCCER CLUB

Illinois Youth Soccer Association
November 18, 2003

2

- GCSL allows the Roadrunners representative to help select the divisions and provide input for our Roadrunners' team placements.

- GCSL helps Clubs work together and with each other. In contrast, the combatant NISL seeding meetings are very unhelpful to the promotion of soccer.

In my opinion, it is extremely important to have competitive soccer leagues in our Chicagoland suburbs. Up until recently, the NISL was the only reasonably-located league around for the Downers Grove boys teams. NISL fees are grossly high, and their services can be improved. Our Club can probably save at least $15,000 per year in league fees with our teams participating in GCSL as compared to NISL and IWSL. We also get better service with GCSL.

As you know, a GCSL-registered team cannot play in the Illinois State Cup unless the team registers with an IYSA-sanctioned league. There also are hurdles with GCSL teams playing in certain other tournaments and events. These hurdles cause problems that simply should not exist in youth soccer.

Competition between the NISL, IWSL, GCSL and other leagues will improve overall soccer services at more fair prices.

The Roadrunners would like to keep all of its players registered with IYSA. We like much of what you do for us. However, the Roadrunners will look elsewhere for leagues for other options to obtain cost savings and improvement of services. Sanctioning the GCSL as an IYSA-affiliated league will benefit greatly the soccer community. In my opinion, such sanctioning will help the IYSA in the long run.

I am a volunteer, unpaid Board Member of the GCSL. I am volunteering my time because of our belief of the importance of having competitive soccer leagues in our area. Please call me at (w) 312-775-8000 if you have questions or desire additional information.

Very truly yours,

Greg Vogler
President of Downers Grove
Roadrunners Soccer Club

GJV/mms



10850 W. Laraway Road, Frankfort, IL 60423    www.chicagomagic.net    (voice). 815.469.1741 (fax) 815.469.4712

November 23, 2003

Mr. Gus Bender
President
Illinois Youth Soccer Association
1655 S. Arlington Heights Road
Suite 201
Arlington Heights, IL 60005

Dear Mr. Bender:

I have been asked to formally notify your offices of our club's (Chicago Magic) intentions to register all of our teams in the newly organized Greater Chicagoland Soccer League.

As Director of Coaching, it is my decision which league to enter our teams in.   I plan on registering both my boys and girls teams in this league in the fall of 2004.

We look forward to participating in this new league and continuing to grow our relationship with the Illinois Youth Soccer Association – for the Good of the World's Game.

Sincerely,

CHICAGO MAGIC

Mike Matkovich
Director of Coaching





# NAPERVILLE LIGHTNING SOCCER CLUB

November 19, 2003

Illinois Youth Soccer Association

Dear IYSA representative:

Naperville Lightning Soccer Club has 30 teams interested in participating in the Greater Chicagoland Soccer League for the Fall 2004 season. It is our understanding that the IYSA allows teams to play in more then one league sanctioned by the IYSA, as long as, the rosters are the same. This will allow our club the opportunity to play against teams that are only playing in one of these IYSA leagues, and not the other.

Sincerely,

Brian Kibler
Director of Soccer



10850 W. Laraway Rd., Suite 1E, Frankfort, IL 60423     www.chicagofreedom.com     815.469.1844 ext. 206     fax 815.469.4712

November 23, 2003

Mr. Gus Bender
President
Illinois Youth Soccer Association
1655 S. Arlington Heights Road
Suite 201
Arlington Heights, IL 60005

Dear Mr. Bender:

I have been asked to formally notify your offices of my club's (The Chicago Freedom) intentions to register my teams in the Greater Chicagoland Soccer League in the fall.

As you know, my club is relatively new and has been growing in numbers since its inception last year. In the fall of 2005 , I plan to add a girls program and these teams will participate in this new league as well as our boys teams.

I look forward to participating in this new league as it becomes under the guidance of IYSA.

Sincerely,

CHICAGO FREEDOM SC

Chris Karabatsis
Director of Coaching

# Park Forest Wings SC
## PO BOX 381
### Park Forest, IL 60461

E-Mail:                          Phone: 708-503-1994        Fax: 708-
                                 503-1997                      503-1997

---

December 12, 2003

To: Illinois Youth Soccer Association

Re: Park Forest Wings SC

From: Bill Dekker, Director


Dear IYSA,


We will have two girls and three boys teams in the GCSL this spring. While the
league works on becoming sanctioned it will be our intention to put all of our
teams into this league. The league fits our needs for many reasons and we want to
support its efforts.


Respectfully yours,


Bill Dekker

EXHIBIT

H

**Illinois Youth Soccer Association**
**Board of Directors Meeting**
**IYSA Office**
**February 7, 2004**

## GREATER CHICAGOLAND SOCCER LEAGUE (GCSL)
Board Meeting reconvened at 10:30 with representatives of GCSL in attendance.

GCSL Representatives:

| | |
|---|---|
| Joseph Bachan | Greater Chicagoland Soccer League, Treasurer |
| | Southland Athletic Association, Treasurer |
| | Hallmark Sports Club, Financial Manager |
| Linda Ball | Greater Chicagoland Soccer League, Executive Director |
| | Southland Athletic Association, Director |
| Tim Kuiper | Hallmark Sports Club, Attorney |
| Greg Vogler | Greater Chicagoland Soccer League, Director |
| | Greater Chicagoland Soccer League, Competition Committee Member |
| | Downers Grove Roadrunners Soccer Club, President |

Ball stated that the GCSL operates as a league under US Clubs. If approved as an IYSA league, the GCSL would vote if they would remain as a US Clubs league. Vogler gave several reasons for the operation of the GCSL: 1) dissatisfaction with existing leagues, primarily fees, 2) greater input in what division teams will be playing, 3) better and more competition. Vogler stated that if approved as an IYSA league, the GCSL would vote if they would remain as a US Clubs league in whole or in part and would vote annually thereafter on this issue.

Ball explained that Competition Committee makes most of the decision for the GCSL. GCSL board makes decisions based on Competition Committee recommendations. Ball listed the following committee members.

| | |
|---|---|
| Greg Vogler | Downers Grove Roadrunners Soccer Club |
| Brian Kibler | Naperville Lightning Soccer Club |
| Alex Hernandez | Lyons Township Soccer Club |
| Bill Dekker | Park Forest Wings |
| Scott Fanfara | Chicago Magic |

Seyring stated that application submitted to the IYSA was for the GCSL but the incorporation and support documents were for the Southland Athletic Association (SAA). Ball and Bachan agreed to send documents explaining the DBA relationship between GCSL, SAA, and Hallmark Sports Club. Ball agreed to send clarification regarding GCSL's voting structure. Bachan stated that the reason that no financial statements were submitted to IYSA for SAA was that although SAA was incorporated in 2001, it remained inactive for a long time. Bachan said that the first financials would be available in the Fall of 2004. Seyring requested GCSL to submit to IYSA a budget and financial statements showing the costs involved. Seyring stated that in the purposes of GCSL's constitution, references were made to governance by US Soccer and FIFA only. He asked if GCSL would adopt IYSA and US Youth Soccer policies, rules and regulations and submit them to IYSA so stating. Ball explained that although the GCSL application was submitted for a competitive league, GCSL would like to include rec. Ball stated that the goal of the GCSL is to stay in the geographical area designated in their application but would welcome any team that wants to join. Seyring requested a resolution stating that

their constitution has been approved by their board. Seyring reminded the league that travel permits are the jurisdiction of the state association not the league as stated in the GCSL rules. Seyring said that the Midwest Champion Cup and tournaments have nothing to do with league play. Berkley stated that acceptance of the league is not an automatic acceptance of the league's tournaments. IYSA needs clearly defined rules of the game from the GCSL. IYSA needs a clarification of players' rules, registration procedures, rostering and roster sizes. Ball agreed to send a letter to the IYSA describing how organizations get voting rights. Ball stated that Matkovich would not have a vote on the GCSL board. Matkovich is listed as a SAA director. Bender explained that although he had spent a year communicating league options to former director of the GCSL Dave Ribbens, the league joined US Clubs without notice to the IYSA.

Seying summarized and Ball agreed that the IYSA needs amended bylaws, a certificate of good standing, financials and a budget that includes costs, clear concise flow chart, clarification of rules, procedures, voting rights and any information that would help the IYSA board make a determination. IYSA will review the information at the next IYSA board meeting.

# EXHIBIT

# I

April 12, 2004


IYSA
1655 S. Arlington Hts Rd.
Suite 201
Arlington Hts., Il 60005

Mr Seyring:

Enclosed, you will find the information that you requested at IYSA's last board meeting.
I believe you will find everything that the board requested in the attached documents.  If
you or any of the other Board Members should have any questions, please do not hesitate
to contact me at the number listed below.

As you know, preparation for the fall season is already underway and takes much
planning and preparation.  GCSL is hoping for an answer to our application as soon as
possible.


Thank you,


Linda Ball
Executive Director
815-469-1844 ext 214
lball@gcsl.us

# CONSTITUTION AND BYLAWS

# CONSTITUTION

## ARTICLE I: NAME, OFFICE & PURPOSES

**Section 1.  Name:** The name of this League shall be the Greater Chicagoland Soccer League, hereinafter sometimes referred to herein as "GCSL" and/or the "League".

**Section 2.** PRINCIPAL OFFICE: The original principal office of GCSL shall be located at 10850 W. Laraway Road, 2E, Frankfort, IL. 60423.
The location of the office may be changed, from time to time, by a two-thirds vote of the Executive Committee as the League develops and grows.

**Section 3.** PURPOSES: The purposes for organization of the GCSL are, in general, to organize, promote, develop and administer youth soccer leagues from age 7 up to and including 19 years of age. The League will be divided into recreational and competitive divisions throughout the geographic areas serviced. The divisions or Leagues will be divided into divisions for both girls and boys. The objectives and purposes of all divisions will be to encourage physical fitness, skills and knowledge of the international sports activity known as soccer as governed by the Federation Internationale De Football Association and the United States Soccer Federation.

The GCSL will endeavor to accomplish is purposes by:

    A.  Encouraging both competitive and recreational club development for participation by both genders, the creation of associations and/or organizations, and programs to reach out to all youths in the geographic areas serviced by GCSL so the experiences learned by participation in the League's programs can help build and develop better citizenship, leadership and quality in the lives of the participants;

    B.  Encourage the development of good sportsmanship and fair play while, at the same time, competing amongst each other to achieve excellence in their chosen sporting activities as well as in their experiences throughout life;

    C.  Encourage the development and principles of good character in the participants.

1

D. Encouraging and promoting the growth and development of the sport of soccer as well as, via competitive leagues, excellence in the development of skills and knowledge for the sport of soccer; and

Encouraging and developing clubs, associations and/or other instruments of instruction, training, and education of player participants, their parents and families, coaches, officiating and for the public at large.

## ARTICLE II: GEOGRAPHIC SERVICE AREA

**Section 1.** The League's services shall extend to all associations, clubs, organizations and teams who choose to affiliate with the League and qualify for membership within the geographic service area. Should jurisdictional boundaries be set by the United States Youth Soccer Association (hereinafter " USYSA") or the Illinois Youth Soccer Association (hereinafter "IYSA"), the affiliated associations, leagues, clubs, and teams shall thereafter be determined according to the rules of such organizations.

**Section 2.** The initial or original geographic boundaries for the League's service area shall be the far Southern communities located in Cook County, IL as well as the Counties of Will, Grundy, Kendall and Kankakee, Dupage and Northwestern IN, to various degrees, substantial residential development and growth over the past several years necessitating the creation of additional, cost-efficient service organizations to help properly develop, organize and manage the youths now residing in such areas with a focus toward local participation and development of local organizations within such service area to accomplish the purposes of the League.

## ARTICLE III:  AFFILIATION

The GCSL shall be affiliated with the Illinois Youth Soccer Association (IYSA) as a sanctioned league and, through such affiliation, the United States Youth Soccer Association (USYSA) as well as the United States Soccer Federation (USSF). If approved as a sanctioned league, GCSL shall remain in good standings with such organizations and shall abide by all the lawful policies, procedures, rules and regulations of such organizations.

## ARTICLE IV: MEMBERSHIP

2

**Section 1.** CHARTER MEMBERS. There shall be a minimum of three (3) and a maximum of seven (7) Charter Members to form this League. The original Charter Members shall be the individuals or representatives duly declared, elected and/or appointed, such written elections and/or declarations to be provided to the League organizers on or before April 1, 2001, are Ronald P. Bergstrom; and Hallmark SportsClub, Ltd. Additionally, up to four (4) additional entities, organizations and/or persons may apply to become Charter Members up to and including the date of July 31, 2004.

**Section 2.** VOTING MEMBERS. Any individual, coach, group of coaches, soccer organization, club, association, or other organization sponsoring youth soccer teams desiring to play in an IYSA sanctioned league may apply to be a voting member of this League. All Charter Members shall be, and are hereinafter sometimes referred to as "Voting Members", and such Voting Member, as a whole, are hereby charged with and deemed to be the ultimate governing body of the League. The Voting Members shall elect an Executive Committee that shall have the ultimate responsibility, on behalf of the Voting Members, to direct the general policies and procedures to be implemented by the Board of Directors and Officers of the League as well as the overall financial affairs and matters of the League pursuant to the terms and provisions hereby adopted and contained within the By-Laws of the League.

Entities applying to the League to become Voting Members must have or create a written and duly constituted constitution or set of by-laws governing its affairs and a copy of such documentation, and amendments thereto, shall be kept and maintained on file with the Secretary of the GCSL

Voting members who organize, field and sponsor teams must have the capability to locate and procure playing fields, in the appropriate numbers and sizes required for league play for the teams which are registered with this League. Voting members must also be able to provide appropriately qualified soccer officials to officiate league matches according to the IYSA approved and universally recognized Laws of the Game.

**Section 3.** TEAM MEMBER. Individual teams, clubs, coaches or other organizations sponsoring and fielding teams for participation in GCSL league play may apply to be a Team Member as long as they are in good standing with IYSA.

**Section 4.** TEAM CATEGORIES. Membership as a Voting or Team Member may be sought by recreational, select, and other special registration

3

categories as recognized and/or approved by IYSA and for which the League undertakes to organize leagues, for both youth genders.

**Section 5.** ADMISSION. The Board of Directors must approve the membership of all Team Members and the Executive Committee must approve the membership applications for Voting Members. Either the Board of Directors and/or Executive Committee may decline to approve a membership application, in their sound discretion, after full and complete debate and a fair opportunity for the applicant to be heard. The exercise of any discretion shall not be contrary to or in conflict with any policies, procedures, rules or regulations of the IYSA.

**Section 6.** FEES. The initial Voting Members must pay, contribute and/or pledge to pay a membership fee calculated by the Board of Directors to be an amount sufficient to cover the League's first year of operating expenses along with an adequate and reasonable operating reserve. Additionally, Voting Members agree to pay their equitable portion of any fair and reasonable capital shortages which may be experienced by the League each year. The Voting Members shall be equitably and pro rata responsible to account to IYSA, or any other Soccer Affiliate and/or governmental agency, for the payment of any and all fees and charges which shall lawfully become due and payable to such entities.

The Board of Directors shall annually determine and submit, on or before May 1st each year, a proposed annual League Budget for the review and approval, as amended, by the Voting Members. Upon approval of the League Budget, by a two-thirds (2/3) majority of the Voting Members, the Voting Members shall thereafter elect three (3) of its members to serve as its Executive Committee for the next fiscal year and the League shall thereafter be duly constituted and authorized to continue the purposes for which the League has been organized.

Team Members, as well as Voting Members, shall pay a membership fee to the League calculated by the Board of Directors to cover the costs of their proportionate cost of participation within the League according to the Annual Budget approved or adopted by the Executive Committee. Team Members shall have no further liability or responsibility to pay or incur any financial deficits experienced by the League but shall be responsible for the payments of any fines, penalties or assessments as are authorized and provided for in the By-Laws or rules agreed to by Team Members upon application to the League for Team Membership.

4

**Section 7.** TERMINATION AND/OR SUSPENSION. The Board of Directors may, within its sole discretion, terminate or suspend the membership of any Team Member. Provided, however, should the Board of Directors elect to terminate a membership the member must first be given notice and shall have 7 days after receipt of notice, to cure any problem, default or other conduct which was determined, by the Board of Directors in its sole discretion and based upon the best information, knowledge and/or belief available to the Board, as the primary cause or reason for termination.

**Section 8.** RETENTION OF AUTONOMY. All members shall retain their own independent autonomy over their teams, clubs, organizations and shall indemnify and hold harmless the IYSA, League, Voting Member, Executive Committee and Board of Directors from any and all misconduct by the team, club or organizations and/or by its coaches, players or others acting for or on behalf of the Team Member.

All Team and Voting Members agree to abide by and follow the Constitution, By-Laws and Rules of the GCSL and the duly adopted Policies, Procedures, Rules and Regulations of the Illinois Youth Soccer Association.

**Section 9.** MEMBERSHIP APPEAL. In the event a Team Member seeks to appeal a decision for suspension or termination, notification of the appeal must be submitted to the Secretary of the League within ten (10) days of the decision or action by the Board of Directors. The Secretary shall immediately request the President to convene, within thirty (30) days, a Special Meeting of the Members, as authorized by Article IX, Section 5 of the By-Laws, to hear, determine and adjudicate the Board decision.

**Section 10.** VOTING PRIVILEGES. Each Voting Member will be entitled to one voting representative, and one alternate, duly certified in writing to the Secretary of the League, to attend any Membership meetings and to vote one (1) vote in any Membership meeting in which a vote is taken. The votes cast by the Team Members in any Membership meeting wherein Team Members may cast a vote shall be weighted by the total number of teams that Team Member entered into league play, during the current league session. The weight to be granted each Team Membership's vote shall be calculated by the Secretary of the League and be on prominent display at each and every Membership meeting requiring a vote by Team Members.

**Section 11.** RESPONSIBILITIES OF VOTING MEMBERS. Voting Members at any Voting Membership Meeting shall each receive one vote on all issues

to be decided or for which ballots are cast. All of the following matters, unless previously delegated to its Executive Committee by a two-thirds (2/3) vote of the Voting Members, must be submitted to a vote of the Voting Members.

    A.  Establishment or amendment of any material change in the purposes provision of the Constitution of the GCSL

    B.  Cessation of business, dissolution, liquidation, consolidation, or merger of GCSL with another entity or business and/or the creation of a debt, mortgage, note or other financial obligation in excess of the sum of $50,000.00

## BY-LAWS

## ARTICLE 1. BOARD OF DIRECTORS

**Section 1. GOVERNMENT.** The general government of the GCSL, as to all items not reserved to the Executive Committee either in these By-Laws and/or the Constitutions, shall be vested in the Board of Directors.

**Section 2. DIRECTORS AND TERMS, OF OFFICE.** The Board of Directors of GCSL shall consist of a minimum of five (5) directors and maximum of fifteen (15) directors, all of which will be elected except those directors who are named by the Constitution as Charter Members. All Directors shall have one (1) vote. The term of office of elected Directors shall be as hereinafter provided. From among the members of the Board of Directors, the Board of Directors shall elect, at the first meeting after the Annual Membership Meeting, a President, up to two (2) Vice-Presidents, and a Secretary and Treasurer, all for an initial term of two years and, thereafter, for such terms as are hereinafter provided.

**Section 3. NOMINATION.** Not less than thirty (30) days prior to the Annual Membership Meeting the Board of Directors shall appoint a Nominating/Election Committee of at least three (3) GCSL members. The committee will solicit and collect the resumes of individuals desiring to serve as directors.

**Section 4. POLICY DECISIONS.** The Board of Directors shall have the authority to decide any question of policy, not specifically reserved to itself by the Executive Committee, Competition Committee, on behalf of the CGSL, providing however, such decision does not conflict with the

6

provisions contained in these By-Laws and/or Constitution or the Policies and Procedures of the IYSA.

Section 5. EMPLOYEES The Board of Directors shall create such staff positions as deemed necessary and feasible and determine wages, hours and working conditions. The Board of Directors shall have the authority to hire, evaluate, promote, discipline, suspend, layoff and terminate any employee of GCSL.

Section 6. CONTRACTS. The Board of Directors may authorize any officer, officers, agent or agents of the GCSL in addition to the officers so authorized by these By-Laws, to enter into any contract or execute and deliver any instrument in the name of and on behalf of the GCSL except as provided in the Constitution.

Section 7. GIFTS. The Board of Directors may accept, on behalf of GCSL, any contribution, gift bequest, or devise for any purpose of GCSL.

Section 8. COMPENSATION. Directors shall not receive any salaries for their services. Nothing herein shall preclude a Director from receiving reimbursement for reasonable expenses incurred while performing as a Director of the GCSL.

Section 9. QUORUM. A majority of the voting Directors of the Board of Directors as referred to in Article I, Section 2, shall constitute a quorum. A quorum must be present to conduct any meeting of the Board of Directors or Competition Committee.

Section 10. DECISIONS. A majority vote of the Board of Directors present shall be required to transact the business of the Board of Directors, unless the vote of a greater number is required by law, these By-Laws and/or Constitution.

Section 11. NOTICE. Directors shall be notified of any meeting of the Board of Directors at least five (5) days prior to the meeting. The notice should state the business to be transacted at said meeting but need not be in order for the Board to act upon any issue unless otherwise specifically required by the law, these By-Laws and /or the Constitution.

Section 12. DUTIES. In addition to other specified duties, all Directors shall represent GCSL in a positive and professional manner, shall attend Board of Directors and General Membership Meetings on a regular basis and shall serve on various committees as designated by the Board of Directors.

7

Section 13. VACANCY. Any vacancy on the Board of Directors, with the exception of vacancies in the Charter Members, shall be filled by majority vote of the Board of Directors. Any Director so shall serve until the next Annual Membership Meeting, at which time the seat(s) shall be filled by election. Any vacancy by a Charter Member Director shall be named by the Voting Members and if a Charter Member vacancy is not named by two (2) weeks prior to the Annual Membership Meeting, the Board of Directors shall appoint a Director to fill the vacancy until the next meeting of the Board of Directors.

Section 14. ABSENTEEISM. When any voting Director misses, without proxy, three (3) unexcused consecutive meetings of the Board of Directors, such member shall cease to be a Director of the Board of Directors, unless the Board of Directors, by majority vote, determines otherwise. Vacancies on the Board of Directors so created shall be filled as prescribed by the Vacancy provision of these By-Laws.

Dismissal from the Board of Directors shall not disqualify a person from exercising his/her rights and performing obligations as a member of GCSL, such dismissal shall not prevent any such member from subsequently being re-elected to the Board of Directors.

Section 15. REMOVAL. Any elected member of the Board of Directors or Officer of the League can be removed by two-thirds (2/3) vote of the Board of Directors or Executive Committee for failure to perform the duties of the position, and whenever in the judgment of the Board of Directors and/or Executive Committee, the best interests of the GCSL would be served thereby. Such removal shall be without prejudice to the employment contract rights, if any, of the person removed.

Section 16. RESIGNATION. Any Director who has served written notification of resignation to the Board of Directors shall be considered relieved of duties relative to the position which as been occupied.

## ARTICLE II: DUTIES OF OFFICERS AND DIRECTORS

Section 1. OFFICERS. The Officers of GCSL shall be President, up to two (2) Vice Presidents who each having equal power and responsibilities except as otherwise noted in these Bylaws, Secretary and Treasurer. No person shall hold more than one of these Offices simultaneously.

8

Section 2. PRESIDENT. The President shall be the principal Officer of GCSL. Subject to the direction and control of the Board of Directors, the President shall be in charge of the business and affairs of the GCSL; shall see that the resolutions and directives of the Board of Directors are carried into effect, except in those instances in which that responsibility is assigned to some other person by the Board of Directors; and, in general, shall perform all duties incident to the office of President and other such duties as may be prescribed by the Board of Directors. The President shall preside at all meetings of the Members and of the Board of Directors. Except in those instances in which the authority to execute is expressly delegated to another Officer or agent of the GCSL or a different mode of execution is expressly prescribed by the Board of Directors, these Bylaws or the Constitution, the President may execute for the GCSL any contracts, deeds, mortgages, bonds, or other instruments which the Board of Directors has authorized to be executed, and may accomplish such execution either individually or with the Secretary, or any other Officer authorized by the Board of Directors according to the requirements of the form of the instrument. The President shall preside at all meetings of the Members and of the Board of Directors and shall be an ex-official member of all GCSL committees authorized by the Board of Directors.

Section 3. VICE PRESIDENT(S). The Vice President(s) shall assist the President in the performance of duties as the President may direct and shall perform such other duties as from time to time may be assigned by the President or by the Board of Directors. In the absence of the President; or in the event of the President's inability or refusal to act, the Vice President representing the largest number of weighted votes, if willing and able, shall temporarily perform the duties of the President, and when so acting, shall have all the powers of and be subject to all the restrictions upon the Office of the President.

Section 4. SECRETARY. The Secretary shall record the minutes of the meetings of the Members and of the Board of Directors and shall place said minutes on file at the principal office of the GCSL as well as distribute copies to all Voting Members. The Secretary shall see that all notices are duly given in accordance with these Bylaws or as required by law, be custodian of the GCSL records, be responsible for maintenance of a directory of the post office address of each Member which shall be furnished to the Secretary by such Member, be responsible for maintenance of a current directory of voting members and perform all duties incident to the Office of the Secretary, and; such other duties as from time to time may be assigned by the President or by the Board of Directors.

9

Section 5. TREASURER. The Treasurer shall be the principal accounting and Financial Officer of GCSL. This Officer shall be responsible for maintenance of adequate books of account for the GCSL; shall have charge and custody of all bonds and securities of the GCSL; shall be responsible for receipts and disbursements, and; shall perform all the duties incident to the Office of Treasurer and such other duties as from time to time may be reasonably assigned by the President or by the Board of Directors. The Treasurer shall appoint such accounts, Certified Public Accountants and/or assistant Treasurers as he/she deems necessary and appropriate. The Treasurer shall be responsible for financial reports to be approved by the Board of Directors at scheduled Board meetings; preparation, in conjunction with the President, of a proposed annual budget for recommendation of approval by the Board of Directors to the Executive Committee, and; for any Financial Report to be presented to any General Membership Meetings.

Section 6. LIABILITY. Elected members of the Board of Directors shall not be personally liable for any legal or financial action taken against either GCSL, Voting Members, Executive Committee, Competition Committee, the Board of Directors, or its member clubs, association, or teams as long as they have acted in what is considered the best interest of the GCSL and are not guilty of negligence or misconduct.

## ARTICLE III: ELECTION OF DIRECTORS

Section 1. ELECTIONS. All elections shall be conducted at the General Membership Meeting. Beginning with the Annual or General Membership Meeting in June, 2004.

Section 2. NOTICE. The Secretary shall be responsible for mailing notice of the date, time and location of the Annual Members Meeting to each voting member. Such notice shall be mailed at least ten (10) days prior to, but not more than thirty (30) days prior to said meeting.

Section 3. NOMINATION. In addition to the candidates reported by the Nominating Committee, any Voting Member may nominate further candidates from the floor at the Annual or General Membership Meeting.

Section 4. ORDER. At the Annual Members Meeting, the designated number of Directors shall be elected, all of whom shall assume office on the first day of the next fiscal year of the League.

Section 5. VOTING. Each Member, in good standing within GCSL, shall cast their votes at the Annual or General Membership Meeting by secret ballot.

# ARTICLE IV: ELECTION OF OFFICERS

Section 1. ELECTION. At the first meeting of the Board of Directors, following the Annual or General Membership Meeting, the Board shall elect a President, up to two (2) Vice Presidents (the number determined by a majority vote of the Board of Directors present), Secretary, and Treasurer. Elected Officers shall hold office for two (2) years.

Section 2. ORDER At the election meeting of the Board of Directors, the Chair of the Executive Committee shall first preside over the Board meeting. The election for President shall then be held and thereafter, the President shall preside over the election of the remaining Officers.

Section 3. VOTING. Each Member of the Board of Directors, in good standing with the GCSL, shall be allowed one (1) vote which, if requested by a majority of those present, shall be cast by secret ballot.

## ARTICLE V: ANNUAL, SPECIAL, AND GENERAL MEETINGS OF THE MEMBERS

Section 1. CHAIR. The President shall preside at all Annual Member, Special and General Meetings of the GCSL. In the absence of the President, the designated Vice President if two (2) have been elected, shall preside. In the absence of the designated Vice President, the other Vice President shall preside, in whose absence, any Director designated by the President shall preside. All meetings shall be conducted in accordance with Robert's Rules of Order.

Section 2. LOCATION. The place of all Annual Member, Special and General Meetings shall be determined by the Board of Directors.

Section 3. NOTICE. Written notice stating the place, date and hour of all Annual Members, Special and General Meetings shall be delivered to each member entitled to vote at such meeting. In the case of a Special or General Meeting, or when required by statute or by these Bylaws, the purpose for which the meeting is called shall be stated in the notice. Notice shall be deemed delivered when properly deposited in the United States mail to the address of record last provided to the Secretary of the League.

11

Section 4. ANNUAL MEMBERS MEETING. The Annual Members Meeting of the GCSL shall be held in the month of February of each year and notice of such meeting shall be mailed to each members as prescribed by these Bylaws. The Annual Members Meeting shall be for the election of Directors; presentation of Annual Reports and for the consideration of such other business as may properly come before it.

Section 5. SPECIAL MEETING. Special Meetings of the Members may be called either by the President, the Board of Directors or not less than two-thirds (2/3) of the Members having voting rights.

Section 6. GENERAL MEETINGS. General Meetings of the members may be called either by the President, the Board of Directors or not less than two-thirds (2/3) of the Members having voting rights., General Meetings shall be held for reporting the business of the GCSL, conducting training and other purposes as deemed necessary.

Section 7. QUORUM. A majority of the Voting Member representatives eligible to vote shall constitute a quorum. A quorum must be present to conduct any meeting of the Members. Withdrawal of members from any meeting shall not be cause for failure of a duly constituted quorum at the meeting.

## ARTICLE VI: COMMITTEES

Section 1. APPOINTMENT AND AUTHORITY. The Board of Directors shall appoint all committee chairpersons from among the members of the Board of Directors. Non-members of the GCSL may serve on Board Committees. All Committee chairpersons shall report to the Board of Directors, which shall have final authority to approve all committees, members policies and procedures.

Section 2. STANDING COMMITTEES. The Board of Directors will establish the following permanent committees:

A. Rules & Competition Committee

B. Appeals and Protests Committee

C.          C.   IYSA Liaison and Olympic Development Program Committee

12

D. Business Planning & Development Committee

E. Risk Management Committee

Section 3. RULES & COMPETITION COMMITTEE. This Committee is charged with the responsibility of developing the playing, officiating and related rules regarding participation within the League and the conduct of all matches. Such rules shall be developed and maintained annually in a report to the President for his/her presentation to the Board of Directors for approval. Based upon the number of Members and applications for participation in the League, this Committee shall determine the nature, number and genre of leagues to be operated during each soccer session. Further, this Committee shall determine and make recommendations on such issues as seeds, divisions within an age group, leagues and divisioning recreational, competitive and/or other special programming sanctioned by the IYSA.

Section 4. APPEALS AND PROTESTS COMMITTEE. The Appeals and Protests Committee shall be Chaired by the Vice President with the largest weighted vote and/or by the Vice President designated by the Board of Directors. The Committee shall develop and review the policies and procedures for appeals in accordance with established guidelines of the GCSL and IYSA, for recommendation to the Board of Directors. The Committee shall have the responsibility to accept appeals from individuals or teams. Appeal fines shall be recommended by the Committee and approved by the Board of Directors, annually.

Section 5. IYSA LIAISON AND OLYMPIC DEVELOPMENT PROGRAM COMMITTEE. The IYSA Liaison and Olympic Development Committee shall be responsible for attending the meetings of the IYSA Board and such committee meetings as are deemed appropriate and shall act as the Liaison between the IYSA and the League. All planning, activities and coordination of activities between the league and the IYSA relating to ODP programming shall be coordinated by this Committee and submitted to the President for his or her approval and action.

Section 6. RISK MANAGEMENT COMMITTEE. This Committee shall be responsible for the establishment and maintaining a Risk Management Plan for the safety and protection of all participants, Members, Directors, Officers, spectators and others.

13

## ARTICLE VII: FISCAL YEAR, BOOKS AND RECORDS

Section 1. FISCAL YEAR. The fiscal year of GCSL shall be October lst through September 30th of each year.

Section 2. BOOKS AND RECORDS. GCSL shall keep correct and complete books and records, minutes of the proceedings of its Members Meetings, and shall keep at the principal office a record giving the names and addresses of the Voting and Team Members entitled to vote at the various meetings of the League. The books and records of the Annual, General and/or Special Meetings along with the minutes from the general sessions of the Board of Directors meetings may be inspected by any Member, or their agents or attorney for any proper purpose at any reasonable time. The Board of Directors may convene into executive session to consider and determine matters relating to employee matter, litigation and/or other similar items or items deemed confidential by the Board of Directors.

## ARTICLE VIII: AMENDMENT OF BYLAWS

These Bylaws may be altered, amended or repealed by a majority vote of the GCSL Voting Members present at any Voting Members meeting, provided written notice of the proposed actions has been sent to all Voting Members at their last known address at least ten (10) days prior thereto. The Bylaws may be altered or amended by a two-thirds (2/3) majority vote at any General or Annual Meeting of the Members.

Amendments to any amendment may be proposed and voted upon at the same time the original amendment is presented.

## ARTICLE IX: DISSOLUTION

The GCSL may be dissolved by two-thirds (2/3) vote of the Voting Members at a meeting called for the purpose of discussing dissolution. All Voting Members shall be given at least fifteen (15) days written notice of said meeting.

14

Upon dissolution, GCSL shall, after paying or making provisions for payment of all the liabilities of the GCSL dispose of all the assets of the GCSL exclusively for the purpose of the GCSL in such manner, or to such organization or organizations, as provided under Section 501 (2) (3) of the Internal Revenue Code of 1954 (or the corresponding provision of any future United States Internal Revenue Law). All remaining assets shall be distributed to an organization or organizations engaged in activities substantially similar to those of the GCSL that is not owned by or formally affiliated with a Voting Member, and organized and operated exclusively for charitable educational, religious, or scientific purposes as shall at the time qualify as an exempt organization.

HEREBY APPROVED AND ADOPTED THIS _10_ Day of _March_ 2004

15

# GCSL POLICIES/PROCEDURES/RULES

**ALL BYLAWS AND POLICIES OF THE UNITED STATES SOCCER FEDERATION, UNITED STATES YOUTH SOCCER ASSOCIATION , IYSA AND  FIFA LAWS OF THE GAME SHALL BE INCORPORATED herein AND ARE PART  OF GCSL'S POLICIES  AND PROCEDURES.  MODIFICATIONS SHALL BE FOR THE GOOD OF YOUTH SOCCER AND CAN ONLY BE INCORPORATED IF CONSISTENT WITH THE POLICIES/PROCEDURES OF THE IYSA, USSF, and USYSA.**

### Overview
Greater Chicagoland Soccer League, (GCSL) was founded to create, develop, and grow a cost-efficient, team-friendly competitive youth soccer league for boys and girls under the age of nineteen. The GCSL seeks to foster the growth and development of club and community soccer programs throughout the Chicagoland area and especially the Southern Suburbs of Chicago, and Northwestern Indiana.

### Philosophy
Coming together to create and maintain a positive environment that puts the soccer player first.

### Guiding Principles
The GCSL will provide a fun, safe and supportive environment which nurtures and guides children to develop the talents, knowledge and appreciation for the game of soccer

The GCSL will provide an entertaining and positive organizational framework to educate the general public about the game of soccer.

The GCSL will promote the growth of soccer through instruction, training, and education of all soccer people to develop and improve their capabilities.

The GCSL will provide the opportunity for all teams to participate at a competitively appropriate level.

The GCSL was developed by and exists for it's soccer membership.

The GCSL  will be managed in a cost conscious manner with respect to administration and management.

The GCSL is for the development of soccer not the government of soccer.

The GCSL will provide flexibility to clubs, teams and communities to do what is best for their individual programs.

1

The GCSL will provide the opportunity to minimize administration time, and maximize soccer time.

The GCSL board and committees will be comprised of members from clubs that are participating in leagues.

### Governance

All competition in leagues/divisions affiliated with GCSL, is governed by regulations approved by the GCSL and the league office and in conformance with the policies and regulations of the IYSA.

### Organization

President: Ronald Bergstrom
Executive Director: Linda M Ball

GCSL
10850 Laraway Road
Frankfort, Illinois 60423

Telephone: 815-469-1844 Ext. 205
Facsimile: 815-469-1844

Office Hours
9:00 A.M. – 4:30 P.M. Monday through Thursday
9:30 A.M. – 5:00 P.M. Fridays

Official Web Site: www.gcsl.us

2

## Abbreviations

G.C.S.L. - Greater Chicagoland Soccer League

I.Y.S.A.- Illinois Youth Soccer Association is a not-for-profit administrative body of soccer for youth players in Illinois.

U.S.C.S.- United States Club Soccer is a registered national affiliate member of U.S.S.F

U.S.Y.S.- United States Youth Soccer is a national member of the U.S.S.F.

U.S.S.F. -- United States Soccer Federation is the soccer governing body of all soccer in the United States.

F.I.F.A. -- Federation International de Football Association is the world governing body of which the U.S.S.F. is a national association member.

### Definitions as applied to the GCSL

**Registration**
The execution of intent to play and/or participate in the sport of soccer and the paying of fees to become a member of a team, club, league, or organization directly affiliated with the GCSL.

**Rostering**
The assignment of a registered player to a team.  **As per IYSA rules, roster not to exceed 18 members or fewer than (7) players on its roster at any given time during the seasonal year.**

**Team**
 Teams shall be comprised of players in specific age groups. Players in each age division must be less than the maximum age before the first day of August of the current year. The team may not allow more than eighteen (18) or fewer  than Seven (7) players on its roster at any given time during the seasonal year. (according to IYSA policy Section 3)

**Club**
An organization that is a member of the GCSL that has identifiable membership of youth soccer players on whose behalf the organization conducts or engages in youth soccer activities and a commitment to developing players and has a minimum of three teams in different age groups, either boys or girls.

**ADD**
The addition of a player to a team's roster.

3

**Eligibility to Play**
Registered and rostered and not under suspension.

**Suspension**
The temporary withdrawal of rights and privilege, such as the right to play, coach observe, spectate, or otherwise administer or participate, directly or indirectly, in soccer games sanctioned by GCSL. The suspension is for the entire term of the suspension with all rights and privileges withdrawn unless specifically stated otherwise by the suspending authority.

**INVOLUNTARY RELEASE**
The removal of a player from a team's roster at the request of the teams' authority.

**VOLUNTARY RELEASE**
The removal of a player from a team's roster at the request of the player.

**TRANSFER**
The removal of a player from a team's roster and the contemporaneous addition of the player to the roster of another team.

**LEAGUE/DIVISION**
A structured group of four or more teams joined for the purpose of inter team play under a common set of administrative and competition rules. Teams must maintain regularly scheduled league play among at least (4) four teams.

**YOUTH PLAYER**
An individual who has not reached nineteen years of age prior to August 1 immediately before the start of any seasonal year. A player who reaches 19 years of age during a seasonal year is allowed to compete that seasonal year. A player who reaches 19 years of age during August of one seasonal year shall be allowed to compete all of the next seasonal year.

**SEASONAL YEAR**
August 1 to July 31 of the following year.

**TEAMS GENDERS**
Teams with females only are Girls' Team. All other teams are Boys' teams.

**PLAYING UP**
When a player plays in an older age group or when a player plays in a higher ranked competitive division within their age group.

4

## Leagues

Small Sided Games for focused youth development to increase the number of touches on the ball. All numbers represent the number of field players plus a goalie unless stated otherwise.

### U8
Game form: 5 v 5
Duration: 2 x 20 minute
Substitution: Free
GK status: Last defender is goalie
Field Size: 45 -55 yd long x 30-40 yds wide with Penalty boxes 12 yds X 20 yds
Ball Size: 3
Goal Size: 12 X 6

### U9
Game form: 6 v 6
Duration: 2 x 25 minute
Substitutions: Unlimites on the fly.
GK status: Goalkeeper position established with Penalty Box 18x44 yds
Field Size: 55 – 60 yds long x 40 – 50 yds wide
Ball Size: 4
Goal Size: 12 X 6

### U10
Game form: 7 v 7
Duration: 2 X 25 minute
Substitutions: Any throw in, all kick offs, injuries, goal kicks, and and halftime.
GK status: Goalkeeper position established with Penalty Box 18x44yds
Field Size: 60 – 70 yds long x 50 – 55 yds wide
Ball size: 4
Goal Size: 18 X 6

### U11
Game Form: 8 v 8
Duration: 2 x 30 minute
Substitutions: Any throw in, all kick offs, injuries, goal kicks,halftime
GK status: Goalkeeper position established with Penalty Box 18X44 yds wide
Field Size: 100 yds long X 50 – 55 yds wide
Ball size: 4
Goal Size 18 X 6

### U12

Game form: 11 v 11
Duration: 2 x 30 minute
Substitutions: Any throw in, all kick offs, injuries, goal kicks, half time
GK status: Goalkeeper position established with Penalty Box 18x44 yds wide
Field Size: 100 yds long x 50 – 55 yds wide.
Ball size: 4
Goal Size: Full

### U13 – U14

Game Form: 11 v 11
Duration: 2 X 35 minute
Substitutions: At own throw ins, all Goalkicks, injuries, and all kickoffs.
GK Status: Goalkeeper position extablished with Penalty Box 18x44 yds.
Field Size: 110-120 yds long X 60-75 yds wide
Ball Size: 5
Goal Size: Full size

In these leagues, "Positive Coaching" is encouraged and league standings are kept to ensure teams are placed at a level to give good and equitable competition.

Girls' and boys' teams registered for this league are placed by ability.

Teams register and play at their age level, unless teams prove by results that competition is not available at their age level. They are, then, permitted to play up.

### U15 – U16

Game Form: 11 v 11
Duration: 2 X 40 minute
Substitutions: At own throw ins, all Goalkicks, injuries and all Kickoffs
GK Status: Goalkeeper position established with Penalty Box 18x44 yds
Field Size: 110-120 yds long X 65-75 yds wide
Ball Size: 5
Goal Size: Full

U17 – U19
Game Form: 11 v 11
Duration: 2 x 45 minute
Substitutions: At own throw ins, all Goalkicks, halftime, injuries, and
    all Kickoffs
GK Status: Goalkeeper position established with Penalty Box 18X44
    yds
Field Size: 120 yds long X 75 yds wide
Ball Size: 5
Goal Size: Full

Goal Sizes are recommendations and should always be in accordance with
IYSA standards.

> In these leagues "Coaches Certifications" are required and league
> standings are kept to ensure teams are placed at a level to give good
> and equitable competition.

> Girls and boys teams register separately and are placed in their own
> divisions.

> U15 and U16 age groups are divided by ability

> U17 and U18 divisions are divided by ability. Teams can be mixed
> and matched as needed.

## Divisions

1. Select League for the Midwest Champions Cup (To be developed)
   Premier Development Tournament Format League-Teams qualify to
   play in this level event.
   Philosophy: The best play against the best for GCSL Champions Cup.

2. Challenge Champions League - Travel level League
   Entry level to premier competitive teams that are placed in divisions
   with comparable talent and then promoted and relegated on a set
   two up and two down system.   GCSL will open Challenge Cup
   tournament for Challenge level teams.
   Philosophy: Competition that promotes development to the highest
   level meeting the specific demands of the game for each age, level, and
   gender independently.

3. GCSL Development League. (in the future)
   Community based Recreational leagues – youth academies, and
   other non-traveling programs that help players enjoy, develop as
   players and understand the game.

7

Philosophy: Community based division specific to each community.

## Seeding

At the beginning of each new playing season, divisions will be determined. Team placement within these divisions will be based on input from coaching staff with final approval by the Competition Committee. Upon establishment of a multiple level division, the league will employ a system of promotion/relegation with exceptions only made by full Competitions Committee approval. The number of teams moving up and down will be at the discretion of the Competition Committee with oversight by the Board of Directors, determined each year as the league develops.

Teams are reseeded after the fall season based upon results of the teams fall play. End of season tournament is held for each division to determine promotion and relegation for the Challenge League.

## Seasonal Playing Year

August 1st to July 31st of the following year

Two seasons will be played during the year with one each in the Fall & Spring

## League Schedule

League schedule is the ultimate responsibility of GCSL office.

League schedule consists of 4 – 10 game schedule per season for U7 through U14 and an 4 - 8 game schedule per season for U15 through U19.

A basic schedule for Sunday game play will be established and then games are finalized based on the club/teams choice of day and field availability.

The GCSL permits re-scheduling of its league games provided the game is played.

A schedule meeting will take place prior to each playing season inviting all participating teams and their clubs to arrange and finalize schedules.

These meetings are mandatory.

## Game Officials

1. All games played under the jurisdiction of the GCSL will be officiated by a currently registered referee who is certified as such with the U.S.S.F.

8

2. It is the responsibility of the home team for securing a certified referee from the GCSL assignor or their club assignor.

   If the home team cannot secure a registered referee twenty-four hours before the scheduled game time, they shall notify the visiting team and upon mutual agreement, a knowledgeable person acceptable to both teams can officiate the game, for U11 and younger age groups. For U12 and older age teams, games will be rescheduled when a certified referee can be present to ensure fairness of the officiating.

   If an agreement cannot be reached, the game shall be re-scheduled.

3. In the event a referee becomes incapacitated during the game from any cause that would prevent him from continuing the game, the control of the game shall be turned over to a person mutually agreed upon by both team coaches who shall conduct the game to its conclusion.

   If a person cannot be agreed upon, the game may be rescheduled or if at least one half of the game has been completed, the game will be considered complete.

4. The referee shall have the power to decide as to the fitness of the ground in matches played in the GCSL.

5. The referee shall have power, during the game, to deal with players guilty of violent conduct or using threatening or abusive language, or any other violation of the governing law.

6. The referee will remain on the field of play and in charge during the leagues traditional handshake.


**Starting the Game**
The minimum number of players to start or continue a game –

> 11v11 – Seven players
> 9v9 – Six players
> 7v7– five players
> 6v6 -  four players
> 5v5  - four players

To maintain the integrity of the league, teams should make every effort to have a minimum number of players dressed in uniform and available to play.

The GCSL may impose sanctions on teams that continually fail to meet these minimum standards after review by the Competition Committee.

## Registration, Rules & Regulations
## Teams

A team or club desiring membership in the CGSL shall apply for membership annually, in writing, to the league administrative office.

Teams registration forms must be filled out completely and returned by the entry deadline to be considered for inclusion in the appropriate age division.

Team registration for seasonal year is August 1st to July 31st of the following year.

The **Fall Season** is from August 1st – December 31st. The **Spring Season** is from January 1st – July 31st. Teams must apply for each separate season and return their applications to the league administration office by the entry deadline to be considered.

Teams must indicate at what age level they are playing. GCSL will operate single year age divisions from U7 through U19 whenever possible.

Clubs are permitted to have multiple teams at all age groups.

All team fees must be paid in full at the time of registration and these fees are non-refundable after teams have been accepted.

Teams that are not accepted will have fees returned in full.

GCSL recognizes two types of team genders.

1. Teams with female players only are Girl's Teams.
2. All other teams are Boy's Teams.

Modification to any team information provided in the registration packet must be in writing and submitted to the league offices.

Teams entering the league must provide age appropriate size goals and fields as listed in the field requirement section and properly marked with corner flags and nets.

10

Teams found guilty of playing ineligible players shall forfeit all games in which such players participated. The league office and the Competition Committee may impose sanctions on teams exiting the field of play without permission of the referee.

All teams must have a designated head coach and a maximum of two assistant coaches along with team's manager.

Teams or Clubs are responsible for providing referees to the pool of officials within the GCSL and assist their referee assignor in providing qualified individuals for assignments to the team's home games.

Teams or clubs must sign a Disclosure Statement which must be on file with the league office to participate in the GCSL.

Teams are not limited to intraclub transfers per seasonal year.

Teams must complete the team line-up card and give to the match referee before each game and the manager or head coach must sign it.

Team age division shall be comprised of players who are age by August 1st of the current season under the designated age.

Teams designated in an age division cannot roster players above that age.

### Registration, Rules & Regulations
### Players

Players must register on approved forms from GCSL (IYSA roster, IYSA medical form)

Players must be registered and have a GCSL approved pass to participate in GCSL competition. The pass must be produced upon request.

Players must have affixed photos of himself/herself (as of the current seasonal year)on the player pass and must sign in the appropriate spaces.

Player passes must be filled out completely in legible printing or typing.

Player passes are forwarded to the League Registrar along with proof of age. After the documents have been checked and the pass validated and issued, the player becomes eligible for league competition.

11

Proof of age shall consist of either an original birth certificate, Board of Health records, passport, Alien Registration card, Certification of Naturalization or a Drivers License. The GCSL reserves the right to question the validity of any documents regarding proof of age.

A player's age division shall be designated by one who prior to August 1st of the current seasonal year has not reached the age of his/her division. Birth dates on or after August 1st of the current seasonal year shall be allowed to complete the season.

Players may be denied a release by the league office if the player is suspended by the team/club for team/club infractions, owes club fees and equipment. All players must have secured the necessary clearance from the player's former club before a release is processed.

Player's providing false information to the league will be suspended.

Players found producing or using falsified documentation or ID's will be suspended from playing in the GCSL.

Players may not register for more than one GCSL team at the same time.

Players are permitted to register with their club organization on other passes provided they are USSF sanctioned.

All player registration expires at the end of the seasonal year.

It is the right of every player to be free to choose which team that he/she wants to play for without fear of intimidation or repercussion from any source.

Players are required to wear shin guards during all GCSL games. Players not wearing shin guards will not be permitted to play. Shin guards must be completely covered by the sock.

Players are required to wear athletic glasses. Normal glasses are considered dangerous equipment. Players are not allowed to wear baseball caps or other headwear with hard bills or protrusions. Also headwear of soft, non-abrasive material, which fits the contour of the head, may be worn if necessitated by an injury or other medical condition and must have written permission by a doctor.

Players are required to wear uniforms, which consist of a shirt, shorts, socks, which must be identical to his/her team and not similar to the opposing team as well as shin guards.

12

Players must have completed a medical/liability waiver form that the coach is required to have available at all GCSL games.

Players listed on a line up card for any given game are considered to have played in the game regardless whether they actually have played.

Players receiving a red card must sit out the next league game. (minimum suspension.)

Players are required to:
    Respect the Rules of the Game and the League.
    Respect their opponents.
    Respect the Officials.
    Respect their Teammates.
    Respect Themselves.
    Honor the game.
    Players are not permitted to use drugs, alcohol or tobacco products.
Players suffering from an open wound are required to leave the field to have the wound treated and may return to the match only when judged safe to return by the referee.

A youth player will be permitted to play an unlimited number of senior amateur games without losing his/her eligibility. Player must follow IYSA rule 018.

A youth player is permitted to play up in league play only under the following conditions:

    Players must be a registered member of the club.

    Player must be indicated on game roster.

    Opposing team coach must be notified before the game of the intent.
    of the player to play up

**Junior High School Players**
    Junior High School Players who are not attending high school but because of their date of birth are not normally eligible to participate in U14 Division are permitted to play in the GCSL in the U14 Divison.

    Registration for those specific Junior High School Players is cancelled at the end of the fall season (boys) and spring season (girls), after which the player must play his or her age appropriate division.

    Any such exempted player must have proof that the player is attending junior high school.

13

This is the only time within the GCSL that players are permitted to play down.

Players must play at their age group or older (playing up)

## Registration, Rules & Regulations

## Coaches

All Directors of Coaching, Coaches, Assistant Coaches and Trainers must register on approved forms from the GCSL.

All Directors of Coaching, Coaches, Assistant Coaches and Trainers must register and have a GCSL approved pass to participate in competition. Coaches must be able to produce the pass upon request by the GCSL.

Coach's passes must have affixed a current picture of himself/herself.

All Directors of Coaching, Coaches, Assistant Coaches and Trainers must have a Coaches Pass before he/she can participate in any league competition.

All coaches must have an USSF coaching license or equivalent.

Coaches found coaching games without being properly registered with the league will be suspended upon review by the Competition Committee.

Coaches found providing false information to the league will be suspended upon review by the competition committee.

The GCSL may suspend, for a definite period, and/or impose a fine on any coach guilty of gross misbehavior in public including intoxication, drug use, fighting, quarreling, indecency or other scandalous conduct whether on or off the playing field.

Coaches and trainers must present a professional appearance at all times.

A maximum of three persons associated in an official capacity with the team is permitted in the technical area on the sideline during a league game.

Each person on the sideline during a league game must have a GCSL approved pass and be listed in the game line up card.

14

Smoking or any tobacco products and alcoholic beverage is not permitted in the technical area.

Coaches receiving a red card must sit out the next league game.

Coaches are required to know the "Rules of the Game."

**Coaches are required to:**
    Respect the Rules of the Game.
    Respect their Opponents.
    Respect the Officials.
    Respect their Fellow Coaches.
    Honor the Game.
    Respect their players.

Coaches receiving more than one red card during the seasonal playing year will be suspended for the balance of the seasonal playing year. Additional red cards in subsequent years may result in being suspended from coaching in the GCSL.

Coaches found playing players without being properly registered with the league will be suspended

Coaches found signing or producing a falsified document or ID will be suspended from coaching in the GCSL

**Registration, Rules & Regulations**
**Coaches Rules of Ethics**

Preamble
    Soccer belongs to the players. It provides many physical values, emotional satisfaction and can be an even uplifting experience to those that play the game.

**Responsibilities to Players**

    The coach must never place the value of winning over the safety and welfare of his players.

    The Laws of Soccer were written to insure a continuous flow of action. These laws have the safety of the players as their primary goal.

    Medical problems should not be the responsibility of the coaches.

    Under no circumstances should a coach authorize the use of drugs. Medications, stimulants or drugs should be used only when authorized and supervised by a physician.

15

Demands on players should pertain only to achieving success on the field and never be so extensive as to interfere with their academic progress.

## Responsibilities to the League

The function of the coach is to contribute to the education of the player through participation in soccer.

Coaches must not ask for special consideration for their players.

Coaches must not seek special consideration for themselves.

Coaches must support administrative decisions in all policies, rules and regulations regarding soccer.

## Rules of the Game
### Coaches:
Coaches must be acquainted thoroughly with the rules of soccer.

Coaches are responsible for their players' action on the field.

Coaches must not permit their players to perform with the intent of causing injury to opposing players.

Coaches are responsible for the parent's behavior

## Recruiting
It is unethical to recruit a player registered, rosteres, or enrolled on another team.

## Game Day and Other Responsibilities
Coach's behavior must be such as to bring credit to himself, the League and soccer.

Coaches need to use their influence on crowds that demonstrate intimidating behavior that might lead to a player injury or confrontational between officials and spectators.

Coach's behavior must be reflective of creating and maintaining a positive environment that puts the soccer player first.

Sportsmanship and respect for the opposition should be displayed throughout the warm-up, game play, and post game handshakes.

Both teams should occupy the same side of field with spectators on the opposite side

16

Instructions should be given by the coaching staff only.

Under no circumstances should a coach show anything but complete respect for the officials of the game.

Coaches shall maintain control of their players and spectators.

If two teams have the same color uniform the home team must change to another jersey prior to the start of the match.

## Registration, Rules & Regulations
### Referees

All games played under the jurisdiction of this league will be officiated by a USSF certified registered referee who is distinguished as such.

The year for which a referee is certified is January 1st until December 31st.

Each referee is required to re-certify each year.

All referees and assistants must be registered with GCSL

Referees must be fully conversant and be able to apply FIFA Laws of the Game and GCSL Rules and Regulations.

Referees must use FIFA acceptable system- three-man system (one center referee and two assistant referee linesman)

Officials must be aware of GCSL rules of competition for the game they are officiating.

Official must be familiar with the age appropriate modifications, relative to field size and markings, and number of players, substitutions, etc.

Officials must determine the fitness of the field of play and have the power to decide whether a game is to be played, suspended, or abandoned.

Officials must inspect the playing field and equipment.

Officials are required to supply their own uniforms. Uniform consists of shirt shorts, socks, and shoes. The uniform must be a distinguishing color from the players.

Official should not wear earrings or other jewelry

17

Officials should not wear sunglasses

Officials should not wear hats. Hard brim hats are dangerous to the players who might collide with the referee.

Official should be match fit, able to keep up with play, and should try to keep within 7 to 20 yards of active play of the game.

Official should be sure that coaches know they are responsible for the actions and words of the players and spectators.

Official cannot force a forfeit or declare one team the winner; they must simply report the incident to the league. The league will decide the status and outcome of the game.

It is important that player injuries be dealt with as quickly and efficiently as possible. Nothing should be done that could potentially cause further or permanent injury to a player. If a player is seriously injured, the referee shall stop play.

If play has been stopped solely for a serious injury with no other breach of the Laws of the Game (ball out of play) the referee shall restart play with a dropped ball.

The referee shall add on time lost on account of injury, in full at the end of the period in question.

<u>Severe Weather</u>
The safety of the players, coaches, management and spectators are of a primary concern during any weather event that occurs during a match. By following these few basic guidelines, the safety of everyone may be greatly increased. Ultimately the referee, has final say over delaying or suspending a game due to weather conditions, and delaying unnessarily the decision to stop may result in a situation where an injury may occur. The referee shall act responsibly when dealing with such weather or similar events during the game.

1.  If a severe weather watch is in effect for game time, it is suggested that the home team have a battery-operated programmer-such as NOAA Weather Radar.

2.  When lightning is sighted within ten miles of the venue, the referee and coaches should observe movement and status of the inclement weather and begin making preparations for a potential delay in the game.

3.  The referee and coaches should use good, prompt judgement when dealing with potential weather threats.

**Passes**
All players and coaches must present GCSL Player/Coach Passes identification to the referee prior to the game. If the pass or card is not laminated, the individual will not be eligible for the game.

**Penalties**
A send off (red card) will result in a minimum of one game suspension, which will be the next GCSL game.

**Referee Fees**
The following will be the fee structure that will be utilized for GCSL games unless otherwise specified. No Travel Expense.

Recommended Fee for Linespersons Paid by Home Team

| Age | Referee | Assistant Referee | Assistant Referee |
|-----|---------|-------------------|-------------------|
| U8  | $20     | $10               | $10               |
| U9  | $25     | $10               | $10               |
| U10 | $25     | $10               | $10               |
| U11 | $30     | $12               | $12               |
| U12 | $30     | $15               | $15               |
| U13 | $35     | $15               | $15               |
| U14 | $35     | $15               | $15               |
| U15 | $40     | $15               | $15               |
| U16 | $40     | $18               | $18               |
| U17 | $45     | $20               | $20               |
| U18 | $45     | $20               | $20               |
| HSG | $45     | $20               | $20               |

**Payment of Referee**
Payment by league of center referee will be completed once a month. If game cards are not received by the 5th of month, the payment will be the following month.

Individual clubs will arrange for payment of assignor fees directly with local assignor and will determine payment, by clubs, to assistant referees.

The fees for officiating games are set by GCSL, and subject to regular review

19

by the Competition Committee and Board of Directors. .

## Field
The referee shall determine the fitness of the field for play. Player's safety must be the most important factor. Game officials and referees should inspect the playing field and equipment including the playing surface, goals, netting, match balls, corner flags and markings. In the event that any discrepancies or concerns are identified including nets that are torn or loose, goals that are out of place and not securely fastened to avoid tripping over, exposed drainage areas, missing or incorrect markings, the referees shall notify the home team the discrepancies and concerns and the home team shall be responsible for correcting any of the discrepancies, concerns, or problems.

The referee has the authority to postpone a game if in the referee's opinion the field is unsafe for the players. In such case, the referee shall inform both teams of the decision and report it to the league office within 24 hours.

## Rules of Competition
Official must be aware of and have knowledge of the GCSL Rules of Competition including any amendments of the Laws of the Game. If not addresses specifically in the GCSL Rules, the FIFA "Laws of Game" shall apply.

## Pre-game Procedure
Each team must present the referee with an official GCSL Game Roster card fifteen minutes prior to the start of the game.

Game Roster cards are the official records of players who have participated in a given game.

Game Roster cards must contain the starting line up and substitutes along with jersey numbers of each player.

All players listed on a Game Roster card for a given game are considered to have played in that game regardless whether they actually did play.

Referee is to inspect all GCSL ID/Player Pass cards for completeness and accuracy of information. If a referee believes that an ID/Player Pass card or ID/Player Pass cards are fraudulent, the referee may confiscate the cards in question and send them into the League office in the referee report.

Referee is to inspect all players for safety and fitness to participate (ex. Dangerous equipment, cleats, jewelry, belts, hats, knee braces, and the like)

Referee is to explain the "ground rules" of the field to be used and give any final instruction to players and coaches.

Only those players and coaches listed on the Game Roster will be allowed on the bench.

20

Referee is to retain all passes until the end of the game.

Tardy players must report to the referee with his/her pass when entering the game.

## Registration, Rules & Regulations
### Assignors
All referee assignors must be registered with GCSL.

All referee assignors must have attended and passed the USSF assignors course.

A referee assignor's responsibility is to provide qualified officials to GCSL games.

Referee Assignors may have responsibility for assigning the center referee only with the club providing the assistant referees or alternatively, the referee assignors could have the responsibility to assign both the center referee and assistant referees for a game.

Assignors must receive a 48 hour cancellation notice from the home team.

Assignors must only assign referees to a level of game that the official is capable of officiating.

### GCSL advice to referee assignors
The center official must be three years older than the age of the youth participating in the match.

The assistant referee must not be younger than the age of the youth participating in the match.

### Assignors
All referees under the age of 16 are considered minors and require work permits.

To obtain a work permit, officials require a statement of intention from the GCSL.

The Superintendent of Schools issues employment certificates or work permits.

### Insurance
### Liability
GCSL teams have purchased liability Insurance through the GCSL/IYSA insurance carrier. This insurance policy is covered in the administrative fees. The insurance policy is in effect for the seasonal year, once the administrative fee has bee paid in full and the players are registered.
Each facility used for tryouts, practice or games may have its own "Certificate of

21

Insurance." Request form.

## Players Insurance
GCSL registered players are provided with accidental medical insurance. This fee is included in your fees.

## Waiver of Release and Liability
As part of the registration process, every player is required to sign a waiver of release and liability before being allowed to play in GCSL, or participate in outside tournaments.

## Tryout Players
All players trying out for a team are required to sign the waiver of release and liability before beginning the trout.

## Protest, Appeals, Complaints and Discipline
### Disciplinary Powers
The GCSL office shall have the authority to suspend, fine or disqualify players, coaches and other team officials or competing clubs for violating league rules or for any action or conduct not in the best interest of soccer or the GCSL.

Any other individuals who may be reasonably construed as being associated with a team such as parents, relatives and spectators are also subject to the jurisdiction and authority of the GCSL.

A disciplinary hearing is a meeting to decide whether or not a disciplinary action is needed for an incident with all parties having the chance to participate.

A GCSL Disciplinary Committee shall consist of three neutral persons selected By the league or Competition Committee.

All members of the GCSL shall recognize any disciplinary action imposed by the GCSL.

If decisions rendered by the GCSL can be appealed to the Illinois Youth Soccer Association (IYSA) then the appellant has seven days from the receipt of the decision within which to file Notice of Appeal.

Protests, Appeals and Complaints constitute a good faith belief that a wrong has been done which requires correction.

## All protests, disputes or complaints must:
First be submitted to the club President of team that has a dispute. If President feels a reasonable, protest, dispute or complaint has been made out the following procedure is followed in the submission to the GCSL.
1. Specifically refer to the GCSL Rule that is or has allegedly been violated.
2. Should a rule not exist to resolve your protest, appeal or complaint. Then provide a simple statement of the problem.

GCSL permits 3 types of protests, appeals or complaints.
1. Events that occur on the field of play during a game or pre-game that have a direct bearing on the game or a future game.
2. Events between team management of both teams and/or players that involve situations or circumstances upon the field or surrounding the game. These may or may not have any direct impact on a game's outcome.
3. Events about a referee or linesperson.

Any decision, which arises out of the application of the rules of competition, which is made in the course of competition and has no consequence beyond the competition, shall not be appealable.

By playing in the GCSL
1. All questions relating to any dispute, protest, appeals or complaint shall be referred to the GCSL executive office of the league, and then to Competition Committee. Decisions of such committee shall be final and binding on both parties.
2. For all protests, appeals, or complaints, the league administrative office must receive appeals or complaints no more than ten (10) days after the occurrence of the event in question.

Rules of Game
Except as otherwise provided herein, the FIFA "Laws of the Game" shall apply.

Substitution:
Except where substitutions are permitted on the fly, teams may substitute an unlimited number of players with the consent of the referee. At the following times:
1. Prior to a throw-in your team's favor
2. Prior to a goal kick for either team.
3. After a goal
4. At half time
5. After an injury, if play is stopped.

Assistant Referees:
1. *U7 to U13: A qualified linesperson shall be chosen by the manager/coach to be used at the discretion of the referee in helping him/her keep track of the touchline. Should the referee request a different person, the manager/coach is required to provide the same.*
2. *U14-U19 The home team is responsible to provide certified assistant referees for these games*

Length of game/Ball Size

| GROUP | GAME LENGTH | BALL SIZE | HALF TIME |
|-------|-------------|-----------|-----------|
| U17-U19 | 2-45 Min halves | 5 | 5 min |
| U15-U16 | 2-40 Min halves | 5 | 5 min |

23

| U13-U14 | 2-35 Min halves | 5 | | 5 min |
| U11-U12 | 2-30 Min halves | 4 | | 5 min |
| U-9-U10 | 2-25 Min halves | 4 | | 5 min |
| U7-8 | 2-20 Min halves | 3 | | 5 min |

In case of weather stoppage, when at least the first half is completed the score at the time the match is stopped will stand.

## Standings
Win = 3 pts
Tie = 1 pt
Loss = 0 pts
Forfeit= 3 pts for non=forfeiting team
Minus 2 pts for team that forfeits.

When neither team can play a game for any valid. League approved reason = a score of 0-0 shall be recorded.

## Tie-Breakers
1st Tie Breaker – Head to head win losses
2nd Tie Breaker- Fewest goals against in league
3rd tie breaker – Head to head goal differential up to four goals
4th tie breaker – coin toss

24

### Summary Budget for GCSL

**Expected Revenue:**

Soccer Leagues                     30,000

**Estimated Expenses:**

| | |
|---|---|
| Referees and assignors | 20,300 |
| Insurance | 3,000 |
| Office Expense | 2,000 |
| Technical Support | 1,500 |
| Awards | 1,500 |
| Legal Fees | 6,000 |
| Administrative | 1,800 |

Total Estimated Expenses:         36,100

Net Loss                          -6,100

Note:  Once the league is sanctioned should result in a net profit as legal fees will be greatly reduced and revenue will increase as teams sign up.

There are no fees included in this that would be paid to IYSA either as revenue or expense.

Explanation of relationship between Hallmark SportsClub and SAA.
# 6 on the IYSA request for information letter.

1. The founder and President of Hallmark SportsClub is also the founder and President of SAA. They are two separate corporations.
2. The offices for both are in the same building.
3. Due to this fact there are some employees that have dual responsibilities.



Southland Athletic
Association
Non-Profit Organization

DBA
Greater Chicagoland
Soccer League

Board of Directors
Joe Bachan
Linda Ball
Steve Davidson
Greg Vogler
Brian Kibler
Judy Clark

Competition(Executive)
Committee
Brian Kibler
Alex Hernandez
Tim Fell
Greg Vogler
Scott Fonfara
Gary Heusner
Bill Dekker

Clubs/and or Teams

1. Flow chart for SAA doing business as Greater Chicagoland Soccer League.
2. Board of directors voted on 2/4/04 to give the Competition Committee the right to make all decisions. If the Competition Committee can not reach a decision it would then go to the Board of Directors.
3. The Competition Committee meets once a month.
4. The General meeting for GCSL is coming up in June. Any one wishing to be on Competition Committee needs to put their desire to sit on this committee in writing and submit their intention to the League Director which will be voted on by the voting membership at the annual meeting.
   They may also be nominated by the nominating committee.

File Number 6157-538-3

# State of Illinois
## Office of
## The Secretary of State

**Whereas,** ARTICLES OF INCORPORATION OF
SOUTHLAND ATHLETIC ASSOCIATION, INC.
INCORPORATED UNDER THE LAWS OF THE STATE OF ILLINOIS HAVE BEEN
FILED IN THE OFFICE OF THE SECRETARY OF STATE AS PROVIDED BY THE
GENERAL NOT FOR PROFIT CORPORATION ACT OF ILLINOIS, IN FORCE
JANUARY 1, A.D. 1987.

Now Therefore, I, Jesse White, Secretary of State of the State of Illinois, by virtue of the powers vested in me by law, do hereby issue this certificate and attach hereto a copy of the Application of the aforesaid corporation.

**In Testimony Whereof,** I hereto set my hand and cause to be affixed the Great Seal of the State of Illinois, at the City of Springfield, this 27TH day of MARCH A.D. 2001 and of the Independence of the United States the two hundred and 25TH

*Jesse White*

Secretary of State

C-212.3

**Form BCA-4.15/4.20**

(Rev. Jan. 2003)

**APPLICATION TO ADOPT,
CHANGE OR CANCEL,
AN ASSUMED CORPORATE NAME**

File #

SUBMIT IN DUPLICATE

Jesse White
Secretary of State
Department of Business Services
Springfield, IL 62756
Telephone (217) 782-9520
www.cyberdriveillinois.com

This space for use by
Secretary of State

Date

Remit payment in check or money
order, payable to "Secretary of State".

Filing Fee
(See Note Below)
Approved:

1. **CORPORATE NAME:** Southland Athletic Association, Inc

2. State or Country of Incorporation: Illinois

3. Date incorporated (*if an Illinois corporation*) or date authorized to transact business in Illinois (*if a foreign corporation*): March 27 , 2001
   (Month & Day) (Year)

   *(Complete No. 4 and No. 5 if adopting or changing an assumed corporate name.)*

4. The corporation intends to adopt and to transact business under the assumed corporate name of:

   Greater Chicagoland Soccer League

5. The right to use the assumed corporate name shall be effective from the date this application is filed by the Secretary of State until March 1 , 2005 , the first day of the corporation's anniversary
   (Month & Day) (Year)
   month in the next year which is evenly divisible by five.

   *(Complete No. 6 if changing or cancelling an assumed corporate name.)*

6. The corporation intends to cease transacting business under the assumed corporate name of:

7. The undersigned corporation has caused this statement to be signed by a duly authorized officer who affirms, under penalties of perjury, that the facts stated herein are true.

Dated March 31 , 2004
(Month & Day) (Year)

Southland Athletic Association, In
(Exact Name of Corporation)

(Any Authorized Officer's Signature)

Joseph J. Bachan, Treasurer
(Type or Print Name and Title)

NOTE: The filing fee to adopt an assumed corporate name is $150 if the current year ends with either 0 or 5, $120 if the current year ends with either 1 or 6, $90 if the current year ends with either 2 or 7, $60 if the current year ends with either 3 or 8, $30 if the current year ends with either 4 or 9.
The fee for cancelling an assumed corporate name is $5.00.
The fee to change an assumed name is $25.00.

C-148.15

## Meeting Notes GCSL Competition Committee
## 2/4/04 7:30pm Lincoln Center Downers Grove

## Attendance:

Competition Committee: Scott Fonfara, Alex Hernandez, Gary Heusner, Brian Kibler, Greg Vogler

Committee Member Representatives: Peter Follenweider for Bill Dekker

Visiting Board Members: Linda Ball

Visitors/Contributors: Tom Zec

Meeting Start 7:35pm   Meeting End 9:45pm

## Informational Items:

IYSA league competition issues

A) NISL Bylaw stating participation in more than one USSF league is illegal – Letters of
   complaint were written by Gary Heusner and Greg Vogler to Gus Bender in response to a
   recent event where the IYSA claimed there were no complaints concerning the NISL
   bylaw that was found to be unenforceable and illegal by USSF counsel Tim Pinto.
   Following the letters, IYSA claimed to Bill Sage of US Club Soccer that there were some
   coach complaints but no formal complaint.  In following discussions with Greg Vogler,
   Gus Bender of IYSA stated that the matter was under review.

B) NISL Coaches Meeting – At the coaches meeting Gus Bender of the IYSA and Peter
   Richardson presented the view that if clubs were 100% IYSA registered that they could
   play in another league.  While a modification this still presumes a complete monopoly by
   the IYSA and will force clubs to adhere to IYSA policy and play in IYSA sanctioned
   leagues even if they do not want to and still does not comply with USSF bylaw 603.

   **Bylaw 603**

   **Section 2. An Organization Member (other than a Professional League) shall not
   discriminate against the participation of players, teams, coaches or clubs on the
   basis of that player, coach, team, or club's membership in, or affiliation with,
   another organization.**

C) The IYSA Board Meeting is scheduled for 9:00am this Saturday 2/7/04 at the IYSA
   offices.  Several items including these competition items are likely to be covered.


Financials organization discussion and review of current expenditures and status

A) The financials were not ready to present at this meeting due to the accountant being out
   of town for 3 days.  Basic Financials will be available for review at the next meeting for
   review by the committee.

Dual Certification and Decision to form committee for dual certification

A) The status of the application for IYSA sanctioning will be reviewed this weekend at the
   IYSA meeting Saturday 2/7/04.  There was no information available to forecast the

G) The competition committee recognized that while other leagues and tournament are based on greater numbers on the field the fluidity of rosters should still allow clubs to present solid game day playing time and situations for its members.

H) Outside tournament may allow for greater numbers, but this was not a deterrent for deciding on smaller sided games for the younger players.

I) The decisions of the competition committee to play smaller sided games at the younger age levels more closely matches the USSF position statement on the number of player per side.

Executive Plan Information - review and comment for improvement and future adoption vote to organize a committee

A) The committee voted to review this information more fully at the next meeting due to time restraints.

B) A basic over view of the executive plan shell was conducted

C) No vote was held to form a subcommittee

Planning for Fall 2004 - vote organize committee to oversee efforts for Fall 2004 league play establish scope

A) The competition committee agreed to form a subcommittee to organize and oversee the preparation for the Fall 2004 season.

B) The committee stated that it was imperative that the league take all measures to ensure the smoothest operation of the league and to provide it with the planning and management to handle much larger league growth.

C) Subcommittee volunteers were Linda Ball, Tom Zec, Bill Dekker or Peter Fallonweider, and the Oswego Panthers representative ("wink")

Determine final billing resolution for the Chicago United FC

A) The Chicago United FC club deposited $500 for their games played this past Fall. The question before the competition committee was whether opr not to pursue any remaining monies.

B) The competition committee resolved to allow the Chicago United FC a grace on there fees for this one instance. Should they return they will be held to a refundable performance bond. The bond will be refunded less any fees still outstanding.

## Votes:

Vote for meeting of Board of Directors to resolve question of decision making powers

A) It was the vote of the board members in attendance that a vote for the board to meet to officially recognize the competition committee as the decision making body for the league.

B) The board members present – Brian Kibler, Greg Vogler and Linda Ball all confirmed that the Board had previously stated that the competition committee would handle all regular business unless a decision could not be made by the committee then it could be moved to the Board of Directors for a decision.

Vote League Costs question of reducing costs for playing fewer games

A) Several teams may not want to play all 8 games this Spring, should the league charge them the full rate for league fees even if they do not play the full 8 games.

B) The competition committee agreed that teams could pay a 4 game or 8 games rate.

C) The rate for 4 games would include the same administrative costs as the 8 games rate and therefore would not be half price, but rather the cost of administration plus four games.

D) Teams wishing to play 5 games would pay for 8 games.

decision for the committee. NO action needs to be taken at this time until after the IYSA review.

B) The competition committee recognized the need for a sub committee to work on the bylaws and charter if the IYSA approves the leagues sanctioning. Greg Vogler,Peter Fallonweider and Tom Zec volunteered for the subcommittee.

Brochure - presentation for final parents brochure, draft for coaches and directors

A) The parent brochure was presented with the changes from the last meeting. The committee approved the brochure and Brian Kibler and Gary Heusner will distribute electronic copies to committee members.

B) The coaches and directors brochure still needs to be finalized by the brochure subcommittee.

Spring Seeding – status

A) Scott Fonfara presented the current list of teams for the Spring season. The committee reviewed each division for boys and girls. A complete list of the changes for the Spring will be made available to the committee by Scott Fonfara.

## Action Items:

Create and Prioritize Committee Actions –

A) The competition committee voted to move this to the end of the agenda and then to shelve this for the next meeting. Several critical decisions will be made on organization and the decisions of the IYSA that will change priorities rather severely.

Dual Certification - Organize a committee effort for addition of bylaws for both IYSA and US Club Soccer and dual certification policy for teams, clubs and leagues under the GCSL

A) Coverage of this topic was made in the above agenda item on Dual Certification Information item.

Improvements for the League - discussion and adoption for future

A) The committee reviewed the number of players on the field by age group. Several changes were agreed upon and the results on the clubs and officiating of games were covered as well.
   1) U-8 teams will play 5 a side (4 players plus a goalkeeper)
   2) U-9 teams will play 6 a side (5 players plus a goalkeeper)
   3) U10 teams will play 7v7 (6 players plus a goalkeeper)
   4) U-11 teams will play 9v9 (8 players plus a goalkeeper)
   5) U12 teams will play 11v11

B) U11 teams will play to the large goals. The committee will decide on goal sizes for younger ages at a future meeting.

C) The competition committee will review the playing field sizes at a future meeting.

D) It was agreed that referees are still needed at the younger age groups and at least one per game.

E) The committee agreed that playing two games at the same time might be a possibility.

F) The point was reiterated that with the US club rules of soccer there are no teams until game day and that coaches and clubs must think accordingly.

## Additional Business

Scheduling meeting time and location

A) The scheduling meeting for the Spring Season was set for Sunday March 26th time to be determined at the hallmark Sports Club.

Recap current Meeting, determine date and location of the next meeting and assemble agenda for the next meeting.

A) The next meeting was scheduled for March 3 at 7:30pm in Downers Grove at the Lincoln Center.

## Meeting Notes GCSL Competition Committee
## 3/10/04 7:30pm Lincoln Center Downers Grove

## Attendance:

Competition Committee: Scott Fonfara, Gary Heusner, Judy Clark (for Alex Hernandez), Greg Vogler

Board Members: Linda Ball, Greg Vogler, Judy Clark

Visitors/Contributors: Tom Zec, Bob Lemke

Meeting Start Time 7:40

Meeting End Time 9:30pm

**Informational Issues**

IYSA issues
  A) Dual Certification – A review of the last IYSA board meeting to hear the application for IYSA membership was recounted by Linda ball and Greg Vogler. Application was not approved and is being resubmitted after further review and correction by the competition committee.

  B) The competition committee reviewed and approved updates to the GCSL constitution for IYSA application 4-0 in favor.

  C) The IYSA application policies and procedures were reviewed and approved by the committee and for resubmission 4-0 in favor.

  D) Both of these documents will shortly be online at www.gcsl.us.

  E) The effective date for the policy and procedures and the constitution shall occur and be contingent upon IYSA approval of the league by the IYSA. This motion was approved 4-0 by members present.


Spring Scheduling Meeting

  A) The Spring Scheduling meeting is set for March 28th at 3:30pm at the Sportsclub in Frankfort. Forms for paying league fees will be made available on the web site.
  B) Maps will be required of teams participating in the Spring and should be brought to the scheduling meeting.
  C) Maps will then be placed on the GCSL web site.


Financials review

  A) Income statement for the league and its current finances was presented and reviewed by the competition committee.


Brochure Committee Report

A) The brochure committee promised to distribute electronic copies of the brochure to all competition committee and board members.
B) No further work on the coaches and directors end has been completed.

Fall Organization Committee
    A) Topic was tabled pending IYSA certification outcome.

## Action Issues

Improvements to the League -Review and adopt changes for the Fall 2004 season
    A) Volunteers were taken for this subcommittee including Judy Clark, Greg Vogler and Gary Heusner
    B) Further review was tabled pending the IYSA certification outcome.

Executive Plan Review - Vote to form a subcommittee to finalize an executive plan for adoption by the league.
    A) Actions were tbaled until the following meeting.

Annual General Meeting - The league is scheduled to provide an annual general meeting to members in June. Vote to form a subcommittee to organize and present information to the membership.
    A) Date will be determined at the next competition committee meeting.

## New Business

Vote on Participation in the Competition Committee – A vote was called for and seconded to decide if Members of the competition committee need to have teams playing in the league.

    A) The competition committee voted 3-2 against forcing competition committee membership to be contingent upon having a team playing in the league. Members in attendance voted 3-1 against the proposal and one proxy vote was for the proposal.

Patches are now available for all teams that participated in the inaugural season of the GCSL.

## Additional Business

Determine next meeting location and time.
    A) The next meeting is scheduled for Wednesday April 14th, 2004 at 8:15pm in Downers Grove at the Lincoln Center on Maple Avenue.

April 12, 2004


IYSA
1655 S. Arlington Hts Rd.
Suite 201
Arlington Hts., Il 60005

Mr Seyring:

Enclosed, you will find the information that you requested at IYSA's last board meeting. I believe you will find everything that the board requested in the attached documents. If you or any of the other Board Members should have any questions, please do not hesitate to contact me at the number listed below.

As you know, preparation for the fall season is already underway and takes much planning and preparation. GCSL is hoping for an answer to our application as soon as possible.


Thank you,



Linda Ball
Executive Director
815-469-1844 ext 214
lball@gcsl.us

EXHIBIT

J



May 12, 2004

Linda Ball, Executive Director
Greater Chicagoland Soccer League
10850 Laraway Road
Frankfort, IL 60423

Dear Ms. Ball,

After due deliberation the Illinois Youth Soccer Association has denied your league application.

Sincerely,

Mary Jane Bender

Illinois Youth Soccer Association
Executive Director




1655 South Arlington Heights Road, Suite 201 - Arlington Heights, Illinois 60005 - U.S.A.
Telephone: 847.290.1577 - Fax: 847.290.1576 - E-mail: info@illinoisyouthsoccer.org

www.illinoisyouthsoccer.org

# EXHIBIT

# K

Case 1:18-cv-00212 Document 3-17 Filed 03/13/05 Page 121 of 160 PageID #:121

# America's Best
## Youth Clubs

American soccer has seen a proliferation of big-money youth clubs in recent years. But just how good are they? Soccer America selects the top 20 boys and girls clubs based on three categories: (1) success in U.S. Youth Soccer championships since 2001; (2) the number of players who went on to national and regional teams last year; and (3) a survey of college coaches on the best clubs at developing and showcasing players.

### Soccer America
## Top 20
**Boys Soccer Clubs**

| # | Club | State |
|---|------|-------|
| 1 | FC Delco | Pa. |
| 2 | Chicago Magic | Ill. |
| 3 | Irvine Strikers | Calif. |
| 4 | CASL Elite | N.C. |
| 5 | Concorde Fire | Ga. |
| 6 | La Jolla Nomads | Calif. |
| 7 | Dallas Texans | Texas |
| 8 | FC Sockers | Ill. |
| 9 | Houston Texans | Texas |
| 10 | So Cal United | Calif. |
| 11 | Sereno Golden Eagles | Ariz. |
| 12 | Colorado Rush | Colo. |
| 13 | Michigan Wolves | Mich. |
| 14 | Vardar | Mich. |
| 15 | PDA | N.J. |
| 16 | West Kendall Optimist | Fla. |
| 17 | Scott Gallagher | Mo. |
| 18 | Oakwood | Conn. |
| 19 | Solar | Texas |
| 20 | Bethesda | Md. |
| 20 | Potomac Cougars | Md. |

### Soccer America
## Top 20
**Girls Soccer Clubs**

| # | Club | State |
|---|------|-------|
| 1 | Bethesda | Md. |
| 2 | San Diego Surf | Ca. |
| 3 | PDA | N. |
| 4 | Sereno Golden Eagles | Ar |
| 5 | Dallas Texans | Te |
| 6 | Laguna Hills Eclipse | Ca |
| 7 | Colorado Rush | Co |
| 8 | Michigan Hawks | M |
| 9 | Pleasanton Rage | Ca |
| 10 | Busch | M |
| 11 | Slammers FC | Ca |
| 12 | Challenge | Te |
| 13 | Carmel United | In |
| 14 | HBC | N |
| 15 | Gwinnett SA | G |
| 16 | Colorado GSA | C |
| 17 | SC Blues | C |
| 18 | D'Feeters | |
| 19 | Eclipse Select | |
| 20 | Dallas Sting | Texas |



Case 1:05-cv-10542 Document x-xTriall 3/01/06 Page 12 of 16 PageID #122

# Boys Soccer Clubs Soccer America Top 20

**America's best youth clubs are sending boys as young as 14 to U.S. Soccer's residency program. Older youth players are skipping college ball and moving directly to the pros, not only to clubs in MLS but also in the English Premier League.**

**1** **FC DELCO.** Philadelphia area club won 2003 McGuire Cup title, third U-19 title in four years and seventh U.S. Youth Soccer title. Players have come from across Pennsylvania — Ben Olsen hailed from Harrisburg area — and as far away as Rhode Island and Maryland. **Rising Star:** Ryan Soroka, a star on U.S. U-17 '88 national team.

**2** **CHICAGO MAGIC.** Mike Matkovich's club, based in suburban Frankfort, had four players enter the U-17 residency program last fall. Magic U-17s were 2003 national champions. Its U-14s and U-15s won titles at the 2003 Super Y-League championships. **Rising Star:** Quavas Kirk, a top forward prospect on rising U-17 national team.

**3** **IRVINE STRIKERS.** Former U.S. Olympic team striker Don Ebert has headed up Southern California program for 11 years. U-17s won national title in 2002 and U-15s were third in 2003. Most famous grad is MLS teen Guillermo Gonzalez. **Rising Star:** Joel Smith, considered one of the top '88 sweepers in the country.

**4** **CASL ELITE.** Based in Raleigh, N.C., the Capital Area Soccer League operates elite youth program, as well as amateur team in the Premier Development League. CASL Elite won its first national title, taking 2003 U-14 division with late comeback. **Rising Star:** Brett King was one of four 14-year-old players to recently enter U-17 residency.

**5** **CONCORDE FIRE.** Formed in April 2003 following the merger of the Concorde Soccer Association and Atlanta Fire. Six players on Atlanta club were named all-stars at 2003 adidas ESP camp. Won national title (U-16) in 2002 and had two regional finalists in 2003. **Rising Star:** Jeff Scannella, promising defender in U-17 residency.

**6** **LA JOLLA NOMADS.** One of the oldest youth clubs in California. San Diego area club won its fifth national title in 2002, taking U-14 competition. Three Nomads — twins Gabriel and Michael Farfan and Eric Avila — entered U-17 residency in September. **Rising Star:** Cheezi Meltz, 13-year-old midfielder born in South Africa.

**7** **DALLAS TEXANS.** Top choice of college coaches for showcasing and developing players for next level. Teams have captured three U.S. Youth Soccer titles (1994, 2001 and 2002). Only club with boys and girls programs ranked in top 10. **Rising Star:** Jonathan Villanueva, outstanding midfield prospect in U-17 residency program.

**8** **FC SOCKERS.** Three U-17s at Chicago club turned pro in last six months: Michael Bradley (MetroStars), Jonathan Spector (Manchester United) and Will Johnson (Blackburn). Mike Stephens and Casar Nunez, both 14, entered U.S. Soccer's residency program. **Rising Star:** Mike Stephens, who played up with U.S. U-17s in December.

**9** **HOUSTON TEXANS.** The first club to win U-18 and U-19 national cups in consecutive years (2001-02). Its U-18 and U-16 teams were outstanding at last fall's Nike Friendlies in Florida. U-16s won Tampa Bay Sun Bowl weeks later. **Rising Star:** Takato Ban, Furman-bound midfielder who stood out at the Nike Friendlies.

**10** **SO CAL UNITED.** Won its first national title when Alberto Bru's U-18s captured Niotis Cup last summer. Bru's U-17s and U-13s both won League Cup titles in the Coast Soccer League in the fall. Five U-17s represented Region IX at Disney's Soccer Showcase. **Rising Star:** UCLA-bound Greg Folk, in his second semester of U-17 residency.

**11** **SERENO GOLDEN EAGLES.** Had three teams (U-17s, U-15s and U-14s) reach 2003 Region IV title game. Former Santa Clara coach Mitch Murray is one of seven full-time coaches. Based in North Phoenix but recruits from all over Arizona. **Rising Star:** Giuseppe Carotenuto, who shone on recent U.S. U-15s' trip to Guadalajara.

MEGAN STEPHENS



Nomads' Vincent Ocampo and the Magic's Greg Gehrig



Vardar's Hamid Tejan (right) and Karl Reddick of Mustangs.

TONY QUINN/SOCCERFIX.USA

PHIL STEPHENS

CASL's Brett King

**12** COLORADO RUSH. Formed in 1997 following merger of two local clubs, the Rush services over 5,500 players. Four Rush Nike teams reached West youth finals in the last three years. U-19s finished third at 2003 nationals. Rising star: Conrad Taylor, headed to Penn State, won Bronze Glove keeper award at 2003 adidas ESP camp.

**13** MICHIGAN WOLVES. Launched in 1974 thanks to support of Livonia Family YMCA. Won two boys national titles (1990 and 2003). Girls program (Hawks) has three titles. Wolves' U-18 boys captured seventh straight state title last fall. Rising star: Billy Weaver, 16th Wolves/Hawks player to win Michigan's Mr. Soccer prep award.

**14** VARDAR. Michigan club formed in 1983 and named after Macedonian club Vardar Skopje. Won three national titles in the 1990s and produced Columbus Crew veterans Brian Maisonneuve and Mike Clark. Rising Star: Matthew Walker, first 14-year-old goalie to enter U.S. residency program in Bradenton, Fla.

**15** PDA. New Jersey's Players Development Academy opened in 1999. Most of its boys teams are named after famous players (Socrates, Platini, Dalglish, etc.). Phil Marfuggi started in U.S. goal at the 2003 U-17 World Cup. Rising Star: Angelo Amato, high school junior who was one of the top defenders at the 2003 adidas ESP camp.

**16** WEST KENDALL OPTIMIST. Community program located in southwestern Miami sent eight players to last summer's adidas ESP camp, more than any other club in the country. Won 2003 Super Y-League's U-17 championship. Rising Star: Danny Vazquez, 5-foot-5 midfielder who was the MVP at the ESP camp and is headed to SMU.

**17** SCOTT GALLAGHER. World Cup players Brian McBride, Steve Trittschuh and Mike Sorber are among nine U.S. internationals from St. Louis club. It won the first of three McGuire Cup championships in 1981. Its most recent national title (U-18) came in 2000. Rising star: Keeper Nick Frasca, adidas ESP camp all-star in 2003.

**18** OAKWOOD. Club is the outgrowth of an indoor center started in 1980 at a Connecticut racquet club. Now has seven outdoor fields, in addition to indoor center. Two Oakwood teams lost regional finals in overtime last summer. Rising Star: Pat Phelan, Wake Forest-bound defender and standout on last year's U.S. under-18 national team.

**19** SOLAR. The second oldest youth club in the Dallas area. Many of its coaches are former Dallas Sidekicks players. Forward Kenny Cooper joined Manchester United's reserves from Solar last summer. Has one of country's best U-15 teams. Rising Star: Cameron Brown, high school freshman who went on U.S. U-15s' Guadalajara trip.

**20** BETHESDA/POTOMAC COUGARS (tie). Freddy Adu won U-14 nationals with Cougars in 2001 before team joined Maryland rival Bethesda. U-17 Bethesda Internationals went unbeaten at 2003 Nike Friendlies; two more Cougars have entered Bradenton residency. Rising Stars: Rich Edgar (Potomac) and Joshua Zipin (Bethesda).

EXHIBIT

L

## Policy Changes

1. <u>General</u>

For insurance, recruiting, liability compliance and to protect Illinois Youth Soccer Association's core values, leagues shall not register teams using the same or deceptively similar name used in another US Soccer Federation sanctioned competitive league.

2. <u>State Cup</u>

To be eligible to participate in the Illinois Youth Soccer State Cup tournament the team must be registered with the Illinois Youth Soccer Association (IYSA) and in good standing.

3. <u>Insurance</u>

For teams, clubs and leagues to be eligible for IYSA insurance coverage, all teams and players in the club/league must be registered with the IYSA. Compliance with this policy shall be the responsibility of the league in which the player/team/club participates. Each league shall, prior to accepting a team/club for league participation, ascertain that all of the club's teams and players are registered with the IYSA. The league's acceptance process must include:

1) Completed league application form;

2) By application for participation in the league, each applicant shall agree by application that:

   a. The applicant's club shall maintain a Board of Directors or governing authority that is independent from any other organization except in the event of a sponsoring governmental organization (ie: park district) or a sponsoring entity that is an Illinois not-for-profit corporation with a 501 (c)(3) ruling and annual certified audit.

   b. The applicant's club will maintain its own checking, bank accounts or has direct control over its finances except where evidence is provided that the sponsoring entity by ordinance, statute, charter or policy prohibits the applicant's club from having direct control over its finances (ie: government sponsored organizations or 501 (c)(3) entities with certified audits). The applicant shall attach to the application evidence in support of the request for waiver of this requirement.

   c. If granted participation in the league, the applicant's club will register 100% of all its players, coaches, administrators and volunteers with the IYSA.

3) Each team shall with its application attach a statement signed by its club's chief executive officer that the club agrees to be subject to the policies of the league, IYSA and US Youth Soccer.

4. <u>Tournaments</u>

To be eligible to host an IYSA sanctioned tournament the applicant must have 100% of its players, members, teams, coaches and administrators registered with the IYSA.

EXHIBIT

M



**N.I.S.L**

**Northern Illinois Soccer League**
*Division of SEI*

545 Consumers Ave.
Palatine, IL 60074
Tel # 847-398-4545 ext 106-108
Fax # 847-398-4565
www.northernillinoissoccerleague.com



## CLUB / ORGANIZATION AFFILIATION AGREEMENT
### *Incomplete agreements will not be accepted!*

The Club/Organization participating in the Northern Illinois Soccer League (NISL) IYSA Competitive League must comply with the requirements listed herein. Please complete, sign and submit this agreement to the league office. If for any reason the below listed official resigns from the Club, new signatures are required immediately.

1. Club/Organization's Official Name _____ Year Established _____

2. List All League Affiliations _____

3. Check One: ☐ For-Profit Corporation ☐ Non-Profit Corporation ☐ Partnership ☐ Other _____

4. Business Street Address _____

5. Shipping Address (Not PO Box) _____

6. City, State, Zip _____

7. Website _____ Email _____

8. Day Phone (_____) _____ Ext _____ Eve Phone (_____) _____ Fax (_____) _____ .

11. Circle each age division in which Club/Organization has a team:

BOYS:   U6   U7   U8   U9   U10   U11   U12   U13   U14   U15   U16   U17   U18   U19

GIRLS:  U6   U7   U8   U9   U10   U11   U12   U13   U14   U15   U16   U17   U18   U19

12. Describe territory served by Club/Organization in Illinois:

_____
_____

13. Describe Club/Organization's philosophy and/or purpose:

_____
_____

14. Complete and submit the NISL Club/Organization Information Form.

15. Club/Organization Agreement:
    a.   All Club/Organization's teams must be currently registered with an IYSA affiliated competitive league.
    b.   All Club/Organization's teams will participate in regularly scheduled league play among a least four (4) teams. A series of round robin tournaments are not considered "regularly scheduled league play".
    c.   The Club/Organization must have all its players, coaches and teams registered with an affiliated IYSA competitive league for the current seasonal year.
    d.   The Club/Organization agrees that each participant has completed and signed the IYSA Medical Release and Liability Waiver.
    e.   The Club/Organization agrees to conduct the IYSA Goal Safety Program and Risk Management program and by signing this agreement indicates the Club/Organization is incompliance.
    f.   The Club/Organization agrees to comply with the league requirements, decisions, rules, regulations, policies, procedures of the IYSA/League and understands that failure to comply with any one or more of them is cause for withdrawal of the Club or Team from the League.
    g.   The Club/Organization understands and agrees to not be a member of/or join any organization that is in conflict with IYSA/League rules and requirements.
    h.   The Club/Organization understands and agrees that ignorance of the IYSA/League requirements, rules and policies is not an excuse for failure to comply with them.

*I the undersigned attest that I am an official of the above listed club and that I have the authority to conduct business on behalf of the Club/Organization. I agree to the terms listed in this agreement. I hereby warrant that the Club/Organization is not aware of any claim or occurrences that would give rise to any claim against its employees, volunteers, trustees, committee persons and members or affiliated teams and members. I agree to indemnify and hold harmless the Illinois Youth Soccer Association, its affiliated organizations/Leagues and sponsors, their coaches, managers and associated personnel, officers, directors, agents, to each of the undersigned, his/her heirs or next of kin for any and all claims against, by or on behalf of the Applicant and its officers, agents and/or members whether or not such claim or claims are based in whole or in part on the negligence or contributory negligence of any one or more of them.*

_____    _____    _____
Signed by President                           Print Name                           Date

_____    _____    _____
Singed by Chief Executive Officer              Print Name                           Date

EXHIBIT

N

**Greg Vogler**

| | |
|---|---|
| **From:** | statecup@illinoisyouthsoccer.org |
| **Sent:** | Wednesday, February 11, 2004 12:43 PM |
| **To:** | Greg Vogler |
| **Subject:** | State Cup |



ALTERNATIVE.HTML    ENVELOPE.TXT

We are in receipt of your State Cup application for the U14 D.G. Roadrunners 89/90 team. It has come to our attention that this team is not currently registered with an affilicated IYSA league. In order to participate in the IYSA State Cup all teams must be reigstred thru an affiliated league of the IYSA. Therefore this team is not eligible to play in the 2004 State Cup competition. Please call our office is you have any questions regarding this situation.

1

*Exhibit B*



February 12, 2004

Mr. G. Vogler
5401 Maplewood Place
Downers Grove, Il. 60515

Re: State Cup

Dear Mr. Vogler,

Enclosed is your State Cup application and check #4023 for the U14 boys Downers Grove
Roadrunners for lack of compliance with Illinois Youth Soccer Rule 023. A copy of the rule is
enclosed for your reference. If you have any questions please contact Gus Bender at
(630)595-2240.

Sincerely,

Fran Pope
Assistant State Cup Director

encl



1655 South Arlington Heights Road, Suite 201 - Arlington Heights, Illinois 60005 - U.S.A.
Telephone: 847.290.1577 - Fax: 847.290.1576 - E-mail: info@illinoisyouthsoccer.org

www.illinoisyouthsoccer.org



Exhibit A

EXHIBIT

O

# DOWNERS GROVE ROADRUNNERS SOCCER CLUB
## 5401 Maplewood Place
## Downers Grove, Illinois 60515

Greg Vogler, President

312/775-8000 (work)
630/969-1341 (home)

February 16, 2004

**VIA FACSIMILE (847-290-1576) and**
**FIRST CLASS MAIL**

Mr. Gus Bender, President
Illinois Youth Soccer Association
1655 South Arlington Heights Road
Suite 201
Arlington Heights, Illinois 60005

     Re:    **State Cup Application for Downers Grove Roadrunners 89/90 U-14 Boys**

Dear Gus:

     As you know, the IYSA has returned the 2004 Illinois State Cup Application for the Downers Grove Roadrunners 89/90 U-14 Boys team and check #4023 for the tournament fees. The reasons given are "lack of compliance with Illinois Youth Soccer Rule 023" (letter dated February 12, 2004 and copy attached as Exhibit A) and "[i]n order to participate in the IYSA State Cup all teams must be registered thru an affiliated league of the IYSA" (e-mail dated February 11, 2004 and copy attached as Exhibit B). In a telephone conversation last week with Fran Pope, I expressed our Roadrunners' objection to IYSA's position to date. This letter sets forth our written statements in the hope that the IYSA reconsiders its position. If IYSA does not overturn its original position, please consider this document as a formal appeal and written record for the appeal.

     IYSA Rule 023 states in pertinent part:

**Team Eligibility**

This competition shall be open to any team whose players are registered with the IYSA and the team is in compliance with all of the following requirements:

Section 1.

### DOWNERS GROVE ROADRUNNERS SOCCER CLUB

Mr. Gus Bender, President
Illinois Youth Soccer Association
February 16, 2004
Page 2

1.  The team must be comprised of properly registered and rostered youth players as defined by the IYSA.
2.  The team must be in good standing with the IYSA and USYSA and must be in compliance with, and has not violated, any of the bylaws and policies of the IYSA.
3.  For a team to enter the competition at least 50 percent of its players must be registered and domiciled in Illinois.
4.  The team must compete in an IYSA affiliated league during the current seasonal year. With the exception of the U19 age group the league competition must consist of a minimum of one (1) game against each of three (3) different teams participating in the league.
5.  The team must demonstrate continuity of rosters between the league and the State Cup competition by maintaining a minimum of nine (9) players common to the rosters of both competitions.
6.  The team may not be a select team.

With all due respect, it is clear that our Roadrunners 89/90 team meets all of the above requirements for "Team Eligibility." Under Section 1, Item 1, the Roadrunners U-14 players are properly registered and rostered with IYSA. A copy of the completed and approved by stamping of the Illinois Youth Soccer Association (IYSA) Team Registration Form is attached as Exhibit C for this team. Of note, it is stamped 2003/2004 Registration for Illinois Youth Soccer.

There is no dispute that we are aware of that the Roadrunners 89/90 team complies with Section 1, Items 2, 3, 5 and 6.

In my discussions with Ms. Pope, she indicated that our team is not in compliance with the following requirement of Section 1, Item 4:

"The team must compete in an IYSA affiliated league during the current seasonal year." (emphasis added).

Ms. Pope indicated that the phase "current seasonal year" meant that the Roadrunner 89/90 team must compete in an IYSA affiliated league during the Spring 2004 season. Ms. Pope gave no other reason for returning the State Cup Application. The phrase "current seasonal year" simply cannot mean what Ms. Pope says it does.

The IYSA Policies and Procedures, dated February 7, 2004, clearly define the "seasonal year" as being from August 1st through July 31st. See "RULE 002 MAXIMUM REGISTRATION OF PREVIOUSLY REGISTERED PLAYERS PER SEASONAL YEAR

DOWNERS GROVE ROADRUNNERS SOCCER CLUB

Mr. Gus Bender, President
Illinois Youth Soccer Association
February 16, 2004
Page 3

(AUGUST 1 THRU JULY 31)." (emphasis added). Also, a "year" means a "year," not a half year. Adding the word "current" before the phrase "seasonal year" does not magically transform the phrase "current seasonal year" to mean the "Spring season", or the "Fall Season" or the "seasonal ½ year." It plainly means what it says: the "current seasonal year" is the timeframe from August 1, 2003 through July 31, 2004.

The IYSA uses the phrase "current seasonal year" at several places in its Policies and Procedures – all definitely refer to the current seasonal year as being from August 1st through July 31st. For example, under "Rule 016. Tournament Pass." The IYSA Tournament Pass "is valid for the current seasonal year only and expires on July 31 of the current year." If the phrase "current seasonal year means either "the Fall season" or the "Spring season", as wrongly suggested by Ms. Pope, the language "expires on July 31 of the current year" would make no sense for Tournament Passes obtained in the Fall season.

Other language of the IYSA Policies and Procedures is consistent with the meaning of the "current seasonal year" to be August 1 through July 31st. At "Rule 006. Involuntary Release", the language reads in pertinent part in Item (C) "season (Soccer-playing year)" – all showing that a "season" refers to a "soccer-playing year." Even in Rule 023 there are references to "subsequent seasonal year" and "following seasonal year" under the sections entitled "Team and Player Breaches of Rules." Again, the context of those phrases show that they are not limited to the Fall season or the Spring season.

I could go on but I believe the point is already made. The IYSA Policies and Procedures only require that "the team must compete in an IYSA affiliated league during the current seasonal year." The Roadrunners 89/90 U-14 team has complied fully with that requirement by playing in the Classic I U-14 Division of NISL during this past Fall – during the current seasonal year. I could not find any requirement in the IYSA Policies and Regulations that a team must play in an IYSA-affiliated league during the same period when it is playing in the State Cup Tournaments. In some respects and circumstances, it might be healthy for a team not to do so.

For the record, as you know, NISL unequivocally mandated that it would not allow any team to play both in NISL and the new Greater Chicagoland Soccer League ("GCSL") for the Spring season. Such mandates, besides in my opinion being violations of USSF Bylaw 603 anti-discrimination provisions or likely more serious legal ramifications, have no place in the promotion of youth soccer. They are contrary to the IYSA mission statement and its not-for-profit status. Our Roadrunners 89/90 U-14 team opted for the new GCSL during this Spring because it will give our team better competition, it will cost much less than NISL, and it will allow our team to avoid the persistent irresponsible conduct of NISL toward soccer and our team.

## DOWNERS GROVE ROADRUNNERS SOCCER CLUB

Mr. Gus Bender, President
Illinois Youth Soccer Association
February 16, 2004
Page 4

       Our team has made its decision for the Spring season by relying upon the IYSA Policies and Procedures, as written and fair notice given to us. Our Downers Grove Roadrunners Soccer Club respectfully requests that the IYSA reconsider its position in this matter and allow our Roadrunners 89/90 U-14 team to play in the 2004 State Cup Tournament. I am resubmitting by mail the 2004 Illinois State Cup Application and check #4023. Acceptance is respectfully requested under the IYSA Policies and Procedures, as written.

Very truly yours,

Greg Vogler
President of Downers Grove
Roadrunners Soccer Club

GJV/syh



February 12, 2004

Mr. G. Vogler
5401 Maplewood Place
Downers Grove, IL 60515

Re: State Cup

Dear Mr. Vogler,

Enclosed is your State Cup application and check #4023 for the U14 boys Downers Grove
Roadrunners for lack of compliance with Illinois Youth Soccer Rule 023. A copy of the rule is
enclosed for your reference. If you have any questions please contact Gus Bender at
(630)595-2240.

Sincerely,

Fran Pope
Assistant State Cup Director


encl



1655 South Arlington Heights Road, Suite 201 - Arlington Heights, Illinois 60005 - U.S.A.
Telephone: 847.290.1577 - Fax: 847.290.1578 - E-mail: info@illinoisyouthsoccer.org

www.illinoisyouthsoccer.org

Exhibit A



EXHIBIT

P

# DOWNERS GROVE ROADRUNNERS SOCCER CLUB
### 5401 Maplewood Place
### Downers Grove, Illinois 60515

Greg Vogler, President

312/775-8000 (work)
630/969-1341 (home)
gvogler@mhmlaw.com

May 25, 2004

E-MAIL and FACSIMILE (847/290-1576)

Mr. Gus Bender
Illinois Youth Soccer Association
1655 South Arlington Heights Road, Suite 201
Arlington Heights, Illinois 60005

> Re:   Rescheduling of U-14 Boys' Sockers v. Roadrunners
> on Tuesday, May 25th

Dear Gus:

Without any input from the Roadrunners Club or our D.G. Roadrunners 89/90 team, the IYSA issued the following order:

> This is to advise you that the Downers Grove Roadrunners U14 boys
> State Cup game vs Sockers FC will be played on May 25, 2004, 6:30 pm
> at the Forest View Educational Center. If either team does not show for
> this competition a forfeit will be recorded and the team in attendance will
> be recorded as the winner.

This letter sets forth our formal appeal and written record for the appeal of this unfair decision.

No one at IYSA discussed with us whether the Tuesday, March 25th date was workable or fair to our team. On Sunday, an IYSA representative called me and indicated that the cancelled May 23rd game would have to be rescheduled at the Sockers home field, Forest View. I objected to the game being played at Forest View. I also indicated that I had to check with the team's families on the availability of their sons to determine dates that we could play. The IYSA representative stated unequivocally that we had "until June 2nd" to play the game.

Mr. Gus Beneer                                                          2                                         May 25, 2004
Illinois Youth Soccer Association

     On Sunday, I had similar discussions with Dwight Jordan of the Sockers who was trying to force the Tuesday game upon us. I told Mr. Jordan the same things that I told the IYSA representative.

     On Monday morning, Fran Pope called my office and left a message on my answering machine "to call her." As soon as I was free from my meetings I did call Fran at around 1:00 p.m. or so, but she was unavailable, and I left a message on her answering machine "to call me." Ms. Pope never returned the call and the only communication I had with her was that she sent the above-quoted order by facsimile.

     The Roadrunners never agreed with IYSA or the Sockers as to the Tuesday date. Had IYSA conferred with us, instead of only listening to the Sockers, it would have discovered that the mandated May 25th date would be unfair because our team's best defender, Kevin Jernigan, is in Washington, D.C. with his eighth grade class field trip. You can call Eisenhower Junior High at 630/964-5200 or his father, Michael Jernigan, at 630/669-4436 to confirm these facts. Kevin will be back in town on Friday. Upon finding out of the potential game, Kevin is "bummed out." You would be too if in his shoes after all of the hard work during the season.

     We should be entitled to play a State Cup game with a full team. If we have a key player who cannot make it, it is a near disaster for our team since we do not have any depth. The Sockers know our lack of depth and know they would have an additional advantage if we are required to play without Kevin. The Sockers on the other hand are eighteen players strong and they probably would not be weakened if one or two of their players miss the game. It would have made more sense to talk with us first instead of catering one-sided to the Sockers.

     In addition, I likely cannot attend the Tuesday game. Attached is a subpoena served upon Dr. John Atkins, a person I am defending in litigation. As his lawyer, I need to attend. The deposition is scheduled for today in Chicago starting at 10:30 a.m. It was too late yesterday to reschedule that deposition since he traveled from West Virginia. It is extremely unlikely that the deposition will end before 5:00 p.m. and likely will extend beyond. While David Di Tomasso is now the head coach and he is available today, I have been the head coach the past six years for this team and have been there for almost all of their games, especially any State Cup game. Being there for the team would be important.

Mr. Gus Beneer                               3                        May 25, 2004
Illinois Youth Soccer Association

We do understand the IYSA dilemma in trying to reschedule games. However, we do note that we have almost two weeks to play the make-up games which gives everyone flexibility to find a date where each team can play with a full squad. When I informed Ms. Pope that we did not agree to the May 25th date, her response was:

> Sorry it did not come thru via e-mail. This was not my decision. It has always been the policy of IYSA that if a State Cup game has to be rescheduled it is home team advantage. Just as it is in the case of jersey color conflict the home team must change. Unfortunately timing is a great issue here. <u>The Sockers are leaving Thursday for the Nike tournament and will not be back until very late Tuesday.</u> If we should have rain like we have been having we need the extra time to get the games played, in your case Wednesday if it rains Tuesday and a few days next week if it is still raining. I wish I could make this a lot easier, its just that there is not enough time to get all these games played. It is also a referee issue too. High school games and tournaments play a big part. Some of the other games being rescheduled may not get done this week and we need the time next week. 40 some teams need to be rescheduled before June 5. I hope all things work out. <u>We do not cater to certain teams or clubs.</u> We are here for all our teams. Sometimes there are not enough days in the week or months in the year.

In fact, the IYSA <u>did cater</u> to the Sockers U-14 team. It mandated the May 25th date to cater to the Sockers schedule in the Nike tournament and <u>with absolutely no input</u> from our team or me as to whether that date is acceptable to the Roadrunners. It has been the IYSA policy to require the State Cup games to have priority over other regular season or other tournament games played by a team, including the Nike tournament.

We are available to play anytime starting this Friday, May 28th, through Thursday, June 3rd. Also, I understand, contrary to Ms. Pope's message, the Sockers are coming back in town on Tuesday morning, <u>not</u> late Tuesday.

Now, we are not asking the Sockers to cancel their trip. We are only asking for a fair date to play with a full squad. We have plenty of time next week. We offered to play the game at Elmhurst College on its all-weather field to prevent most weather issues.

Mr. Gus Beneer                                4                        May 25, 2004
Illinois Youth Soccer Association

It is my understanding that other State Cup teams have input on when to play the makeup games and some are being played next week. If the IYSA had ordered all of the U-13 through U-19 teams to play all makeup games at the home team site on May 25th, then we could understand the order. However, as I understand it, our team is the only team unfairly being singled out and unfairly ordered to comply without any input or without any fair consideration of our dilemmas or alternative dates.

With all due respect and in furtherance of the fairness behind the State Cup competition, the game scheduled for this evening must be cancelled and replayed next week when both teams have a full squad. Due to the urgency of the matter, we request a prompt decision. We are sending a copy to Dwight Jordan, and we would hope the Sockers have enough respect for the game to accommodate our team. We would accommodate them if the roles were reversed.

Very truly yours,

Gregory J. Vogler

GJV:kp

AO 88 (Rev. 11/94) Subpoena in a Civil Case

Issued by the

# UNITED STATES DISTRICT COURT

Northern DISTRICT OF Illinois

Luma Corporation

**SUBPOENA IN A CIVIL CASE**

v.

Stryker Corporation, Karl Storz
Endovision, Inc.; and Karl Storz
Endoscopy-American, Inc.

Case Number:[1] 1:02-1132

Case Number: 1:02-CV-1479

TO: Dr. John M. Atkins

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| McAndrews, Held & Malloy, Ltd. | May 25, 2004 |
| 500 W. Madison Street, 34th Fl., Chicago, IL 60661 | 10:30 a.m. |

☐ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

| PLACE | DATE AND TIME |
|---|---|
| | |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *[signature]* Lisa Kobialka for Plaintiff Luma Corporation | May 20, 2004 |

ISSUING OFFICER'S NAME ADDRESS AND TELEPHONE NUMBER
Lisa Kobialka, Perkins Coie LLP, 101 Jefferson Drive, Menlo Park, CA 94025-1114, (650) 838-4300

(See Rule 45, Federal Rules of Civil Procedure, parts C & D on reverse)

[1] If action is pending in district other than district of issuance, state district under case number.

AO-88

EXHIBIT

Q

## UNITED STATES SOCCER FEDERATION

**GRIEVANCE: Southland Athletic Association and Greater Chicagoland Soccer League v. Illinois Youth Soccer Association**

### HEARING PANEL RECOMMENDATIONS

Panel: Sunil Gulati, Chairperson, Werner Fricker, Jr., Burton Haimes, John Kerr, Kevin Payne.

This hearing panel was charged with considering a grievance filed by the Southlad Athletic Association ("SAA") and the Greater Chicagoland Soccer League ("GCSL") against Illinois Youth Soccer Association ("IYSA"). The following report details the panel's findings and recommendations.

### Statement of Facts

SAA is a company based in Illinois that runs the GCSL, a youth soccer league in Illinois with teams in the Chicago area as well as Northwest Indiana. The GCSL is currently affiliated with the United States Soccer Federation ("USSF") through US Club Soccer. On December 2, 2003, GCSL submitted an application to become a competitive/travel league in IYSA. IYSA met with GCSL representatives on February 7, 2004, the date of its next regularly scheduled board meeting, to review GCSL's application. At the February 7th meeting, IYSA informed GCSL that its application was incomplete. IYSA sent GCSL a letter on February 10, 2004, requesting that GCSL provide the following information to complete its application:

1. Documentation regarding the issuance of the league's assumed name ("DBA" paperwork);
2. A certificate of good standing from the Illinois Secretary of State
3. Amended bylaws, constitution and rules that establish compliance with IYSA rules and regulations;
4. A GCSL board resolution accepting the amendment of GCSL's bylaws, constitution and rules to comply with IYSA rules and regulations;
5. A revised budget and financial statements;
6. Explanation of the relationship between GCSL, SAA and the Hallmark Sports Club, another soccer organization in the Chicago area;
7. Clarification of the players' rules, registration procedures and roster procedures and sizes; and
8. Clarification of GCSL's voting rights and voting structure.

Under a cover letter dated April 12, 2004, GCSL submitted additional information in response to IYSA's letter. GCSL believed that it submitted all information required by IYSA. At its meeting on May 11, 2004, however, the IYSA board of directors unanimously denied GCSL's application for affiliation. The parties dispute whether denial of GCSL's application was proper under USSF bylaws. GCSL claims that there is no support in the record for IYSA's denial of its application, that the denial was arbitrary and that it violated USSF Bylaw 603. IYSA maintains that GCSL's application, even including the additional information submitted by GCSL, was incomplete and deficient in several ways leading to the board's denial.

On June 25, 2004, after IYSA's denial of GCSL's application but before filing this grievance with USSF, SAA and GCSL (along with two soccer clubs), filed a lawsuit in U.S. District Court alleging violations of federal antitrust law based, at least in part, on IYSA's refusal

of GCSL's application. GCSL, together with the other plaintiffs, presented a draft of the complaint to IYSA, prior to filing it, with the renewed request that IYSA admit it as a league.

## Decision

As a preliminary matter, IYSA objected at the grievance hearing to the participation of Burton Haimes as a panel member. Mr. Haimes is the AYSO representative on USSF's board of directors. IYSA claims that Mr. Haimes cannot participate on the panel because AYSO and IYSA are competitors in youth soccer, and because AYSO and IYSA have had organizational disputes in the past. USSF Bylaw 704 prohibits a board member from serving on a grievance panel if he or she has a "<u>direct interest</u>" in the outcome of the proceedings (emphasis added). The panel finds that Mr. Haimes has no direct interest in the outcome of this grievance; therefore, his participation is proper.

The issue in this grievance is whether IYSA violated any of USSF's bylaws in refusing to admit GCSL as a league member. GCSL claims that the denial of its application violated USSF Bylaws 105, 213(a), and 603.

USSF Bylaw 105 provides that the Federation must provide equal opportunity to participants in its programs without regard to race, color, religion, age, sex, or national origin. This bylaw does not apply to IYSA's actions. There exists a companion provision in Bylaw 213(a)(2) which holds State Associations to an equal standard of conduct; however, the panel finds no evidence that the denial of GCSL's application was based upon any of these protected categories.

USSF Bylaw 213(a)(1) requires State Association members of USSF to be "open" to any players, coaches trainers, managers, administrators and officials, and to any amateur soccer organization in its territory. USSF has acknowledged that, despite the "openness" requirement in its bylaws, State Associations reserve the right to impose reasonable requirements for membership, including the completion of an application process. IYSA has an application process for league membership. It maintains that GCSL did not supply sufficient information in compliance with this process. This panel believes that GSCL's application did have some deficiencies that, at the time IYSA denied its application, still had not been corrected. However, based on the testimony presented at the grievance hearing, the panel does not believe that these deficiencies served as the basis for IYSA's denial of the application.

IYSA stated in its answer to the grievance that GCSL and its member clubs' affiliation with US Club Soccer, another USSF member, caused it concern and that GCSL was applying to join IYSA as "nothing more than subterfuge" to undermine IYSA. The answer states that US Club Soccer's rules and risk management policies are inconsistent with IYSA's, and that they "do not comport with the values that Illinois Youth carries out as a State Association." IYSA claims that it is entitled to take this position, and that it retains final authority to determine who may become an IYSA member. IYSA is correct, to the extent that the exercise of its authority is consistent with USSF bylaws and policies. However, USSF Bylaw 603 prevents an Organization Member of the Federation from discriminating against the participation of players, teams, coaches, or clubs on the basis of their affiliation with another organization. In addition, USSF Bylaw 213(a)(1) requires that State Association members be open to all soccer organizations in their respective territories. As a result, a State Association may not deny membership to a soccer organization in its territory because of any perceived "impact" that organization may have on any other program.

Despite assurances at the hearing from IYSA's attorneys that GCSL's affiliation with US Club Soccer had nothing to do with IYSA's decision to reject its application, two IYSA board members testified at length that GCSL's affiliation with US Club Soccer made them suspicious that GCSL was planning to join IYSA just to steal players for US Club Soccer. The board members also testified that they disagree with US Club Soccer's programming philosophy and risk management programs. Finally, they claimed to be troubled by GCSL's refusal to make a commitment to remain an IYSA league for the next seasonal year. Another member testified that his rejection was based, in part, on GCSL's plan to include teams residing in Indiana, even though IYSA has accepted other leagues with out of state teams. The board members testified that all of these considerations led, in part, to their rejection of the GCSL application. The panel finds no evidence that GCSL's application was insincere or a sham in any way. Further, IYSA does not dispute that GCSL agreed to abide by all IYSA rules and regulations in its participation in IYSA activities, inasmuch as IYSA's Competitive League Agreement requires such a promise from GCSL. Finally, IYSA admits that a long-term commitment is not a requirement for league membership under its rule. IYSA's answer as well as the evidence presented at the grievance makes it clear to the panel that GCSL's application was denied, at least in part, because of GCSL's affiliation with US Club Soccer. Denial on this basis violates USSF Bylaw 603.

The panel also must address GCSL's participation in a federal lawsuit to resolve this dispute. USSF Bylaw 707 prohibits a member from invoking the aid of the courts before first exhausting all available remedies within the Federation. GCSL claims that the conduct alleged and the remedies sought in its lawsuit are different than and separate from the grievance, that USSF does not provide a mechanism for making an antitrust claim, and, therefore, that Bylaw 707 does not apply. The panel believes that the conduct alleged in the grievance also serves as the basis for the lawsuit. Further, GCSL approached IYSA with a draft of the complaint before it was filed and asked once more to be admitted to IYSA as a league member. Clearly, GCSL is hoping to achieve membership in IYSA through its lawsuit -- a remedy available through USSF's internal grievance process. Accordingly, the panel finds, on a preliminary basis, that GCSL has violated Bylaw 707 in filing its lawsuit.

## Recommendation

This panel finds that IYSA violated USSF Bylaw 603 in denying GCSL's application for membership, and therefore recommends that the Board of Directors grant the grievance. However, in light of the panel's preliminary finding that GCSL has violated USSF Bylaw 707, the panel recommends that the remedies set forth below shall not be enforced unless and until GCSL and SAA withdraw from the lawsuit against IYSA. The panel's recommendations are as follows:

1.  That IYSA admit GCSL as an IYSA league, without regard to GCSL's affiliation with US Club Soccer, as long as GCSL submits to IYSA the following information:
    a.  Paperwork confirming the DBA name of SAA;
    b.  Bylaws and policies that have been amended to comply with IYSA's rules and a certification that the GCSL board of directors has adopted these changes; and
    c.  A more complete financial forecast of the league's activities.
    GCSL shall submit this information no later than fourteen (14) days after the USSF's Board of Directors' adoption of this recommendation or GCSL's withdrawal from the lawsuit, whichever comes later.

3

2.    That this panel be allowed to retain jurisdiction over this matter to ensure that GCSL admission into IYSA is both appropriate and timely.[1]

3.    That the Board of Directors issue a notice letter charging GCSL with violation of Bylaw 707, that it allow this panel to conduct a hearing on the matter, and that it allow the panel to make recommendations regarding what sanctions, if any, are appropriate against GCSL should the panel find that GCSL violated Bylaw 707.

Dated:    September 16, 2004

---

[1] Some of IYSA's rules regarding registration may imply that every member of a club must register with it for any member to participate. The panel reminds IYSA that pursuant to USSF Bylaw 603, IYSA may require the registration only of GCSL players who are participating in its programs.

4

EXHIBIT

R

10/11/2004 MON 9:44 FAX &002/003



October 11, 2004

**BY FACSIMILE**

Gregory J. Vogler
McAndrews, Held & Malloy, Ltd.
500 West Madison Street, 34th Floor
Chicago, IL 60661

John J. Scharkey, III
Stellato & Schwartz, Ltd.
120 North LaSalle Street, 34th Floor
Chicago, IL 60602

    Re:   <u>USSF Grievance – GCSL v. IYSA</u>

Dear Mr. Vogler and Mr. Sharkey:

      This letter is to notify you that the USSF Executive Committee approved the following recommendation of the grievance panel in the above-referenced matter:

      That, conditioned upon GCSL's, Downers Grove Roadrunners' and Chicago Magic Soccer Club's withdrawal from their federal lawsuit against IYSA:

1.    That IYSA admit GCSL as an IYSA league, without regard to GCSL's affiliation with US Club Soccer, as long as GCSL submits to IYSA the following information:
      a.    Paperwork confirming the DBA name of SAA;
      b.    Bylaws and policies that have been amended to comply with IYSA's rules and a certification that the GCSL board of directors has adopted these changes; and
      c.    A more complete financial forecast of the league's activities.
    GCSL shall submit this information no later than fourteen (14) days after the USSF's Board of Directors' adoption of this recommendation or GCSL's withdrawal from the lawsuit, whichever comes later.
2.    That this panel be allowed to retain jurisdiction over this matter to ensure that GCSL admission into IYSA is both appropriate and timely.
3.    That if GCSL, the Downers Grove Roadrunners, and Chicago Magic Soccer Club, Ltd. do not withdraw from the lawsuit they have filed in federal court within fourteen (14) days after the date of this letter, the Board of Directors issue a notice letter charging them with violation of USSF Bylaw 707, that it allow this panel to conduct a hearing on the matter, and that it allow the panel to make recommendations regarding what sanctions, if any, are appropriate against GCSL should the panel find that GCSL violated Bylaw 707.

☒003/003

Should you have any questions, please feel free to call me at 312-528-1296.

Sincerely,

Alison A. Kocoras

Cc:     Timothy M. Pinto
        Grievance panel

EXHIBIT

S

LAW OFFICES

# McANDREWS, HELD & MALLOY, LTD.

34TH FLOOR
500 WEST MADISON STREET
CHICAGO, ILLINOIS 60661

TELEPHONE: (312) 775-8000
FACSIMILE: (312) 775-8100
WWW.MHMLAW.COM

December 1, 2004

**VIA HAND DELIVERY**

John J. Scharkey, III
Stellato & Schwartz, Ltd.
120 North LaSalle Street
34th Floor
Chicago, Illinois 60602

> Re: Southland Athletic Association, Inc., et al. v. Illinois Youth Soccer Association, et al.
> Civil Action No. 04C 4259

Dear John:

Enclosed please find your service copy of Plaintiffs' Notice of Dismissal Without Prejudice of Its Complaint Against Defendants. Thus, all of the plaintiffs now have dismissed without prejudice the Complaint under Fed.R.Civ.P. 41(a)(1).

As you know, the USSF ordered the following:

That, conditioned upon GCSL's, Downers Grove Roadrunners' and Chicago Magic Soccer Club's withdrawal from their federal lawsuit against IYSA:

1. That IYSA admit GCSL as an IYSA league, without regard to GCSL's affiliation with US Club Soccer, as long as GCSL submits to IYSA the following information:

a. Paperwork confirming the DBA name of SAA;
b. Bylaws and policies that have been amended to comply with IYSA's rules and a certification that the GCSL board of directors has adopted these changes; and
c. A more complete financial forecast of the league's activities.
(Exhibit D)

## McANDREWS, HELD & MALLOY, LTD.

John J. Scharkey, III                 2
Stellato & Schwartz, Ltd.

December 1, 2004


        The GCSL already submitted the above three items 1(a), (b) and (c) to the IYSA on or about October 1, 2004 in connection with the Response of SAA and GCSL to Hearing Panel's Recommendation. Those three documents again are provide to the IYSA as attached Exhibits A, B and C.

        Southland and GCSL now considers the USSF Order in effect that "IYSA admit GCSL as an IYSA league." Southland is going to operate GCSL as IYSA-sanctioned competitive league for the Spring 2005 and is informing teams/clubs of that intent.

Very truly yours,

Gregory J. Vogler

GJV/mms
Enclosures
cc:     Alison Kocoras (w/encls via facsimile & 1st class mail)
       Linda Ball (w/encls)
       Bob Lemke (w/encls)
       Alejandro Menchaca, Esq.

CORPORATION/LLC SEARCH RESULTS...                                      Page 1 of 1



## CORPORATION FILE DETAIL REPORT

| Entity Name | SOUTHLAND ATHLETIC ASSOCIATION, INC | File Number | 61575383 |
|---|---|---|---|
| Status | GOODSTANDING | | |
| Entity Type | CORPORATION | Type of Corp | NOT-FOR-PROFIT |
| Incorporation Date (Domestic) | 03/27/2001 | State | ILLINOIS |
| Agent Name | ILLINOIS CORPORATION SERVICE C | Agent Change Date | 11/26/2003 |
| Agent Street Address | 801 ADLAI STEVENSON DRIVE | President Name & Address | |
| Agent City | SPRINGFIELD | Secretary Name & Address | |
| Agent Zip | 62703-4261 | Duration Date | PERPETUAL |
| Annual Report Filing Date | 03/04/2004 | For Year | 2004 |
| Assumed Name | ACTIVE - GREATER CHICAGOLAND SOCCER LEAGUE | | |

**Return to the Search Screen**

BACK TO CYBERDRIVEILLINOIS.COM

*EXHIBIT A*

Sep 29 04 01:51p    Hallmark SportsClub        4692469
09/29/2004 13:32    2196962252

SOUTHLAND ATHLETIC ASSOCIATION
GCSL INCOME STATEMENT
for Period Ending September 30 2004

Time 11:12:48
Page No 0001

| | Actual Period - 9 | | | Actual Year To Date | |
|---|---|---|---|---|---|
| | Amount | Pcnt of Sales | | Amount | Pcnt of Sales |
| **Revenues** | | | | | |
| GCSL - FALL TEAM FEES | 10,949.00 | 43.87 % | | 10,949.00 | 43.87 % |
| GCSL - SPRING TEAM FEES | 14,007.00 | 56.13 % | | 14,007.00 | 56.13 % |
| **Total Revenues** | 24,956.00 | | | 24,956.00 | |
| **Gross Profit** | 24,956.00 | | | 24,956.00 | |
| **Expenses** | | | | | |
| REFEREE FEES - FALL | 2,510.00 | 10.06 % | | 2,510.00 | 10.06 % |
| REFEREE FEES - SPRING | 8,343.00 | 33.43 % | | 8,343.00 | 33.43 % |
| PROGRAM SUPPLIES - GCSL | 1,000.50 | 4.01 % | | 1,000.50 | 4.01 % |
| SALARY EXPENSE - GCSL | 14,682.00 | 58.83 % | | 14,682.00 | 58.83 % |
| OFFICE EXPENSE - GCSL | 47.79 | 0.19 % | | 47.79 | 0.19 % |
| POSTAGE EXPENSE - GCSL | 131.87 | 0.53 % | | 131.87 | 0.53 % |
| LEGAL & ACCOUNTING FEES | 9,318.00 | 37.34 % | | 9,318.00 | 37.34 % |
| MISC. EXPENSE - GCSL | 23.92 | 0.09 % | | 23.92 | 0.09 % |
| BAD DEBT EXPENSE - GCSL | 344.50 | 1.38 % | | 344.50 | 1.38 % |
| **Total Expenses** | 36,402.08 | | | 36,402.08 | |
| **Net Income Before Taxes** | (11,446.08) | | | (11,446.08) | |

*End Of Report*

EXHIBIT B

FROM : LTSC

Monday September 27th, 2004

GCSL Constitutional Amendment

For Distribution to Board of Directors and Competition Committee Members

Following a unanimous vote by the competition committee
and board of directors of the Greater Chicagoland Soccer
League(GCSL), the GCSL has approved and adopted the
following modification to the Constitution and Bylaws and
GCSL Policies/Procedures/Rules:

"Let it be known that the board and the competition
committee has voted unanimously on this 27[th] Day of
September, 2004 to remove any contingencies in the
Constitution and Bylaws and Policies/Procedures/Rules
whereby certain provisions would go into effect only after
the GCSL becomes sanctioned by the Illinois Youth Soccer
Association (IYSA)."

Prepared by Gary R. Heusner Competition Committee Chair

I, Gregory J. Vogler, do hereby certify that the Board
of Directors for the Greater Chicagoland Soccer League has
adopted the above changes on September 27, 2004.

Dated: 9/30/04

Gregory J. Vogler
Board Member and Legal Counsel
for Greater Chicagoland Soccer
League

Sworn to and subscribed before
me Margaret M. Slavik this 30th
day of September , 2004.

Margaret M Slavik
Notary

"OFFICIAL SEAL"
MARGARET M SLAVIK
Notary Public, State of Illinois
My Commission Expires 02/10/07

EXHIBIT C



October 11, 2004

**BY FACSIMILE**

Gregory J. Vogler
McAndrews, Held & Malloy, Ltd.
500 West Madison Street, 34ᵗʰ Floor
Chicago, IL 60661

John J. Scharkey, III
Stellato & Schwartz, Ltd.
120 North LaSalle Street, 34ᵗʰ Floor
Chicago, IL 60602

     Re:    <u>USSF Grievance – GCSL v. IYSA</u>

Dear Mr. Vogler and Mr. Sharkey:

     This letter is to notify you that the USSF Executive Committee approved the following recommendation of the grievance panel in the above-referenced matter:

     That, conditioned upon GCSL's, Downers Grove Roadrunners' and Chicago Magic Soccer Club's withdrawal from their federal lawsuit against IYSA:

1.    That IYSA admit GCSL as an IYSA league, without regard to GCSL's affiliation with US Club Soccer, as long as GCSL submits to IYSA the following information:
     a.    Paperwork confirming the DBA name of SAA;
     b.    Bylaws and policies that have been amended to comply with IYSA's rules and a certification that the GCSL board of directors has adopted these changes; and
     c.    A more complete financial forecast of the league's activities.
     GCSL shall submit this information no later than fourteen (14) days after the USSF's Board of Directors' adoption of this recommendation or GCSL's withdrawal from the lawsuit, whichever comes later.

2    That this panel be allowed to retain jurisdiction over this matter to ensure that GCSL admission into IYSA is both appropriate and timely.

3.    That if GCSL, the Downers Grove Roadrunners, and Chicago Magic Soccer Club, Ltd. do not withdraw from the lawsuit they have filed in federal court within fourteen (14) days after the date of this letter, the Board of Directors issue a notice letter charging them with violation of USSF Bylaw 707, that it allow this panel to conduct a hearing on the matter, and that it allow the panel to make recommendations regarding what sanctions, if any, are appropriate against GCSL should the panel find that GCSL violated Bylaw 707.

Should you have any questions, please feel free to call me at 312-528-1296.

Sincerely,

Alison A. Kocoras

Cc:     Timothy M. Pinto
        Grievance panel

**JUDGE BUCKLO**

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

# 05 C 0222

## Civil Cover Sheet

**MAGISTRATE JUDGE KEYS**

(CAT 1)

This automated JS-44 conforms generally to the manual JS-44 approved by the Judicial Conference of the United States in September 1974. The data is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. The information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law. This form is authorized for use only in the Northern District of Illinois.

**Plaintiff(s):** SOUTHLAND ATHLETIC ASSOCIATION, INC.,

**Defendant(s):** ILLINOIS YOUTH SOCCER ASSOCIATION, INC., SOCCER ENTERPRISES INC., NORTHERN INDEPENDENT SOCCER LEAGUES, INC. d/b/a NORTHERN ILLINOIS SOCCER LEAGUE, PETER G. RICHARDSON, FLO DYSON, ILLINOIS WOMEN'S SOCCER LEAGUE, ROBERT BERKLEY, YOUNG SPORTSMEN'S SOCCER LEAGUE, AND GUS BENDER,

**County of Residence:** Will County

**Plaintiff's Atty:** Gregory J. Vogler
McAndrews, Held & Malloy, Ltd.
500 West Madison Street, 34th Floor,
Chicago, IL 60661
(312) 775-8000

**County of Residence:** Cook County

**Defendant's Atty:**

DOCKETED
JAN 14 2005

FILED FOR DOCKETING
ED-7
05 JAN 13 PM 2: 13
U.S. DISTRICT COURT CLERK

**I. Basis of Jurisdiction:**    3. Federal Question (U.S. not a party)

**II. Citizenship of Principal Parties** (Diversity Cases Only)

Plaintiff:- N/A

Defendant:- N/A

**IV. Origin :**    1. Original Proceeding

**V. Nature of Suit:**    410 Antitrust

**VI. Cause of Action:**    15 U.S.C. 1 et seq. Defendants' acts and conduct constitute a combination or conspiracy and an unreasonable restraint of trade, in violation of the Sherman Act, 15 U.S.C. Section 1 et seq.

**VII. Requested in Complaint**

Class Action: No

Dollar Demand: Greater than $75,000

Jury Demand: Yes

**VIII.** This case **IS** a refiling of a previously dismissed case. Case number **04C 4259** by Judge **John F. Grady**

**Signature:**

**Date:** 1/13/05

If any of this information is incorrect, please go back to the Civil Cover Sheet Input form using the *Back* button in your browser and change it. Once correct, print this form, sign and date it and submit it with your new civil action. **Note: You may need to adjust the font size in your browser display to make the form print properly.**    . Revised: 06/28/00

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
EASTERN DIVISION

JUDGE BUCKLO

MAGISTRATE JUDGE KEYS

05C 0222

In the Matter of

SOUTHLAND ATHLETIC ASSOCIATION, INC.,

v.

ILLINOIS YOUTH SOCCER ASSOCIATION, INC.,
SOCCER ENTERPRISES INC., NORTHERN INDEPENDENT
SOCCER LEAGUES, INC. d/b/a NORTHERN ILLINOIS
SOCCER LEAGUE, PETER G. RICIARDSON, FLO DYSON,
ILLINOIS WOMEN'S SOCCER LEAGUE, ROBERT BERKLEY,
YOUNG SPORTSMEN'S SOCCER LEAGUE, AND GUS BENDER,

Case Number:

DOCKETED
JAN 14 2005

**APPEARANCES ARE HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY(S) FOR**

SOUTHLAND ATHLETIC ASSOCIATION, INC.,

FILED FOR DOCKETING
05 JAN 13 PM 2: 13
U.S. DISTRICT CLERK COURT

| (A) | | | (B) | | |
|---|---|---|---|---|---|
| SIGNATURE | | | SIGNATURE | | |
| NAME Gregory J. Vogler | | | NAME Alejandro Menchaca | | |
| FIRM McAndrews, Held & Malloy, Ltd. | | | FIRM McAndrews, Held & Malloy, Ltd. | | |
| STREET ADDRESS 500 West Madison Street, 34th Floor | | | STREET ADDRESS 500 West Madison Street, 34th Floor | | |
| CITY/STATE/ZIP Chicago/IL/60661 | | | CITY/STATE/ZIP Chicago/IL/60661 | | |
| TELEPHONE NUMBER 312-775-8000 | FAX NUMBER 312-775-8100 | | TELEPHONE NUMBER 312-775-8000 | FAX NUMBER 312-775-8100 | |
| E-MAIL ADDRESS gvogler@mhmlaw.com | | | E-MAIL ADDRESS amenchaca@mhmlaw.com | | |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) 6187861 | | | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) 6201622 | | |
| MEMBER OF TRIAL BAR? | YES ☑ | NO ☐ | MEMBER OF TRIAL BAR? | YES ☑ | NO ☐ |
| TRIAL ATTORNEY? | YES ☑ | NO ☐ | TRIAL ATTORNEY? | YES ☑ | NO ☐ |
| | | | DESIGNATED AS LOCAL COUNSEL? | YES ☐ | NO ☐ |
| (C) | | | (D) | | |
| SIGNATURE | | | SIGNATURE | | |
| NAME | | | NAME | | |
| FIRM | | | FIRM | | |
| STREET ADDRESS | | | STREET ADDRESS | | |
| CITY/STATE/ZIP | | | CITY/STATE/ZIP | | |
| TELEPHONE NUMBER | FAX NUMBER | | TELEPHONE NUMBER | FAX NUMBER | |
| E-MAIL ADDRESS | | | E-MAIL ADDRESS | | |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) | | | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) | | |
| MEMBER OF TRIAL BAR? | YES ☐ | NO ☐ | MEMBER OF TRIAL BAR? | YES ☐ | NO ☐ |
| TRIAL ATTORNEY? | YES ☐ | NO ☐ | TRIAL ATTORNEY? | YES ☐ | NO ☐ |
| DESIGNATED AS LOCAL COUNSEL? | YES ☐ | NO ☐ | DESIGNATED AS LOCAL COUNSEL? | YES ☐ | NO ☐ |